No. 24-2574

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

————————————

MONICA RICHARDS, individually and on behalf of all other
similarly situated individuals

*Plaintiff-Appellee*,

v.

ELI LILLY & COMPANY; LILLY USA, LLC,

*Defendants-Appellants.*

————————————

**Appeal from the United States District Court for the
Southern District of Indiana, No. 1:23-cv-242
Hon. Tanya Walton Pratt, United States District Judge**

————————————

## OPENING BRIEF FOR DEFENDANTS-APPELLANTS

————————————

Jonathan M. Linas
E. Michael Rossman
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
jlinas@jonesday.com
emrossman@jonesday.com

Yaakov M. Roth
  *Counsel of Record*
Michael Heckmann
Christopher Pagliarella
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
yroth@jonesday.com

James R. Saywell
JONES DAY
901 Lakeside Ave. East
Cleveland, Ohio 44114
(216) 586-3939
jsaywell@jonesday.com

*Counsel for Defendants-Appellants*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-08017    [Now 24-2574]

Short Caption: Eli Lilly & Company et al. v. Monica Richards

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eli Lilly and Company; Lilly USA, LLC.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Jones Day; Jenner & Block LLP; McGuireWoods LLP (district court)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Eli Lilly: N/A.  Lilly USA: Eli Lilly and Company is the sole member, and thus its parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Yaakov M. Roth    Date: 7/15/24

Attorney's Printed Name: Yaakov M. Roth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓   No ☐

Address: 51 Louisiana Avenue NW

Washington, DC 20001

Phone Number: (202) 879-3939    Fax Number: (202) 626-1700

E-Mail Address: yroth@jonesday.com

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-08017    [Now 24-2574]

Short Caption: Eli Lilly & Company et al. v. Monica Richards

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Eli Lilly and Company; Lilly USA, LLC.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Jones Day; Jenner & Block LLP; McGuireWoods LLP (district court)

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

      Eli Lilly: N/A.  Lilly USA: Eli Lilly and Company is the sole member, and thus its parent corporation.

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      None.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ James R. Saywell          Date: 7/15/24

Attorney's Printed Name:   James R. Saywell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address:   901 Lakeside Ave. East

      Cleveland, OH 44114

Phone Number:  (216) 586-3939          Fax Number:  (216) 579-0212

E-Mail Address: jsaywell@jonesday.com

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-08017    [Now 24-2574]

Short Caption: Eli Lilly & Company et al. v. Monica Richards

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eli Lilly and Company; Lilly USA, LLC.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Jones Day; Jenner & Block LLP; McGuireWoods LLP (district court)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Eli Lilly: N/A.  Lilly USA: Eli Lilly and Company is the sole member, and thus its parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Christopher Pagliarella    Date: 7/15/24

Attorney's Printed Name:  Christopher Pagliarella

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [  ]    No [✓]

Address: 51 Louisiana Avenue NW

Washington, DC 20001

Phone Number: (202) 879-3939    Fax Number: (202) 626-1700

E-Mail Address: cpagliarella@jonesday.com

[ Save As ]     [ Clear Form ]

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2574

Short Caption: Eli Lilly & Company et al. v. Monica Richards

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eli Lilly & Company; Lilly USA, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Jones Day; Jenner & Block LLP; McGuireWoods LLP (district court)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Eli Lilly: N/A.  Lilly USA: Eli Lilly & Company is the sole member, and thus its parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s Michael Heckmann      Date: 9/30/24

Attorney's Printed Name: Michael Heckmann

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address: 51 Louisiana Avenue NW

Washington, DC 20001

Phone Number: (202) 879-3939      Fax Number: (202) 626-1700

E-Mail Address: mheckmann@jonesday.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>24-2574</u>

Short Caption: <u>Eli Lilly and Company, et al. v. Monica Richards</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    <u>Eli Lilly and Company; Lilly USA, LLC</u>

    _____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    <u>Jones Day; Jenner & Block LLP; McGuire Woods LLP (district court)</u>

    _____

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        <u>Eli Lilly and Company: N/A Lilly USA, LLC: Eli Lilly and Company is the sole member, thus its parent corp.</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>s/ Jonathan M. Linas</u>          Date: <u>9/30/24</u>

Attorney's Printed Name: <u>Jonathan M. Linas</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [ ]  **No** [✓]

Address: <u>110 N. Wacker Drive, Suite 4800</u>

    <u>Chicago, Illinois 60606</u>

Phone Number: <u>312.269.4245</u>          Fax Number: <u>312.782.8585</u>

E-Mail Address: <u>jlinas@jonesday.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>24-2574</u>

Short Caption: <u>Eli Lilly and Company, et al. v. Monica Richards</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Eli Lilly and Company; Lilly USA, LLC</u>

<u> </u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Jones Day; Jenner & Block LLP; McGuire Woods LLP (district court)</u>

<u> </u>

(3)    If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

<u>Eli Lilly and Company: N/A Lilly USA, LLC: Eli Lilly and Company is the sole member, thus its parent corp.</u>

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>s/ E. Michael Rossman</u>     Date: <u>9/30/24</u>

Attorney's Printed Name: <u>E. Michael Rossman</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: <u>110 N. Wacker Drive, Suite 4800</u>

<u>Chicago, Illinois 60606</u>

Phone Number: <u>312.269.4305</u>       Fax Number: <u>312.782.8585</u>

E-Mail Address: <u>emrossman@jonesday.com</u>

rev. 12/19 AK

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................ 1

STATEMENT OF JURISDICTION ................................................ 4

STATEMENT OF THE ISSUE ...................................................... 5

STATEMENT OF THE CASE ........................................................ 5

    A.    Legal and Doctrinal Background ............................. 5

    B.    Factual and Procedural Background ....................... 11

SUMMARY OF ARGUMENT ...................................................... 15

STANDARD OF REVIEW ............................................................ 18

ARGUMENT ................................................................................. 19

  I.    *LUSARDI* IS INDEFENSIBLE AS A MATTER OF LAW. ........ 19

    A.    *Lusardi* Errs by Ignoring All Evidence of Dissimilarity ............ 20

    B.    *Lusardi* Errs by Ignoring Issues That Overlap with the Merits. ........ 24

    C.    *Lusardi* Errs by Holding Plaintiffs to Only a "Modest" Burden. ........ 27

  II.    *LUSARDI* IS INDEFENSIBLE AS A MATTER OF POLICY. ........ 31

    A.    *Lusardi* Wastes Party and Judicial Resources. ........ 31

    B.    *Lusardi* Creates Improper Settlement Pressure. ........ 34

    C.    *Lusardi* Undermines The Appearance Of Judicial Neutrality ........ 37

  III.    THE ARGUMENTS IN *LUSARDI*'S FAVOR ARE UNPERSUASIVE. ........ 38

    A.    District Courts Do Not Have Unbounded Discretion To Determine the Legal Standard for Issuing Notice ........ 38

    B.    Similarity Can Be Evaluated Before Certification and Notice. ........ 39

    C.    The Statute of Limitations Is a Red Herring. ........ 41

  IV.    THIS COURT SHOULD VACATE AND REMAND FOR APPLICATION OF THE CORRECTED STANDARD. ........ 43

CONCLUSION ............................................................................. 44

# TABLE OF AUTHORITIES

**Page**

**C**ASES

*Alaniz v. City of Los Angeles,*
   2014 WL 12694157 (C.D. Cal. May 21, 2014) ...................................................37

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013)...........................................................................................28, 35

*Anderson v. Montgomery Ward & Co.,*
   852 F.2d 1008 (7th Cir. 1988) ...........................................................................42

*Andreana v. Va. Beach City Pub. Schs.,*
   2018 WL 2144151 (E.D. Va. May 9, 2018) ........................................................8

*Arrington v. Nat'l Broad. Co.,*
   531 F. Supp. 498 (D.D.C. 1982) ...................................................................35, 36

*Asher v. Baxter Int'l, Inc.,*
   505 F.3d 736 (7th Cir. 2007) .............................................................................28

*Austin v. CUNA Mut. Ins. Soc.,*
   232 F.R.D. 601 (W.D. Wis. 2006) ......................................................................8

*Bell v. PNC Bank, Nat. Ass'n,*
   800 F.3d 360 (7th Cir. 2015) .............................................................................27

*Bergman v. Kindred Healthcare, Inc.,*
   949 F. Supp. 2d 852 (N.D. Ill. 2013)..................................................................8

*Bernardez v. Firstsource Sols. USA, LLC,*
   2021 WL 428841 (W.D. Ky. Feb. 8, 2021) .........................................................42

*Betts v. Cent. Ohio Gaming Ventures, LLC,*
   351 F. Supp. 3d 1072 (S.D. Ohio 2019)..............................................................42

*Bigger v. Facebook, Inc.,*
   947 F.3d 1043 (7th Cir. 2020) ............................................................. *passim*

*Bitner v. Wyndham Vacation Resorts, Inc.*,
301 F.R.D. 354 (W.D. Wis. 2014) ...................................................................7, 8

*Camesi v. Univ. of Pitt. Med. Ctr.*,
2011 WL 6372873 (W.D. Pa. Dec. 20, 2011) ........................................33

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ...............................................10, 32, 36, 37

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ..............................................................41

*Clark v. A&L Homecare & Training Ctr., LLC*,
68 F.4th 1003 (6th Cir. 2023) ....................................................... *passim*

*Collins v. Fam. Dollar Stores, Inc.*,
2006 WL 8437440 (N.D. Ala. Dec. 8, 2006) ........................................33

*Comer v. Wal-Mart Stores, Inc.*,
454 F.3d 544 (6th Cir. 2006) ..................................................................33

*Corp. Sec. Litig.*,
75 F.3d 276 (7th Cir. 1996) ....................................................................18

*Craig v. Rite Aid Corp.*,
2012 WL 279647 (M.D. Pa. Jan. 31, 2012) ..........................................33

*Dybach v. State of Fla. Dep't of Corr.*,
942 F.2d 1562 (11th Cir. 1991) ..............................................................43

*Espenscheid v. DirectSat USA, LLC*,
2011 WL 2009967 (W.D. Wis. May 23, 2011) ................................10, 32

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ...........................................6, 23, 28, 40

*Fares v. H, B, & H, LLC*,
2022 WL 72081 (E.D. Wis. Jan. 7, 2022) ...............................................8

*Fitzgerald v. Forest River Mfg. LLC*,
2022 WL 558336 (N.D. Ind. Feb. 23, 2022)..........................................34

*Flores v. Lifeway Foods, Inc.*,
    289 F. Supp. 2d 1042 (N.D. Ill. 2003) ..................................................................7

*Freeman v. Total Sec. Mgmt.-Wis., LLC*,
    2013 WL 4049542 (W.D. Wis. Aug. 9, 2013) ......................................................8

*Genesis HealthCare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ................................................................................................6

*George v. Kraft Foods Glob., Inc.*,
    641 F.3d 786 (7th Cir. 2011) ..............................................................................40

*Hamadou v. Hess Corp.*,
    915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................................43

*Hannah v. Huntington Nat'l Bank*,
    2020 WL 2571898 (N.D. Ill. May 21, 2020) ......................................................43

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) .................................................................................... *passim*

*Hollins v. Regency Corp.*,
    867 F.3d 830 (7th Cir. 2017) ..............................................................................42

*Horta v. Indy Transp., Inc.*,
    2021 WL 1667078 (S.D. Ind. Apr. 28, 2021) ......................................................7

*Iannotti v. Wood Grp. Mustang*,
    603 F. Supp. 3d 649 (S.D. Ill. 2022) ..........................................................7, 8, 31

*Ill. Republican Party v. Pritzker*,
    973 F.3d 760 (7th Cir. 2020) ..............................................................................28

*In re Allstate Corp. Sec. Litig.*,
    966 F.3d 595 (7th Cir. 2020) ..............................................................................24

*In re HealthCare Compare Corp. Sec. Litig.*,
    75 F.3d 276 (7th Cir. 1996) ................................................................................18

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019) ..............................................................................27

*In re New Albertsons, Inc.*,
    2021 WL 4028428 (7th Cir. Sept. 1, 2021) ..........................................................39

*Ivery v. RMH Franchise Corp.*,
    280 F. Supp. 3d 1121 (N.D. Ill. 2017) .................................................7, 9, 31

*Jirak v. Abbott Lab'ys, Inc.*,
    566 F. Supp. 2d 845 (N.D. Ill. 2008) ................................................................7

*Johnson v. Big Lots Stores, Inc.*,
    561 F. Supp. 2d 567 (E.D. La. 2008) .................................................10, 32, 33, 41

*Karlo v. Pitt. Glass Works, LLC*,
    849 F.3d 61 (3d Cir. 2017) ..................................................................32, 44

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
    2023 WL 4842324 (7th Cir. July 28, 2023) ..........................................................44

*Koren v. Supervalu, Inc.*,
    2003 WL 1572002 (D. Minn. Mar. 14, 2003) .........................................10, 32, 44

*Lee v. Asurion Ins. Servs. Inc.*,
    2016 WL 9525665 (D. Ariz. Dec. 2, 2016) ..........................................................7, 9

*Lusardi v. Xerox Corp.*,
    118 F.R.D. 351 (D.N.J. 1987) .......................................................... *passim*

*Lusardi v. Xerox Corp.*,
    122 F.R.D. 463 (D.N.J. 1988) ..................................................................10, 41

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ..................................................................27

*Meyer v. Panera Bread Co.*,
    344 F. Supp. 3d 193 (D.D.C. 2018) ..................................................................26

*Mitchell v. Villas of Holly Brook Senior Living, LLC*,
    2024 WL 3342504 (C.D. Ill. July 8, 2024) ..........................................................33

*Mooney v. Aramco Servs. Co.*,
    54 F.3d 1207 (5th Cir. 1995) .................................................10, 32, 41

*N.C. Dep't of Rev. v. Kimberley Rice Kaestner 1992 Family Tr.,*
    588 U.S. 262 (2019) ............................................................................22

*Nick v. Koch Meat Co.,*
    265 F. Supp. 3d 841 (N.D. Ill. 2017) .................................................8

*Peterson v. Seagate US LLC,*
    809 F. Supp. 2d 996 (D. Minn. 2011) ..............................................32

*Prater v. All. Coal, LLC,*
    2022 WL 22285581 (S.D. Ind. Mar. 22, 2022)...........................8, 27

*Protect Our Parks, Inc. v. Buttigieg,*
    39 F.4th 389 (7th Cir. 2022).............................................................28

*Puffer v. Allstate Ins. Co.,*
    675 F.3d 709 (7th Cir. 2012).............................................................39

*Strait v. Belcan Eng'g Grp., Inc.,*
    911 F. Supp. 2d 709 (N.D. Ill. 2012) .................................................9

*Swales v. KLLM Transp. Servs., LLC,*
    985 F.3d 430 (5th Cir. 2021) ................................................. *passim*

*Szabo v. Bridgeport Machines, Inc.,*
    249 F.3d 672 (7th Cir. 2001).......................................................25, 28

*The Bail Project, Inc. v. Comm'r, Ind. Dep't of Ins.,*
    76 F.4th 569 (7th Cir. 2023)..............................................................25

*Ty, Inc. v. GMA Accessories, Inc.,*
    132 F.3d 1167 (7th Cir. 1997) ...........................................................24

*Vanegas v. Signet Builders, Inc.,*
    113 F.4th 718 (7th Cir. 2024)..............................................................6

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011)............................................................................25

*Weil v. Metal Techs., Inc.,*
    925 F.3d 352 (7th Cir. 2019) ........................................................6, 33

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996) .................................................................................5

*Zavala v. Wal-Mart Stores, Inc.*,
    691 F.3d 527 (3d Cir. 2012) ...........................................................32, 36

**STATUTES**

28 U.S.C. § 1292 ......................................................................................4, 15

28 U.S.C. § 1331 ...........................................................................................4

28 U.S.C. § 1367 ...........................................................................................4

29 U.S.C. § 216 ...........................................................................1, 5, 6, 35

29 U.S.C. § 621 ...........................................................................................4

29 U.S.C. § 626 ...........................................................................1, 5, 42

**OTHER AUTHORITIES**

93 Cong. Rec. 2182 (Sen. Donnell) ...........................................................36

93 Cong. Rec. 2194, 80th Cong., 1st Session (Sen. Wheeler) .................35

Fed. R. Civ. P. 23.......................................................................................23

## INTRODUCTION

This case presents the important and recurring question of what burden a plaintiff must bear before a court will order notice of a lawsuit to be sent to members of a putative collective of "similarly situated" employees. Many district courts have coalesced around an aberrationally lenient and one-sided test that invites "abuse of the collective-action device" by functionally "solicit[ing] … claims." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). Two sister Circuits have recently rejected that approach. *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1008 (6th Cir. 2023); *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 433 (5th Cir. 2021). This Court should now join them and hold that court-ordered notice is appropriate only upon a meaningful evidentiary showing—one that considers evidence on both sides, including when it overlaps with the merits—that the target set of employees is actually "similarly situated."

This question arises because the Fair Labor Standards Act (FLSA) allows "similarly situated" employees to opt-in to a named plaintiff's case. 29 U.S.C. § 216(b). The Age Discrimination in Employment Act (ADEA) incorporates that regime. *Id.* § 626(b). While neither statute contemplates court involvement in contacting potential plaintiffs, the U.S. Supreme Court nevertheless held as a matter of policy that district courts may approve and order notice "to assure that the task [of joining parties] is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). The Court did not prescribe the threshold showing needed before ordering such notice, however, save to warn that the notice process must avoid "the solicitation of claims" and "even the appearance of judicial endorsement of the merits." *Id.* at 174.

Over time, district courts began following an approach where they "conditionally certif[y]" a collective—and order notice to all persons within the plaintiff's definition of it—based on only a "modest factual showing" of similarity. *Clark*, 68 F.4th at 1008. This is known as the *Lusardi* standard, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). As that test has come to be applied, the burden to obtain notice is so "modest," it barely qualifies as a burden at all. Not only is the required showing openly "lenient," *Clark*, 68 F.4th at 1009, it is not subject to contradiction: District courts will not even consider a defendant's evidence showing that the employees are not "similarly situated." Nor will courts make "merits" determinations, even when plainly relevant to similarity—instead simply assuming the plaintiff is right. All meaningful review of whether the evidence permits a collective proceeding is thus deferred until a second step. But that second step takes place only *after* the court has authorized notice be sent to putative members of the collective, some percentage of those putative members have joined the case as plaintiffs, and full merits discovery is completed as to all of their claims. By that point, considerable damage has been done: litigation costs incurred, putative plaintiffs misled, employment and business relationships impaired, inflated settlement pressure imposed, and the perception of judicial neutrality undermined.

This case is a *Lusardi* poster-child. Monica Richards alleges that she was denied a promotion at Lilly due to her age. She sought court-ordered notice to a wide swath of current and former Lilly employees throughout the United States to solicit them to join her action. Applying *Lusardi*, the district court ordered notice to *thousands* of employees spanning roles, regions, and responsibilities. But it did so based solely on Richards's

complaint and four declarations (including her own), even though those declarations did not address *national* evidence, and did not identify a *single* member of the ostensible collective who, like her, was 40 or older at the time they were passed over in favor of a substantially younger employee for a promotion for which they had applied. Even more strikingly, the court did so while refusing to consider Lilly's counter-evidence showing a lack of similarity, or any arguments intertwined with "merits" issues.

Recently, the Fifth and Sixth Circuits have stepped in to correct *Lusardi*'s problems. *Swales*, 985 F.3d at 433; *Clark*, 68 F.4th at 1008. Notifying a collective without any serious review of whether its members are "similarly situated," both Circuits agreed, finds no support in the statutory text, contradicts the ordinary rules of civil procedure, and serves only to impermissibly and inefficiently stir up litigation. *Lusardi*'s one-sided approach— more akin to a pleading standard than an evidentiary burden—is also inconsistent with how courts resolve analogous preliminary disputes, most obviously class certification under Civil Rule 23. As a general rule, courts do not grant relief as serious as this based on a single party's bare say-so; they do not ignore all the evidence on one side of the scale; and they do not take manifestly relevant issues off the table. *Lusardi* is an outlier in the law, and this Court should now join its sister Circuits in retiring it.

And this Court has already started down that road, having expressed reservations about court-ordered notice to an improper or overbroad collective in *Bigger*. Overbroad notice "misinform[s]" recipients and "unfairly amplif[ies] settlement pressure," contrary to "the neutrality a trial court must maintain when facilitating notice." 947 F.3d at 1049. All of those reservations apply with full force to *Lusardi*.

This Court should therefore reject *Lusardi*, vacate the decision below, and remand for application of the proper standard in determining whether notice should issue. The district court's certification order left little doubt that a more rigorous standard "would certainly affect as a practical matter the scope of the notice and the size of the collective," given Richards's paltry showing and Lilly's substantial contrary submissions. RSA.26. That court should apply the correct rule in the first instance.

## STATEMENT OF JURISDICTION

Richards brought a claim under the ADEA, 29 U.S.C. §§ 621, *et seq.*, as well as a state-law discrimination claim. A.26–27. The district court had federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.

This Court has jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(b), because (1) on March 25, 2024, the U.S. District Court for the Southern District of Indiana issued an order directing court-ordered notice to members of the putative collective, RSA.1–20; (2) on May 10, 2024, the district court certified its decision of March 25, 2024 for interlocutory appeal pursuant to § 1292(b), RSA.21–34; (3) on May 20, 2024, Lilly submitted a timely petition for permission to appeal in this Court, A.19 (ECF 1, Case 24-8017); and (4) on August 29, 2024, on rehearing, this Court granted permission to appeal, A.20 (ECF 21, Case 24-8017). No motion for new trial or alteration of the judgment has been filed. This case is not a direct appeal from the decision of a magistrate judge.

The order certified for appeal presents the question of the legal standard required to issue court-ordered notice in an ADEA collective action to members of a putative collective. The order granted such notice on Richards's request, but in certifying the order

for appeal, the court stayed that notice.  RSA.32.  That stay was briefly lifted when the panel denied permission to appeal.  A.129–30.  But, after this Court's grant of permission to appeal on rehearing, the district court again stayed "notice to opt-in plaintiffs … until Defendants' interlocutory appeal … has been fully exhausted."  A.134.  All other issues remain before the district court.  And the same parties are before both courts.

## STATEMENT OF THE ISSUE

A district court overseeing a collective action may authorize notice to "similarly situated" employees.  *Hoffmann-La Roche*, 493 U.S. at 168.  The issue in this interlocutory appeal is whether courts may order notice merely on a "modest showing" of similarity that ignores evidence submitted by the defendant and disregards objections to similarity that overlap with the merits, as the court below held; or whether courts should instead apply a higher standard and consider all record evidence and relevant issues, as the Fifth and Sixth Circuits have held?  RSA.32 (certification order); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (entire order subject to review).

## STATEMENT OF THE CASE

### A.     Legal and Doctrinal Background.

<u>Collective Actions.</u>  Both the FLSA and ADEA authorize an employee who alleges a violation to sue on "behalf of himself" and "other employees similarly situated."  29 U.S.C. § 216(b); *see also id.* § 626(b) (incorporating § 216(b)).  Known as "collective actions," these suits are "similar to class actions governed by Federal Rule of Civil Procedure 23."  *Bigger*, 947 F.3d at 1046 n.1.  There are also differences, however. While "a putative class acquires an independent legal status once it is certified under Rule 23," a collective action

5

requires plaintiffs to opt-in, and the collective has no "independent legal status" upon "conditional certification." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *see also Weil v. Metal Techs., Inc.*, 925 F.3d 352, 355 n.1 (7th Cir. 2019) (describing this as the "primary difference" between "Rule 23 and collective actions"). Unlike class actions, collective actions are therefore really just "agglomerations of individual claims." *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 725 (7th Cir. 2024).

Despite that difference, both types of action ask the court to resolve claims for a group as a whole. Whether it makes sense to do so thus turns on the same familiar issues of commonality and manageability. This Court has thus observed that "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).

<u>Notice.</u> Because of the opt-in structure of collective actions, "similarly situated" employees need to learn about and then join the action by filing a consent in writing in order to participate. *Hoffmann-La Roche*, 493 U.S. at 170; 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action [under § 216(b)] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the statute does not provide for court-ordered notice to putative plaintiffs, the Supreme Court has held that district courts may, using their inherent power over "management of litigation," order that "notice" of the putative collective action be distributed to "similarly situated" employees. *Hoffmann-La Roche*, 493 U.S. at 169–73 (concluding that "trial court involvement in the notice process is inevitable" given court's need to review adequacy of "written consent" to join following solicitation).

6

But the rub comes in determining *who* should receive notice, *when*, and *upon what evidentiary showing*. In *Hoffmann-La Roche*, the Supreme Court emphasized that trial court involvement in notice must be "distinguishable … from the solicitation of claims," "scrupulous to respect judicial neutrality," and "avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. But the Court otherwise left open "the details"; it merely "confirm[ed] the existence" of a court's authority to order notice. *Id.* at 170. This provided "little guidance that one can call law." *Clark*, 68 F.4th at 1007.

The *Lusardi* Test. Courts filled that vacuum with a two-step approach associated with the District of New Jersey's *Lusardi* decision. The first step governs whether and to whom to send notice. Plaintiffs need only make a "modest factual showing" that other employees "were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *accord, e.g., Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014); *Horta v. Indy Transp., Inc.*, 2021 WL 1667078, at *2 (S.D. Ind. Apr. 28, 2021); RSA.4 (quoting this standard). Courts following *Lusardi* "use a 'lenient interpretation' of the term 'similarly situated'"—and a "low standard of proof"—"in deciding whether plaintiffs meet [their] burden." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1133 (N.D. Ill. 2017); *see, e.g., Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022) ("[t]he modest factual showing is a lenient burden of proof"); *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) ("nothing more than substantial allegations" required); *see also Lee v. Asurion Ins. Servs. Inc.*, 2016 WL 9525665, at *2 (D. Ariz. Dec. 2, 2016) ("The burden at the first step has been described as 'very light, low, or fairly lenient.'").

7

In conducting that "modest" evaluation, courts also "focus" exclusively "on [the] plaintiff's submissions," *Freeman v. Total Sec. Mgmt.-Wis., LLC*, 2013 WL 4049542, at *4 (W.D. Wis. Aug. 9, 2013), and "do[] not … consider opposing evidence presented by a defendant," *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013); *see also, e.g.*, *Prater v. All. Coal, LLC*, 2022 WL 22285581, at *2 (S.D. Ind. Mar. 22, 2022) (court does not "weigh evidence, determine credibility, or specifically consider opposing evidence"); *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 606 (W.D. Wis. 2006) ("focus at this stage is on plaintiff's submissions"); *Bitner*, 301 F.R.D. at 362 (granting certification despite "strong argument" against similarity, because "court resolves factual disputes in plaintiffs' favor at this stage"). So, as the court below put it, if "the parties' evidentiary submissions directly conflict, they will be resolved—for purposes of this order only—in plaintiffs' favor." RSA.4.

And, at step one, *Lusardi* prohibits considering anything that resembles or overlaps with a "merits issue," even if it bears on the scope or viability of the collective. *Nick v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849, 853–55 (N.D. Ill. 2017); *see also, e.g.*, *Prater*, 2022 WL 22285581, at *2 (courts do "not make merits determinations" at first step); *Fares v. H, B, & H, LLC*, 2022 WL 72081, at *3 (E.D. Wis. Jan. 7, 2022) (refusing to address "merits issue" whether notice recipients were "employees" rather than independent contractors); RSA.8. For example, courts often refuse to assess whether members of the putative collective qualify for an FLSA exemption, *e.g.*, *Iannotti*, 603 F. Supp. 3d at 653; in ADEA cases, courts have refused to consider challenges to plaintiffs' "statistical data," *Andreana v. Va. Beach City Pub. Schs.*, 2018 WL 2144151, at *3 (E.D. Va. May 9, 2018).

To be sure, *Lusardi* has been applied many times by courts across the country, and there are undeniably variations in how they have formulated its test. But, at least as *Lusardi* has come to be applied by courts in this Circuit (including in the order below), its three key components are: (1) the showing to obtain court-ordered notice is modest, as to both the quantum of evidence and the degree of similarity required; (2) defendants' evidence will not be considered in determining whether that showing has been made; and (3) the court will ignore any defenses to similarity that overlap with the merits. As shorthand, Lilly refers to that collection of features as the *Lusardi* test.

If plaintiffs meet the "very low standard" of this "first step," *Asurion*, 2016 WL 9525665, at *2, courts "conditionally certify the suit as a collective action and allow the plaintiffs to send notice." *Ivery*, 280 F. Supp. 3d at 1133. (Conditional certification, which is a concept that does not appear in the statute, is just another way of saying that court-ordered notice will issue.) Only "[t]hereafter," at a second step after additional plaintiffs have accepted the solicitation to join and "merits discovery is complete—assuming the case has not settled in the meantime, which it usually has—the court takes a closer look at whether th[e] 'other employees' are, in fact, similarly situated." *Clark*, 68 F.4th at 1008. The "court's inquiry becomes more stringent" at step-two; at that stage, plaintiffs "bear the burden," the court applies "a much stricter standard," and the analysis embraces the full range of "fairness and procedural concerns." *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012). If the evidence then shows no sufficient similarity, the collective gets decertified, meaning the putative plaintiffs were misled and all parties wasted time and money on merits discovery for the entire invalid collective.

Given that all rigorous analyses are deferred until the second stage, decertification proceedings are common.  Collectives are decertified where no "company-wide action" links the acts "of different decision-making supervisors," *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214–16 (5th Cir. 1995); where the evidence shows only "variable practices variably applied," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1120 (9th Cir. 2018); where the employees "worked at different jobs in different business units located at different locations," *Koren v. Supervalu, Inc.*, 2003 WL 1572002, at *16 (D. Minn. Mar. 14, 2003); where plaintiffs "were affected by defendants' policies in different ways," *Espenscheid v. DirectSat USA, LLC*, 2011 WL 2009967, at *7 (W.D. Wis. May 23, 2011), *aff'd* 705 F.3d at 775; and where individualized differences among plaintiffs prevent the defendant from "assert[ing] its … defense on a collective basis," *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 586 (E.D. La. 2008).  Indeed, *Lusardi* itself eventually decertified its own collective, concluding that "[t]he opt-in plaintiffs performed different jobs at different geographic locations and were subject to different job actions … made on a decentralized employee-by-employee basis," making it problematic to adjudicate "disparate individual defenses" on a collective basis.  *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465–66 (D.N.J. 1988).

Although decertification thus often turns on facts that would be readily apparent from the outset, *Lusardi*'s lenient first step kicks the can until after substantial resources have been expended and a significant number (sometimes thousands) of plaintiffs have joined as party plaintiffs.  *See, e.g.*, *Johnson*, 561 F. Supp. 2d at 570, 587 ("The Court regrets that it must decertify this action at this stage, after the large investment of resources by the parties," including "43 hours of live trial testimony.").

10

Rejection of *Lusardi*.  Over the last several years, two Circuits have rejected this framework.  Court-authorized notice cannot go out, the Fifth and Sixth Circuits have now held, unless the plaintiff first makes a meaningful showing (whether by a preponderance of the evidence, or a strong likelihood) that the employees are in fact "similarly situated." *Clark*, 68 F.4th at 1009–11; *Swales*, 985 F.3d at 434.  To make that determination, courts must consider the entire factual record, not close their eyes to the defendant's "evidence of dissimilarity."  *Swales*, 985 F.3d at 441; *see also Clark*, 68 F.4th at 1012 (both "parties' evidence" should be considered).  And, as with certification of class actions, district courts must consider "merits questions" that overlap with the similarly-situated determination. *Clark*, 68 F.4th at 1012 ("nearly every defense concerns the claim's merits"); *Swales*, 985 F.3d at 442 (court is "likely to send notice to employees who are not potential plaintiffs" if it "ignores that it can decide merits issues when considering the scope of a collective"). Both Circuits thus rejected each relevant facet of *Lusardi*: (1) the modest showing; (2) the blindness to defendants' evidence; and (3) the exclusion of merits questions.

### B.     Factual and Procedural Background.

Conditional Certification Motion.  Monica Richards is a Lilly employee who claims she was denied a promotion because of her age.  She further claims that other employees over 40 years old may have been harmed by a common plan or scheme to disfavor them in promotion in violation of the ADEA.  So she brought a collective action.  RSA.2.  Before discovery, Richards moved for "conditional certification" of a collective of "[a]ll Eli Lilly employees who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022."  RSA.2.

That proposed collective would sweep in thousands of Lilly employees across geographies, departments, business units, positions, and supervisors. Yet Richards based her motion for conditional certification solely on her own complaint and four declarations (including her own, and one from her boyfriend), none of which came close to suggesting the existence of a viable nationwide collective. A.21–47.

Richards's own declaration averred that she applied to a District Sales Manager position in the Diabetes Business Unit in Boston in "late July or early August 2022" when she "was 53 years old[,]" and was ultimately "not selected for the role." A.38–39. She stated that she "believe[s] that Eli Lilly did not promote [her] … because of [her] age," since another employee "in her late 20s" was hired into the position due to Lilly's alleged "focus on hiring only 'Early Career Professionals,' or 'ECPs.'" *Id.*

Richards's three other declarants also made passing references to ECPs, but none stated that he or she had similarly sought out, and was denied, a promotion in favor of a younger employee. Herold Oluoch, a scientist at Lilly's research labs in Indianapolis, contended that Lilly "passed [him] over for a promotion in favor of an ECP at least eight times[,]" yet did not state that he ever applied for or sought out any specific position. A.42–43. Christina Sosa, a former Executive Sales Representative based in Florida, said she was "constructively discharged from Eli Lilly on November 26, 2021"—which was months *before* the relevant collective period and had nothing to do with *promotions*. A.47. James Sweeney, an Executive Business Director in the Diabetes Business Unit residing in Massapequa, New York—who happens to be Richards's boyfriend—did not state that he ever sought, or was denied, a promotion at Lilly. A.31–35.

Each declarant claimed to be aware of other similarly situated employees at Lilly who were allegedly not promoted (or hired at the outset, even though Richards's claim is about promotions), but none actually identified any specific individual by name or even pseudonym, or provided any factual basis to infer the existence of a nationwide, company-wide scheme or plan to disfavor older employees in promotions. *See* A.35 (Sweeney is "aware of at least 20 Eli Lilly employees over the age of 40 … who are qualified for more senior sales representative roles, have expressed interest in being promoted, and have not been promoted"); A.40 (Richards "expect[s] that there are many other employees over the age of forty who have been passed over for promotions"); A.43 (Oluoch is "aware of at least one other employee over the age of 40 who has never been promoted").

Overall, Richards's submissions failed to identify a single employee who, like her, sought but was denied a promotion that was instead awarded to a substantially younger employee during the relevant period. Nor did she explain how such an unbounded collective could be reconciled with "Lilly's organizational structure and discretionary policies used in evaluating employees for promotion." RSA.11.

In opposition, Lilly submitted a declaration from Matthew "Kip" Chase, Senior Vice President, Human Resources, as well as various internal Lilly documents, demonstrating that Richards's alleged common policy—the so-called ECP initiative— was focused on *hiring* for *entry-level positions*, not *internal promotions*, and that in any event the last aspirational hiring goals set by the ECP were in 2020, well before the start of the putative collective period. A.52–53; *see also* A.96–128.

13

As for internal promotions, Lilly submitted evidence of its organizational structure (decentralized) and its policies used to evaluate employees for promotion (discretionary), both cutting against the existence of any common policy or plan. A.50–51; *see also* A.90. Lilly also submitted a declaration from William Watson, Lilly's Manager-Talent Acquisition Compliance SME, stating that Herold Oluoch "did not apply to any open job postings, including for any positions above his current level," during the relevant collective period. A.94.

Decision Below. Adhering to *Lusardi*, the district court granted Richards's motion. The court acknowledged Lilly's "substantial" evidence that the targeted employees were not "similarly situated," but—per *Lusardi*'s bar on merits questions and exclusion of defense evidence—it thought this proof was "misplaced" and "inappropriate at this step" and so refused even to "consider" it. RSA.7-8; *see also* RSA.11 (reiterating that court "does not make merits determinations, weigh evidence, or specifically consider opposing evidence at this stage"). Under the "lenient 'modest showing' standard," it sufficed that Richards "show[ed] 'some factual nexus' that connects her to 'other potential plaintiffs.'" RSA.2, 9. Everything else could be deferred to step two, when "decertification may be appropriate." RSA.13. The court therefore ordered notice to be sent to every Lilly employee over 40 who was denied a promotion since February 12, 2022. RSA.19.

Lilly had urged the district court to jettison *Lusardi* and align with the Fifth and Sixth Circuits instead. Despite recognizing that *Lusardi*'s "two-step process is n[either] statutorily mandated" nor "required by the Seventh Circuit," the court "decline[d] Defendants' invitation" to demand a higher showing. RSA.3, 6.

14

But the district court did agree with Lilly that its order was appropriate for § 1292(b) review.  RSA.32.  In addition to agreeing that the question was purely legal and that its resolution would materially advance the ultimate resolution of the litigation, the court foreshadowed that applying a "more rigorous" standard "would certainly affect as a practical matter the scope of the notice and the size of the collective."  RSA.26.  And it readily acknowledged the "well-reasoned decisions in *Swales* and *Clark* and the burgeoning adoption in several circuits of positions conflicting with the 'modest' showing customarily utilized."  RSA.29.

To avoid mooting the question in the interim, the district court thus stayed "the issuance of notice to members of the putative collective," pending resolution of a petition for interlocutory appeal, and also ordered "the statute of limitations for members of the conditionally certified collective … to be tolled pending notification of a decision from the Seventh Circuit Court of Appeals."  RSA.32.

<u>Proceedings in this Court.</u>  A panel of this Court initially denied Lilly permission to appeal, but later granted permission following a timely rehearing petition.  *See* A.19–20.  The district court then reinstated a stay of "notice to opt-in plaintiffs … until Defendants' interlocutory appeal … has been fully exhausted."  A.134.

## SUMMARY OF ARGUMENT

**I.**  *Lusardi* is a legal aberration that this Court should reject.  As typically applied by lower courts in this Circuit, it contains three fundamental flaws that cannot be squared with this Court's precedent; the recent Fifth and Sixth Circuit decisions; or analogous preliminary determinations, such as Rule 23 class-certification or preliminary injunctions.

15

**A.**  The first flaw under the *Lusardi* step-one analysis is that district courts consider only the plaintiff's evidence of similarity when deciding whether to issue notice. That procedure is irreconcilable with this Court's reasoning in *Bigger*, which necessarily requires courts to give the defendant an opportunity to counter the plaintiff's evidence of similarity.  It also splits from other circuits and from accepted practice for analogous preliminary determinations that trigger judicial action.

**B.**  The second flaw is that *Lusardi* ignores any issues that overlap with the merits when deciding whether to issue notice.  Courts familiar with collective actions' cousin, class actions under Rule 23, will immediately see the problem: Courts *must* consider merits issues when making certification decisions.  *Lusardi*'s atypical refusal to do so makes no sense, as the Fifth and Sixth Circuits have explained, and ultimately runs afoul of *Bigger*'s instruction to consider all evidence necessary to determining similarity.

**C.**  *Lusardi*'s "modest burden" is its third flaw.  Calling it a "burden" gives it too much credit.  It is out of step with the logic of *Bigger* and the analogies to Rule 23 and the preliminary-injunction standard, which require plaintiffs to make a meaningful showing to justify the significant practical consequences of a district court authorizing notice.  A showing so modest that defendants often do not bother to contest it fails to respect the guiding principles of *Hoffmann-La Roche*.

**II.**  The *Lusardi* approach is not only mistaken as a matter of law; it is also badly misguided as a matter of policy.  The Supreme Court in *Hoffmann-La Roche* grounded its "notice" rule not in text but in policy and purpose.  Using those guideposts, *Lusardi* fails. It is inefficient, wasteful, and inconsistent with the principle of judicial neutrality.

**A.** *Lusardi* wastes resources, because its too-lenient test will necessarily often bring persons into the litigation who will turn out *not* to be similarly situated. Experience bears this out: "Decertification" following a *Lusardi* first step is common. And because decertification is considered only *after* the close of discovery, *Lusardi* provides no path for an early course-correction. It instead bakes error into the collective-action cake.

**B.** The *Lusardi* standard also creates the improper settlement pressure contemplated by *Bigger*, by dramatically inflating the scope of prospective liability before any meaningful determination of whether that scope is appropriate. It creates that undue pressure even in cases where (as in *Bigger*) it would only take a minimal rebuttal showing to conclusively refute the proposed plaintiffs' eligibility to join the suit.

**C.** *Lusardi* also undermines judicial neutrality, because it gives judicial imprimatur to a collective action based on a uniquely low standard that excludes defense evidence and refuses to consider affirmative defenses. Indeed, even defendants who vigorously oppose a collective action sometimes *stipulate* that the low *Lusardi* showing is met—which illustrates how clear it is to defendants that they simply cannot be heard at the "first step."

**III.** The legal and policy arguments that have been raised in *Lusardi*'s defense, or in opposition to a more robust standard, do not withstand scrutiny.

**A.** As for the law, *Hoffman-La Roche* does not extend district court discretion to determining the *standard* for exercising that discretion, as this Court has already held in *Bigger*. Nothing in this Court's decisions or unpublished orders requires delegating this pure question of law to district courts on a case-by-case basis.

**B.** As for sound policy, it is not the case that certification, notice, and full merits discovery are required to conduct a meaningful threshold inquiry into similarity. As in the Rule 23 context, courts can determine at the outset, aided by limited discovery as appropriate, whether a common policy was applied across a group of employees. If each plaintiff's claim would feature significant individualized proof subject to plaintiff-specific defenses, that cuts strongly *against* proceeding on a collective basis.

**C**. This Court's precedent already ensures that any delay in notice will not cause the claims of similarly situated ADEA plaintiffs to expire. Tightening the standard for issuing notice does not require the Court to disturb that existing practice.

**IV.** This Court should vacate the decision below, and remand for the district court to apply a standard that requires a persuasive showing in light of all record evidence, without excluding consideration of merits issues. The district court has already indicated that such a standard would likely lead to a different result, and the district court is best positioned to apply the new standard in the first instance.

## STANDARD OF REVIEW

As the district court explained in certifying its order for interlocutory appeal, the only issue before the Court is the legal standard that must be satisfied before the court will order notice to be sent to a putative collective of similarly situated employees. RSA.32. That is a pure "question of law," and "review[ed] *de novo*." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 279 (7th Cir. 1996); *see also Bigger*, 947 F.3d at 1048 (noting that "management of a collective action" is reviewed "for abuse of discretion," but "we review *de novo* legal conclusions underlying the court's decision").

18

**ARGUMENT**

Sending notice to nonparties informing them that they might want to join a lawsuit is not a typical task of a federal district court. *Hoffmann-La Roche* permitted it as a matter of policy, but the Supreme Court simultaneously emphasized its limits. To prevent the notice process from morphing into "solicitation of claims," courts "must be scrupulous to respect judicial neutrality" and take care "to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174.

*Lusardi* fails to respect those principles. It is inconsistent with the Supreme Court's instructions, this Court's precedents, and tests for analogous preliminary determinations, most obviously Rule 23 class certification. *Lusardi* is also misguided as a practical matter: It wastes resources by inviting into the case employees who cannot actually participate, creates undue settlement pressure, and in practice ends up looking more like a judicial rubber stamp than a "scrupulous[ly] … neutral[]" determination. *Lusardi*'s misbegotten approach finds no support in law or policy, and this Court should therefore reject it, just like the Fifth and Sixth Circuits recently did. At that point, this case should be sent back to the district court for reconsideration under a proper legal framework.

**I.    *LUSARDI* IS INDEFENSIBLE AS A MATTER OF LAW.**

As typically applied by courts in this Circuit, including the order below, *Lusardi*'s test for sending court-ordered notice has three key features—and three key flaws. It begins by looking only to the *plaintiff's* evidence of commonality, ignoring all evidence from the defendant that could help the court avoid soliciting claims from employees too dissimilar to join the action. It compounds that error by refusing to consider any issues

19

that overlap with the merits, further blinding courts to relevant evidence for deciding who should receive notice. Finally, having removed these crucial evidentiary checks on overbroad notice, *Lusardi* imposes such a "modest" burden on plaintiffs to demonstrate similarity that it amounts to no burden at all. All of this is legally aberrational and wrong.

### A.     *Lusardi* Errs by Ignoring All Evidence of Dissimilarity.

At *Lusardi* step-one, district courts usually consider only the plaintiff's evidence of similarity and ignore any opposing evidence presented by the defendant. *See supra* at 8 (citing cases). That one-sided procedure cannot be squared with this Court's guidance in *Bigger*; it has been rejected by both the Fifth and Sixth Circuits; and it reflects a stark departure from accepted practice for analogous preliminary determinations.

**1.** In *Bigger*, this Court addressed whether district courts "may authorize notice to individuals who, according to the defendant, entered valid arbitration agreements waiving their right to join the action." 947 F.3d at 1049. To answer that question, the Court looked to the considerations the Supreme Court identified in *Hoffman–La Roche*: namely, "the goals and dangers of collective actions and [] the neutrality a trial court must maintain when facilitating notice to potential plaintiffs." *Id.* While collective actions can promote "enforcement and efficiency," they also "present dangers"—the opportunity to "abus[ively] … wield the collective-action format for settlement leverage," and the risk that "notice giving … may become indistinguishable from the solicitation of claims." *Id.* Courts must "counter these dangers" by carefully exercising the discretion to order notice, being "'scrupulous to respect judicial neutrality,'" and "avoiding even the appearance of endorsing the action's merits." *Id.* (quoting *Hoffman–La Roche*, 493 U.S. at 174).

20

Applying these principles, this Court reasoned that providing notice to employees who signed arbitration agreements could "inflate settlement pressure" and "facilitate abuse of the collective-action device" without furthering the goals of efficiency or enforcement. *Id.* at 1050. Indeed, if "the court has been shown certain individuals may not join the action," sending them notice and only later weeding them out would be "*in*efficient." *Id.* And in any event, "efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device." *Id.* Consequently, this Court held that "a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action." *Id.* As a necessary corollary, this Court explained that "the court must give the defendant an opportunity to make that showing." *Id.*

*Bigger* contradicts *Lusardi*'s one-sided approach, because it specifically holds that "the defendant" must be afforded an "opportunity" to make the "showing" that certain employees are ineligible to receive notice. *Id.* Yet under *Lusardi*, the defendant is afforded *no* opportunity to make *any* showing of its own—or, at least, the court will not consider it. Of course, *Bigger* dealt with employees who were ineligible to join a collective suit for one specific reason: because they had signed arbitration agreements. But its reasoning applies with equal force to *any* employees who are ineligible to join a collective suit based on *any* demonstrated dissimilarity. Just as sending notice to an employee who has agreed to arbitrate could only undermine the goals of the collective-action device, so too sending notice to an employee who is not similarly situated for other reasons offers no cognizable benefits and the same serious costs.

21

**2.** The Fifth and Sixth Circuits' recent decisions highlight this very problem with *Lusardi*, and reject this feature of its step-one standard.

In *Swales*, the Fifth Circuit held that district courts must "consider all of the available evidence" to determine "whether and to whom notice should be issued." 985 F.3d at 442. The Court condemned *Lusardi*'s refusal to consider evidence of dissimilarity because the resulting order "is likely to send notice to employees who are not potential plaintiffs," thus "crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool"—which "*Hoffmann–La Roche* flatly forbids." *Id.*

The Sixth Circuit in *Clark* likewise concluded that district courts must endeavor to confine notice "only to employees who are in fact similarly situated," which requires up-front consideration of "whatever evidence" both sides present—including "'the different defenses to which the plaintiffs may be subject.'" 68 F.4th at 1010, 1012. *Clark* justified that more rigorous framework by recognizing that "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own." *Id.* at 1010 (citing *Swales*, 985 F.3d at 434).

**3.** Finally, *Lusardi*'s blinders to defendants' evidence are out-of-step with analogous areas of law. *Cf N.C. Dep't of Rev. v. Kimberley Rice Kaestner 1992 Family Tr.*, 588 U.S. 262, 269 (2019) ("borrow[ing] from [a] familiar test" in the jurisdictional context to adjudicate an analogous issue). There are two obvious points of comparison: certification of a class action under Federal Rule of Civil Procedure 23, and the preliminary-injunction analysis. In both contexts, courts consider *both sides'* evidence before granting any sort of affirmative relief.

Rule 23 certification overlaps with the question here, since that process too looks to whether absent individuals have enough in common with the plaintiffs to litigate as a group. *See* Fed. R. Civ. P. 23(a)(2)-(3). Like the collective-action notice inquiry, Rule 23 certification calls on the court to make a preliminary determination that is subject to later revisiting but dictates how the litigation will unfold in the interim (including by notifying absent class members). Given these similarities, this Court has long observed that "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid*, 705 F.3d at 772; *see also Hoffman–La Roche*, 493 U.S. at 171 (analogizing to Rule 23 in concluding that courts have power to authorize notice); *see also id.* at 177 (Scalia, J., dissenting) (criticizing majority for "analogizing" to Rule 23).

As the Sixth Circuit explained, "[a] district court's determination to facilitate notice in an FLSA suit" is also "analogous to a court's decision whether to grant a preliminary injunction." *Clark*, 68 F.4th at 1010. Both determinations overlap with the merits—here, whether the nonparty employees are "similarly situated"—but both determinations are "provisional, in the sense that the court renders a final decision on the underlying issue . . . only after the record for that issue is [further] developed; yet both decisions have immediate consequences for the parties." *Id.* at 1010–11. And, unlike other "provisional" determinations, both preliminary-injunction and notice decisions call on the court to take some affirmative action at the plaintiff's request, and to the defendant's detriment, even though the case remains in a preliminary posture. These similarities support looking to the long-established preliminary-injunction standard as a guide for the notice process.

One proposition is clear across these contexts: Courts must consider evidence on both sides, not just that put forth by the movant. "If the parties dispute factual issues that are material under Rule 23, a court must 'receive evidence … and resolve the disputes before deciding whether to certify the class.'" *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020). In the same way, "[i]f genuine issues of material fact are created by the response to a motion for a preliminary injunction, an evidentiary hearing is indeed required." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). In both of these contexts, allowing both sides to present evidence helps minimize the risk that the requested judicial action will be taken—and cause real consequences for the parties—in situations where the action is not appropriate.

Each road leads to the same destination: Before taking the consequential step of issuing notice to a proposed group of similarly situated employees, a district court must seriously consider whether those employees are appropriate recipients by taking into account evidence presented by both sides, rather than simply relying on the plaintiff's submissions. In instructing otherwise, *Lusardi* goes astray.

**B.     *Lusardi* Errs by Ignoring Issues That Overlap with the Merits.**

In addition to declining to consider any evidence of dissimilarity offered by the defendant, the *Lusardi* step-one analysis takes entire points of dissimilarity off the table if they overlap with the merits—effectively assuming, for notice purposes, that the plaintiff is *correct* on the merits of the claim under the FLSA or ADEA. *See supra* at 8 (citing cases). For many of the same reasons discussed above, this blinkered approach is wrong.

**1.**  Once again, comparison to analogous contexts demonstrates that merits-related issues should not be ignored.  Start with Rule 23.  In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court emphatically held that the Rule 23 commonality analysis "[f]requently … will entail some overlap with the merits of the plaintiff's underlying claim."  564 U.S. 338, 351 (2011).  In a discrimination case, for example, "proof of commonality necessarily overlaps" with the "merits" contention that the employer "engages in a *pattern or practice* of discrimination."  *Id.* at 352.  Merits issues are thus on the table if they go to commonality.  *Accord Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-677 (7th Cir. 2001) (recognizing, pre-*Dukes*, that "if some of the considerations under Rule 23(b)(3) … overlap the merits … then the judge must make a preliminary inquiry into the merits").  The same should be true if the merits issues go to whether a collective is "similarly situated."

Likewise for preliminary injunctions.  In that context, a movant must show "a likelihood of success on the merits," which of course entails full consideration of issues affecting the merits of the litigation.  *The Bail Project, Inc. v. Comm'r, Ind. Dep't of Ins.*, 76 F.4th 569, 572 (7th Cir. 2023).  As the Sixth Circuit explained in *Clark*, "[w]hat the notice determination undisputedly shares in common with a preliminary-injunction decision … is the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision."  68 F.4th at 1011.  In this context the underlying issue is the "similarity" of the plaintiffs — whether they were subjected to a common, unlawful policy or scheme — and so it makes little sense to disregard the "merits" in making a preliminary assessment of that question.

**2.** The Fifth and Sixth Circuits have rejected this aspect of *Lusardi* too. The Fifth Circuit explained that "[w]hen a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the 'similarly situated' analysis and is likely to send notice to employees who are not potential plaintiffs." *Swales*, 985 F.3d at 442. "The fact that a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out." *Id.* at 441. Similarly, the Sixth Circuit brushed off the suggestion that a defense should be ignored if it presents "merits questions," because "nearly every defense concerns the claim's merits." *Clark*, 68 F.4th at 1012. After all, "[t]he very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims," so as to make collective litigation advantageous and efficient. *Id.* To ignore the merits is to ignore the entire purpose of the inquiry.

Tellingly, both the Fifth and Sixth Circuits identified *arbitration agreements* as the kind of merits-related issue that must be considered before authorizing notice—thereby aligning with this Court's ruling in *Bigger*. Indeed, many district courts treat the existence of arbitration agreements as "a merits-based determination better dealt with at the decertification stage." *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 206–07 (D.D.C. 2018) (collecting cases). The Sixth Circuit in *Clark* rejected that notion, specifically flagging an "arbitration defense" as within the proper scope of "the notice determination because that defense presents 'merits questions.'" 68 F.4th at 1012. And the Fifth Circuit based its decision in *Swales* on its prior decision in *In re JPMorgan Chase & Co.*, which had held— like *Bigger*—that "it is error for a district court to order notice to be sent to [an] employee"

26

who has entered a valid arbitration agreement.  916 F.3d 494, 503 (5th Cir. 2019).  The merits issue in *Swales* "resemble[d] the issue of arbitration agreements in *JPMorgan*," the Court reasoned, since both are "potentially dispositive, threshold matters" that could bar some plaintiffs' participation in the suit.  *Swales*, 985 F.3d at 441.

As these decisions indicate, *Lusardi*'s refusal to consider questions that overlap the merits ultimately conflicts with *Bigger* itself, too.  For a district court to meet its obligation to avoid authorizing notice to employees who "may not join the action," it must consider *all* evidence put forth by the parties relating to similarity—including evidence that relates to the merits of the plaintiff's claim.  *See Bigger*, 947 F.3d at 1050.

### C.  *Lusardi* Errs by Holding Plaintiffs to Only a "Modest" Burden.

Consistent with these blinders, the *Lusardi* step-one analysis asks plaintiffs to make only a "modest" showing of similarity before a court orders notice—and by "modest," courts really mean *de minimis*.  *See supra* at 7 (citing cases).  By encouraging courts to award notice whenever plaintiffs meet this slight burden, and punting any rigorous review of the issues until a subsequent stage, *Lusardi* once again deviates in an extreme way from comparable preliminary determinations, and flouts the guardrails the Supreme Court emphasized were critical to the notice process.

**1.** Both the Rule 23 class certification and preliminary-injunction standards require a party seeking judicial action to satisfy a meaningful burden, not merely a nominal one. To secure Rule 23 class certification, plaintiffs must prove "each disputed requirement … by a preponderance of evidence."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015)

("The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence," following a "rigorous analysis."); *Szabo*, 249 F.3d at 675 ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it."). To obtain a preliminary injunction, a movant must likewise make a "'strong' showing of likelihood of success" on the merits. *Protect Our Parks, Inc. v. Buttigieg*, 39 F.4th 389, 397 (7th Cir. 2022); *see also Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) (noting this "strong showing" standard places a "significant burden" on party seeking injunction).

Importantly, these rigorous standards apply even though both decisions are to some degree provisional. "[C]lasses may be certified, modified, or decertified as the case progresses," *Asher v. Baxter Int'l, Inc.*, 505 F.3d 736, 740 (7th Cir. 2007), and preliminary injunctions are necessarily reconsidered as the suit is litigated on the merits. Because both determinations nonetheless carry serious practical consequences for the litigation and parties in the interim, courts put the onus on the requesting party to persuade the court that those consequences will not be in vain. *See, e.g., Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 474 (2013) (explaining that certification "can exert substantial pressure on a defendant 'to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability'").

There is no reason why a fundamentally different approach should apply when a plaintiff seeks notice to a supposedly "similarly situated" collective. *Accord Espenscheid*, 705 F.3d at 772 ("there isn't a good reason to have different standards for the certification

of the two different types of action").  Like a certification order or a preliminary injunction, sending court-ordered notice has real consequences for the defendant.  *See Clark*, 68 F.4th at 1007 (observing that "decision to send notice" at first step of *Lusardi* "often … forc[es] a defendant to settle"); *see also infra*, Parts II.A & II.B (discussing costs imposed by notice to an overbroad collective).  Like a certification order or a preliminary injunction, the plaintiff should therefore be required to bear a meaningful evidentiary burden to assure the court that this judicial action and its consequences are warranted by the facts.

**2.**  Here too, the Fifth and Sixth Circuits agree that *Lusardi* is flawed.  As the Fifth Circuit explained in *Swales*, the only way to avoid "signal[ing] approval of the merits or otherwise stir[ring] up litigation" is for a district court to "rigorously scrutinize the realm of 'similarly situated' workers … [to] determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs."  985 F.3d at 434; *see also Clark*, 68 F.4th at 1009–10 (explaining that *Swales* requires plaintiffs to prove similarity by preponderance of evidence).

The Sixth Circuit saw the problem the same way: Because "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own … [t]o the extent practicable … court-approved notice of the suit should be sent only to employees who are in fact similarly situated." *Clark*, 68 F.4th at 1010.  Indeed, the Sixth Circuit expressly adopted the preliminary-injunction analogy on this point, requiring plaintiffs to show a "strong likelihood" that notice recipients would be similarly situated.  *Id.* at 1011.

**3.** *Lusardi*'s low burden is also tethered to—and therefore falls with—the two other features of the standard addressed above. Because *Lusardi* requires the plaintiff to make only a "modest factual showing" of similarity, courts can safely ignore both contrary evidence and merits issues, waiting to consider them until the decertification phase after notice and discovery. But speeding around these roadblocks creates exactly the kind of risks that *Bigger* warns of; "efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device." 947 F.3d at 1050. To carry out *Bigger*'s command to avoid broadly authorizing notice to employees who would not be able to join the action, a court must not do so until it has determined that the plaintiff has made a substantial showing that the proposed recipients are appropriate, based on all the relevant evidence and issues.

Whether based on analogous reasoning or the principles of *Bigger*, the right answer is clear: Plaintiffs must make a meaningful showing that recipients are truly "potential plaintiffs" before courts order notice to issue. *Hoffmann–La Roche*, 493 U.S. at 169.

\*       \*       \*

*Lusardi*'s step-one analysis conflicts with established law at every turn. A district court's refusal to consider a defendant's evidence opposing similarity cannot be squared with this Court's command to consider such evidence in *Bigger*. Ignoring merits issues impermissibly blinds a district court to evidence relevant to similarity, and is out of step with how courts consider closely related issues in closely related contexts. And allowing notice to issue on a *de minimis* evidentiary basis is likewise contrary to both precedent and principle. This Court has never adopted *Lusardi*. It should now firmly reject it.

30

II.    *LUSARDI* IS INDEFENSIBLE AS A MATTER OF POLICY.

*Lusardi* is more than a legal outlier; it is also contrary to the sound judicial policy *Hoffman-La Roche* emphasized.  *First,* it wastes party and judicial resources by plowing ahead with notice and full merits discovery even in the face of issues that could easily be identified at the outset as rendering the case inappropriate for collective adjudication. *Second*, by doing so, it inflates collective actions and thereby exacerbates the improper settlement pressure *Bigger* warned about.  *Finally*, by failing to impose rigorous scrutiny of a collective before approving court-ordered notice, it undermines the appearance of judicial neutrality that *Hoffman-La Roche* emphasized as critical.

A.    *Lusardi* Wastes Party and Judicial Resources.

Under *Hoffman-La Roche*, one of the core objectives of court-ordered notice is to facilitate the joinder of similarly situated employees "in an *efficient* and proper way."  493 U.S. at 170–71 (emphasis added).  But *Lusardi* is the opposite of efficient.  By considering only whether a plaintiff's initial evidence clears a low "modest showing" bar—which courts have iteratively loosened into a "low standard," *Ivery*, 280 F. Supp. 3d at 1133, or "lenient burden," *Iannotti*, 603 F. Supp. 3d at 653—*Lusardi* necessarily leads to collectives that will turn out *not* to be similarly situated after a more balanced and fulsome showing at the decertification stage.  As this Court has observed, notifying ineligible plaintiffs to "prompt futile attempts at joinder" is "*in*efficient."  *Bigger*, 947 F.3d at 1050.  Indeed, the principal consequence of kicking the can down the road is that the litigation will become more complex and more expensive, as additional employees purport to join as plaintiffs and proceed through full merits discovery—all for naught.

Over-inclusive notice is not a mere theoretical danger.  Rather, "decertification" after notice under the *Lusardi* standard is incredibly common.[1]  The Fifth Circuit observed in 1995 that "[b]ased on [its] review of the case law," "no [ADEA] representative class ha[d] *ever* survived the second stage."  *Mooney*, 54 F.3d at 1214; *see also, e.g.*, *Koren*, 2003 WL 1572002, at *16 (decertifying ADEA class); *Lusardi*, 122 F.R.D. at 465–66 (same).  Lilly has identified only a single example in this Circuit since (and the employer prevailed at summary judgment).  Decertification is common even in FLSA cases, notwithstanding that policies like overtime rules may be more likely to apply across a collective than highly individualized discrimination claims.  *See, e.g.*, *Campbell*, 903 F.3d at 1120; *Espenscheid*, 2011 WL 2009967, at *7; *Johnson*, 561 F. Supp. 2d at 586; *see also supra* at 10.

Many of these decertification decisions turn on obvious variation among plaintiffs' circumstances that could easily have been identified before notice and before compilation of a full discovery record on the merits, had the court undertaken a meaningful review of the evidence.  *See, e.g., Peterson v. Seagate US LLC*, 809 F. Supp. 2d 996, 1003 (D. Minn. 2011) (decertifying because employees who took voluntary retirement were not similarly situated to employees who were fired); *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) (affirming denial of "final certification" given "significant differences in the factual and employment settings of the individual claimants"); *Karlo v. Pitt. Glass Works,*

---

[1] The terms "conditional certification" and "decertification" may be misnomers, to the extent that "the notice determination has zero effect on the character of the underlying suit" in the sense that no one *becomes* a party until they opt-in, irrespective of whether the person is identified as within the collective.  *Clark*, 68 F.4th at 1009.  This brief nonetheless uses the terms for convenience, given their ubiquity in the jurisprudence.

*LLC*, 849 F.3d 61, 86 (3d Cir. 2017) (even for collective of just nine plaintiffs, too much variation in title, duties, and decisionmakers recommended decertification of collective certified under *Lusardi*); *Collins v. Fam. Dollar Stores, Inc.*, 2006 WL 8437440, at *4 (N.D. Ala. Dec. 8, 2006) (decertifying collective under Equal Pay Act because claims were "highly individualized and subjective"); *Camesi v. Univ. of Pitt. Med. Ctr.*, 2011 WL 6372873, at *7 (W.D. Pa. Dec. 20, 2011) (decertifying due to "decentralized nature of [employer's] implementation and enforcement" of "meal break policies"); *Johnson*, 561 F. Supp. 2d at 586 (decertifying because "dissimilarity" of plaintiffs' job duties prevented defendant from "assert[ing] its statutory exemption defense on a collective basis").

*Lusardi* reasoned that decertification "down the road" would cure the harms of an overbroad initial notice. 118 F.R.D. at 354 (quoting earlier order). But *Lusardi* itself shows why that misses the point. In that case, the collective was later decertified—but only after *years* of litigation, "extensive discovery," and opt-ins by "1,312 additional plaintiffs." *Id.* Indeed, courts ordinarily entertain a motion to decertify only "after discovery has been completed," *Weil*, 925 F.3d at 357; *accord Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006), and reject as "premature" any effort to decertify before that, *see Craig v. Rite Aid Corp.*, 2012 WL 279647, at *1, *5 (M.D. Pa. Jan. 31, 2012) (courts "routinely wait[] until the conclusion of fact discovery to consider decertification"); *Mitchell v. Villas of Holly Brook Senior Living, LLC*, 2024 WL 3342504, at *16 (C.D. Ill. July 8, 2024) (declining to address decertification until "completion of discovery"). To be fair, that makes sense in the context of *Lusardi*—why send notice at the threshold only to then immediately consider decertification before discovery has been completed?

The consequence, however, is that the *Lusardi* approach means that a defendant's evidence of dissimilarity is not even *considered* until after notice has been issued and full discovery has been conducted.  By that point, the harm is done and the costs—both in legal fees and damage to the defendant's employment relationships and business—have been incurred.  *Lusardi* as practiced is therefore "divorced from the goal[] of … efficiency" that is supposed to motivate the collective-action notice process.  *Fitzgerald v. Forest River Mfg. LLC*, 2022 WL 558336, at *4 (N.D. Ind. Feb. 23, 2022); *see also id.* (district court "bemoan[ing]" use of "modest" rather than "preponderance standard"); *Bigger*, 947 F.3d at 1049 ("The twin goals of collective actions are enforcement and efficiency[.]").

## B.    *Lusardi* Creates Improper Settlement Pressure.

In *Bigger*, this Court concluded that the danger of facilitating improper "settlement leverage" required that a court "not authorize notice to individuals" that "entered mutual arbitration agreements waiving their right to join the action."  947 F.3d at 1049–50.  More specifically, this Court explained that "expanding the litigation with additional plaintiffs increases pressure to settle, no matter the action's merits."  *Id.* at 1049.  *Bigger* accordingly held that the danger that "plaintiffs may wield the collective-action format for settlement leverage" required that courts "give [a] defendant an opportunity to make th[e] showing" that arbitration agreements foreclose some persons' joinder, "[e]ven if efficiency" favored notice and even if a dispute about the "existence and validity" of the agreements would require the taking of "additional evidence" as part of the threshold notice determination.  947 F.3d at 1049–51.

34

The same concern exists here. *Lusardi*'s lenient approach at step-one "expand[s]" the litigation with additional plaintiffs" and so "unfairly amplif[ies] settlement pressure," by denying defendants the right to be meaningfully heard on the propriety of collective treatment until after full discovery. *Id.* In the meantime, the defendant bears significant costs, even though it has not yet been shown that such action should be "maintain[ed]" as a collective at all. 29 U.S.C. § 216(b). Those costs include, again, not only the ample expenses of discovery and the prospect of "potentially ruinous liability," *Amgen*, 568 U.S. at 474, but also negative press and disruption to employment and business relationships. For that reason, "the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold." *Clark*, 68 F.4th at 1007; *see also id.* at 1008 (collective actions "usually" settle before "merits discovery is complete" and decertification becomes available); *Swales*, 985 F.3d at 436 (observing that "leniency of the stage-one standard … exerts formidable settlement pressure").

This increased settlement pressure flies in the face of the statute's purpose. As originally designed, the FLSA allowed for a single employee—or even a non-employee representative—to file suit on behalf of an absent group of employees, without written consent. *See Arrington v. Nat'l Broad. Co.*, 531 F. Supp. 498, 501 (D.D.C. 1982) (discussing history of FLSA). The result was a "'national emergency' created by a flood of suits" filed by enterprising litigators on behalf of often-unwitting employees. *Id.* at 500 (quoting 93 Cong. Rec. 2194, 80th Cong., 1st Session (Sen. Wheeler)). Congress responded by passing the Portal to Portal Act of 1947, which barred non-employees from bringing FLSA suits

and required employees to affirmatively opt-in in order to take part in a collective action. *See Hoffmann-La Roche*, 493 U.S. at 173. These amendments alleviated the crisis by "prevent[ing] large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit." *Arrington*, 531 F. Supp. at 501 (citing 93 Cong. Rec. 2182 (Sen. Donnell)). As Senator Donnell explained, it would be "unwholesome to allow an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not have a solitary person behind him, and then later on have 10,000 men join in the suit." 93 Cong. Rec. 2182. But *Lusardi* encourages a similar tactic; it end-runs Congress's solution by letting plaintiffs bring the pressure of hordes of employees to bear through initial stages of litigation—even if they will no longer be standing by the end. District courts applying *Lusardi*, "iron[ically]," thereby enable the same sort of litigation abuses that the FLSA was amended to avoid. *Hoffman-La Roche*, 493 U.S. at 181 (Scalia, J., dissenting).

None of this is inevitable. Often, even basic context about the circumstances of a company's practices will produce "overwhelming evidence" that a collective—especially a large, company-wide collective—cannot be maintained. *Campbell*, 903 F.3d at 1121; *see also, e.g.*, *Zavala*, 691 F.3d at 538 (different locations, contractor arrangements, and job details undermined similarity and warranted decertification). In those circumstances, permitting a plaintiff to even tentatively or "conditionally" expand the litigation with hundreds or thousands of opt-in plaintiffs prior to reviewing such evidence threatens to "forc[e] a defendant to settle," simply as a risk-management matter, even where it should plainly prevail. *Clark*, 68 F.4th at 1007. That is bad policy.

**C.**     *Lusardi* **Undermines The Appearance Of Judicial Neutrality.**

Finally, *Bigger* correctly identifies a distinct, but "related danger" with overbroad notice — that it "may become indistinguishable from the solicitation of claims."  947 F.3d at 1049.  *Hoffman-La Roche* was adamant that courts must avoid "even the appearance" of "solicitation of claims," which would not only prejudice the defendant but also undercut general trust in the judiciary's "neutrality."  *Bigger*, 947 F.3d at 1049 (quoting *Hoffman-La Roche*, 493 U.S. at 174).  If recipients perceive a notice as a "court-endorsed solicitation" to sue, it will "stir[] up unwarranted litigation," either by expanding the collective action or spawning spinoff litigation that would not have otherwise been pursued.  *See Swales*, 985 F.3d at 435 & nn. 12–13 (citing *Bigger*, 947 F.3d at 1049).

It would be one thing for a court to send notice after rigorous review of the evidence and a meaningful finding of similarity.  But doing so based on a low standard that ignores defendants' evidence and affirmative defenses is very different.  Tellingly, even defendants who intend to vigorously contest certification at a later stage sometimes "stipulat[e]" that *Lusardi*'s first step is met because the "standard is so lenient" that any argument would be futile.  *Alaniz v. City of Los Angeles*, 2014 WL 12694157, at *2 (C.D. Cal. May 21, 2014).  That is true even where "overwhelming evidence" from the defendant is available to rebut plaintiffs' preliminary showing.  *See Campbell*, 903 F.3d at 1103, 1121 (granting decertification in case where parties had stipulated to conditional certification).  Even if this skewed procedure *did* serve efficiency, "efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device."  *Bigger*, 947 F.3d at 1050.

**III.    THE ARGUMENTS IN *LUSARDI*'S FAVOR ARE UNPERSUASIVE.**

Over the years, some have defended the *Lusardi* standard on a variety of legal and policy grounds.  None of these arguments is persuasive.

### A.    District Courts Do Not Have Unbounded Discretion To Determine the Legal Standard for Issuing Notice.

In defending *Lusardi* below, Richards argued that district courts enjoy discretion to choose when and on what showing to order notice.  This is not a defense of *Lusardi* in particular.  Rather, it is an assertion that district courts have unfettered discretion to use whatever legal framework they think appropriate in a given case to approve notice.  But that theory conflicts with the governing precedents and would itself be aberrational.  While district courts often have discretion to manage cases before them, they generally must do so consistent with legal frameworks—not willy-nilly.

*Hoffman-La Roche* did not resolve the precise procedure to be used for conditional certification, but it did expressly disclaim "unbridled discretion," and it prescribed limits on district court discretion for notice by setting forth general standards for "neutrality."  493 U.S. at 174.  The Fifth and Sixth Circuits crafted their standards as an implementation of *Hoffmann-La Roche*'s guidance on neutrality.  *See Swales*, 985 F.3d at 442; *Clark*, 68 F.4th at 1010–11.  In any event, this Court was clear in *Bigger* that the appellate courts *do* have a role to play in prescribing standards in this area, by identifying "specific steps" the trial court must take when notice is requested for persons who may be subject to an arbitration agreement, and by prohibiting trial courts from authorizing notice if certain conditions are met.  947 F.3d at 1049–51.  This is not "anything goes."

In advocating unfettered discretion, Richards relied on an unpublished order of this Court that declined to issue *mandamus* relief to disturb a *Lusardi* step-one ruling. *See In re New Albertsons, Inc.*, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021). But that order merely reflected an understandable conclusion that the standard for mandamus relief—which requires a right that is "clear and indisputable"—was not met in the absence of precedent from this Court giving guidance on the standard. *Id.* That does not mean that no such guidance should ever be given. This case is the opportunity to give it.

It is true, of course, that a district court's "management of a collective action—including the facilitation of notice," is a discretionary exercise that is reviewed "for abuse of discretion." *Bigger*, 947 F.3d at 1048. But it is equally true that the "legal conclusions underlying" any notice order are matters of law that are "review[ed] *de novo*." *Id.; see also Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) (class certifications orders are reviewed for "abuse of discretion," but "purely legal determinations" like whether "wrong standard" was used are reviewed "de novo"). This case concerns the *standard* for issuing notice. It is therefore properly a matter of law, not discretion.

### B.    Similarity Can Be Evaluated Before Certification and Notice.

*Lusardi* itself rested on a different rationale: that "the best way to find out if you have a cart from the horse is to let these people communicate in a meaningful way with that group of people that they say they can prove were wronged." 118 F.R.D. at 354. The idea, in other words, is that a court cannot properly conduct a similarly-situated analysis until all putative plaintiffs have been notified and (if they so choose) have joined. *See also Clark*, 68 F.4th at 1016 (White, J., dissenting in part) (pressing version of this argument).

That assumption is mistaken.  There is no reason why a similarly-situated inquiry requires the active participation of every putative opt-in plaintiff as a party, let alone full merits discovery as to all of them.  In the Rule 23 context, class representatives litigate certification without involving all the absent class members, and there is no basis for a fundamentally different approach here.  *See Espenscheid*, 705 F.3d at 772.

To be clear, courts should provide an opportunity for threshold discovery before they engage the "similarly situated" inquiry.  After all, class certification motions are ordinarily preceded by class certification discovery.  *See, e.g., George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 789-90 (7th Cir. 2011).  And for good reason: Both the plaintiff and the defendant may need discovery to test the allegations that there exists a common plan or scheme, and to evaluate whether there are meaningful individualized differences among members of the putative class.  For the same reasons, it makes sense to allow threshold discovery, including third-party subpoenas if appropriate, to test the plaintiff's claim that a "similarly situated" collective exists.  *See Swales*, 985 F.3d at 441 (instructing that district courts "should authorize preliminary discovery"); *Clark*, 68 F.4th at 1011 ("a district court may promptly initiate discovery relevant to the [certification] motion").  But what does *not* make sense is to proceed with notice, opt-ins by hundreds or thousands of putative plaintiffs, and full merits discovery *before* undertaking that evaluation.

Indeed, individualized evidence about the merits of the opt-in plaintiffs' claims would only underscore that the action is *not* appropriate for collective adjudication.  As in the Rule 23 context, "plaintiff by plaintiff" analysis of different job circumstances and individualized defenses "is the antithesis of a collective action," and courts commonly

40

decertify collectives where individual details of the claims or defenses will predominate. *Johnson*, 561 F. Supp. 2d at 586; *see also Mooney*, 54 F.3d at 1215; *Lusardi*, 122 F.R.D. at 466. The suggestion that plaintiffs cannot prove similarity without individualized evidence thus has it backwards—if individualized evidence is necessary, there is no similarity.

Insofar as the argument posits that it serves the court's *convenience* to have the parties perform full merits discovery before seeking meaningful judicial engagement on the similarity question, that would likewise be wrong. Even setting aside that "efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device," *Bigger*, 947 F.3d at 1050, broad and unnecessary discovery burdens the court's "scarce judicial resources" too. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367–68 (11th Cir. 1997). This matter illustrates the point; even with the notice question paused on appeal, the parties extensively briefed their respective objections to a lengthy magistrate judge decision compelling the disclosure of some Lilly documents and denying a request to compel others. *See* A.9–15 (docket entries). It is thus "*in*efficient to send notice to" those who "may not join the action" and await full discovery into their circumstances, *Bigger*, 947 F.3d at 1050, when a rigorous and focused threshold inquiry could well suffice to foreclose a collective proceeding.

### C.     The Statute of Limitations Is a Red Herring.

The *Clark* dissent also raised concerns, in the FLSA context, about the impact of a heightened up-front standard on the statute of limitations—the statute could run on opt-in plaintiffs while notice is delayed. But that concern is inapplicable in ADEA cases like this one, and overstated even in the FLSA context.

"The statute of limitations for FLSA actions is usually two years," *Clark*, 68 F.4th at 1012 (Bush, J., concurring), and "the claims of potential members of an FLSA collective action are not tolled until they file opt-in notices," *Hollins v. Regency Corp.*, 867 F.3d 830, 834 (7th Cir. 2017). The ADEA works differently, however. Its deadline for filing a civil suit turns on the timing of the disposition of one's individual charge with the EEOC. 29 U.S.C. § 626(d)-(e). To accommodate the collective action mechanism, this Court has held that not every opt-in plaintiff needs to "have filed an individual charge"; it is enough if the original charge alerted the employer to a claim of "class-wide discrimination" and the opt-in plaintiffs' claims had not already expired by the time of that charge. *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016 (7th Cir. 1988). As such, a class-wide EEOC charge filed by a timely ADEA collective-action filing protects later opt-in plaintiffs, so long as those plaintiffs are indeed similarly situated. *Id.* at 1016–17. There is therefore no pressure in ADEA cases to certify a collective or send notice as early as possible.

Even in FLSA cases, the concern is overstated and easily addressed. Statutes of limitation run all the time without any court notice or warning to the putative plaintiff— that is how time bars work. Moreover, in appropriate cases, courts have invoked tolling doctrines to protect putative opt-in plaintiffs. *See Clark*, 68 F.4th at 1015; *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019). Indeed, they have done so even while applying *Lusardi*, which illustrates why the statute of limitations issue is a red herring here. *E.g.*, *Bernardez v. Firstsource Sols. USA, LLC*, 2021 WL 428841, at *6 (W.D. Ky. Feb. 8, 2021).

IV.     **THIS COURT SHOULD VACATE AND REMAND FOR APPLICATION OF THE CORRECTED STANDARD.**

Upon rejecting *Lusardi*, this Court should vacate the decision below, and remand for the district court to apply a standard that requires a persuasive showing, in light of all record evidence and without excluding consideration of merits questions or evidence from Lilly, that the putative collective members are "similarly situated" to Richards.  As the district court already implied in its certification order, the court's decision on whether notice is appropriate will almost certainly be different under *any* test more demanding than *Lusardi*.  RSA.26.  But it makes sense for the district court to undertake that work in the first instance, guided by supplemental submissions on remand.

In the district court, Richards did not identify a *single* named party that is similarly situated to her.  That alone should doom an effort to prove by a preponderance of the evidence, or a similarly rigorous standard, that a *nationwide* collective is similarly situated.  *See Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991) (before issuing notice, "court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in'"); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661, 665 (S.D.N.Y. 2013) (even under "low burden" of *Lusardi*, "courts have relied on allegations that specifically identify other employees who have complained of the same practices as the plaintiffs").  Even setting that aside, a nationwide collective of thousands of Lilly employees spanning roles, regions, and responsibilities could not plausibly be supported by just four scattered affidavits that do not deal with national evidence.  *See, e.g.*, *Hannah v. Huntington Nat'l Bank*, 2020 WL 2571898, at *8 (N.D. Ill. May 21, 2020) (collecting cases

rejecting nationwide notice where evidence of impacted employees is confined to "one or two specific locations").  Moreover, Lilly's evidence of decentralized decision-making is itself sufficient to preclude an ADEA collective.  *See, e.g.*, *Karlo*, 849 F.3d at 86 (variation in title, duties, and decisionmakers); *Koren*, 2003 WL 1572002, at *16 (variation in jobs, business units, locations, and decision-making processes).

In all events, since some factual issues previously deferred would be relevant (if not dispositive) under a non-*Lusardi* standard, the district court is in the best position to apply "the clarified standard … in the first instance."  *See, e.g.*, *Kluge v. Brownsburg Cmty. Sch. Corp.*, 2023 WL 4842324, at *1 (7th Cir. July 28, 2023) (remand following Supreme Court clarification of legal standard applicable to facts).  This Court should therefore vacate and remand to allow for that analysis and determination.

## CONCLUSION

This Court should vacate the order certified for appeal and remand for application of the proper standard for approving notice to a putative collective.

Dated: September 30, 2024        Respectfully submitted,

Jonathan M. Linas                  /s/ *Yaakov M. Roth*
E. Michael Rossman           Yaakov M. Roth
JONES DAY                    *Counsel of Record*
110 N. Wacker Dr., Suite 4800   Michael Heckmann
Chicago, IL 60606           Christopher Pagliarella
jlinas@jonesday.com         JONES DAY
emrossman@jonesday.com     51 Louisiana Avenue, NW
                          Washington, DC 20001-2113
                          202-879-3939
                          yroth@jonesday.com

                          James R. Saywell
                          JONES DAY
                          901 Lakeside Ave E,
                          Cleveland, OH 44114
                          (216) 586-3939
                          jsaywell@jonesday.com

              *Counsel for Defendants-Appellants*

45

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by Circuit Rule 32(c), because, as calculated by Microsoft Word 365, it contains 12,647 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This motion also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as modified by Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 12-point font.

Dated: September 30, 2024                                  Respectfully submitted,

                                                          */s/ Yaakov M. Roth*

                                                          *Attorney for Defendants-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 30, 2024, pursuant to Federal Rule of Appellate Procedure 25 and Circuit Rule 25(a), I electronically filed Defendant-Appellants' (1) Opening Brief and Required Short Appendix and (2) Appendix with the Clerk of Court of the U.S. Court of Appeals for the Seventh Circuit via the CM/ECF system and service was accomplished on counsel of record by that means.

Dated: September 30, 2024                    Respectfully submitted,

                                             /s/ Yaakov M. Roth

                                             *Attorney for Defendants-Appellants*

## CIRCUIT RULE 30(d) CERTIFICATION

In accordance with Circuit Rule 30(d), I hereby certify that all materials required by Circuit Rules 30(a) and (b) are included in the Required Short Appendix and the Appendix.

Dated: September 30, 2024                              Respectfully submitted,

                                                                      /s/ Yaakov M. Roth

                                                                      *Attorney for Defendants-Appellants*

# REQUIRED SHORT APPENDIX

# TABLE OF CONTENTS

District Court Order on Plaintiff's Motion for Conditional Certification of Collective Action and Defendants' Motion to Strike (filed Mar. 25, 2024)................................RSA.001

District Court Entry on Defendants' Motion to Certify an Immediate Appeal Under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay (filed May 10, 2024) ...............RSA.021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MONICA RICHARDS individually and on behalf of )
all other similarly situated individuals,        )
                                                  )
                    Plaintiff,                    )
                                                  )
          v.                                      )      Case No. 1:23-cv-00242-TWP-MKK
                                                  )
ELI LILLY & COMPANY,                              )
LILLY USA, LLC,                                   )
                                                  )
                    Defendants.                   )

**ORDER ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF
COLLECTIVE ACTION AND DEFENDANTS' MOTION TO STRIKE**

This matter is before the Court on Plaintiff Monica Richards' ("Richards") Motion for

Conditional Certification and Issuance of Notice and Opt-In Form (Filing No. 41).   Richards

initiated this action individually and on behalf of others similarly situated, against Defendants Eli

Lilly & Company and Lilly USA, LLC ("Lilly USA") (collectively "Eli Lilly" or "Defendants"),

alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et*

*seq*., and the Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B) (Filing No. 1).

Richards seeks to bring the ADEA claim as a collective action under 29 U.S.C. §§ 216(b), 626(b).

Also before the Court is Defendants' Motion to Strike Opt-In and Consent Form (Filing No. 58).

For the reasons set forth below, both motions are **granted**.

## I.   BACKGROUND

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. §

623(a)(1).  Aggrieved employees may enforce the ADEA through certain provisions of the Fair

Labor Standards Act of 1938 ("FLSA"), and the ADEA specifically incorporates § 16(b) of the

FLSA, 29 U.S.C. § 216(b). *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 67–68 (2000).

Richards is a fifty-three (53) years old woman who has worked for Eli Lilly since August

1, 2016. (Filing No. 1, ¶ 3). She alleges that,

> Since at least 2017, Eli Lilly has been engaged in a companywide effort to shift its
> personnel focus to Millennials at the detriment of older employees, openly
> espousing an aggressive strategy of hiring and retaining Millennial employees. As
> a part of its effort to retain Millennial workers, Eli Lilly has created resource groups
> for younger employees who it calls "Early Career Professionals" and has
> systematically favored younger employees by giving them promotions to the
> exclusion of older employees who are equally or better qualified.

*Id*. ¶ 10. Richards contends that Eli Lilly both knowingly and willfully denied promotions

systematically to qualified employees who were older than forty, including herself and all other

similarly situated employees, and she alleges Eli Lilly's discriminatory preferences for younger,

Millennial employees has been well documented. Id. at *Id*. ¶ 11.

Richards seeks conditional certification of a collective action, which would permit court-

authorized notices to be sent to potential opt-in plaintiffs.  Her proposal for her collective action

consists of: "All Eli Lilly employees[1] who were 40 or older when they were denied promotions

for which they were qualified, since February 12, 2022."  (Filing No. 41 at 1.)

Opposing certification, Defendants argue Richards does not demonstrate she is "similarly

situated" to other members of the proposed collective because she does not point to another specific

employee who qualifies for the proposed collective, nor identify a common policy or plan that

impacted such employees (Filing No. 45 at 12).  Defendants further argue the more lenient "modest

showing" standard on which Richards relies is not required by statute or Seventh Circuit case law

---

[1] Defendants and the Court understand the sought class to include Lilly USA employees, not just those of Eli Lilly (*see, e.g.*, Filing No. 45 at 7).

RSA.002

and that she fails to carry her burden under the more demanding "preponderance of the evidence" standard that Defendants seek to apply. *Id.* at 12, 19–33.

## II. <u>DISCUSSION</u>

Richards alleges Eli Lilly engaged in rampant age discrimination by systematically denying promotions to her and qualified employees who are older than 40, while disproportionately promoting younger employees, in violation of the ADEA. She asks the Court to conditionally certify a collective action. Richards points out, that "[u]nder the ADEA (like the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA")), employees who wish to participate in a collective action challenging age discrimination may do so by affirmatively "opting in" to join the lawsuit." (Filing No. 42 at 3.)

The Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA. *Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022). Richards' motion is styled as a motion for "conditional" collective certification because many courts in this Circuit have traditionally applied an *ad hoc* two-step certification process "in which the first step is merely preliminary." *Filippo v. Anthem Companies, Inc.*, No. 1:22-cv-926, 2022 WL 18024818, at *1 (S.D. Ind. Dec. 30, 2022) (citing *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021) (describing two-step collective certification)); *see, e.g.*, *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 438 (S.D. Ind. 2012); *Owens v. GLH Cap. Enter., Inc.*, No. 3:16-cv-1109, 2017 WL 2985600, at *1 (S.D. Ill. July 13, 2017) (citing *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases)).

Defendants correctly observe (*see* Filing No. 45 at 24–25) that the two-step process is not statutorily mandated, *see* 29 U.S.C. § 216(b), nor required by the Seventh Circuit. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020). District courts throughout this Circuit, entrusted with "wide discretion" in managing collective actions, *New Albertsons*, 2021 WL

4028428 at *2 (quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)), have nevertheless commonly employed the two-step process. *See id.* at *1; *Duan*, 2023 WL 5955911, at *1.

At the first step — the only step relevant here — the plaintiff need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Duan v. MX Pan Inc.*, 2023 WL 5955911, at *1 (S.D. Ind. Aug. 21, 2023) (quoting *New Albertsons*, 2021 WL 4028428 at *1). If the plaintiff meets this standard, the court may conditionally certify the suit as a collective action and allow the plaintiff to send notice of the case to similarly situated employees who may then opt-in as plaintiffs. *Id.*

Importantly, at step one, the court is not required "to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013) (quoting *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278–79 (D. Minn. 1992)). "Therefore, where the parties' evidentiary submissions directly conflict, they will be resolved — for purposes of this order only — in plaintiffs' favor." *Id.* (citing *Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011)). In exercising discretion, district courts must "respect judicial neutrality and avoid even the appearance of endorsing the action's merits." *Bigger*, 947 F.3d at 1046.

At the more stringent second step following discovery, the court reevaluates the conditional certification and "determine[s] whether there is sufficient similarity between the named and opt-in plaintiffs." *Duan*, 2023 WL 5955911, at *1. "If there is sufficient similarity, . . . the matter

RSA.004

[may] proceed to trial on a collective basis; if there is not, the court may revoke conditional

certification or divide the class into subclasses." *Id*.

Defendants contest the "modest factual showing" standard at this stage and urge the Court

to instead apply the "preponderance of the evidence" standard "given the dangers posed by

collective actions in exerting undue pressure on defendants to settle." (Filing No. 45 at 26.)

Defendants point to the decision in *Bigger* and argue "trial courts must 'shield against abuse of the

collective action device' by assessing certification under familiar evidentiary standards." *Id.* at 28

(quoting 947 F.3d at 1050).

*Bigger* addressed, as a matter of first impression, a defendant's opposition to the issuance

of notice to individuals who allegedly entered mutual arbitration agreements that waived the right

to join any collective action.  *See* 947 F.3d at 1047, 1049.  The Seventh Circuit held that an

overseeing court may authorize notice to such individuals "unless (1) no plaintiff contests the

existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery

on the alleged agreements' existence and validity, the defendant establishes by a *preponderance of*

*the evidence* the existence of a valid arbitration agreement for each employee it seeks to exclude

from receiving notice." *Id.* at 1047 (emphasis added).

This Court is not persuaded that the *Bigger* decision imposes a "preponderance of the

evidence" standard on *any party besides* an "employer seeking to exclude employees from

receiving notice" and to demonstrate "the existence of a valid arbitration agreement." *Id.* at 1050.

No other decision from this court cites *Bigger* for such a proposition, even in cases involving

arbitration agreements and invoking its analytic framework.  *See, e.g.*, *Rodgers-Rouzier v. Am.*

*Queen Steamboat Operating Co.*, LLC, 2022 WL 823697, at *2–*3 (S.D. Ind. Mar. 18, 2022).

The Court declines Defendants' invitation to apply the Fifth Circuit's framework in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), or the Sixth Circuit's more recently established version in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023) (*see* Filing No. 45 at 28–29).   When presented with the issue, other courts throughout the Seventh Circuit have refused to adopt *Swales* and/or *Clark* and have continued to adhere to the two-step approach.  *See, e.g.*, *New Albertsons*, 2021 WL 4028428 at *2 (declining to hold that district court's decision to apply two-stage collective certification framework instead of *Swales*, "was patently erroneous or outside the bounds of judicial discretion"); *O'Neil v. Bloomin' Brands Inc.*, 2023 WL 8802826, at *3 n.2 (N.D. Ill. Dec. 19, 2023) (disagreeing with Defendants' claim that *Swales* and *Clark* show the "tide is shifting away from a two-stage approach to certification"); *Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023) (declining invitation to depart from the two-step process), *reconsideration denied*, 2024 WL 218416 (E.D. Wis. Jan. 19, 2024); *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776, 2021 WL 1207564 (N.D. Ind. 2021) ("The FLSA certification two-step remains the dance of this circuit — as least for the time being — and the court adheres to it.").  In the absence of a Seventh Circuit case overruling this long-applied approach, the Court finds no reason to depart from it and now turns to the issue of whether the potential plaintiffs are "similarly situated" for purposes of conditionally certifying the collective action.

## A.     Richards' Evidentiary Support

To support her allegations that Defendants systematically denied promotions to qualified employees who were older than forty and disproportionately promoted younger employees over older workers, Richards submits an affidavit (Filing No. 42-4), as well as those of one former employee Christina Sosa ("Sosa") (Filing No. 42-6), and one current Eli Lilly employee, Herold Oluoch ("Oluoch") Filing No. 42-5), asserting they had similar experiences (*see* Filing No. 42 at

10).  She also provides an affidavit of an Eli Lilly executive business manager James Sweeney ("Sweeney") (Filing No. 42-3) and cites to a pair of prior lawsuits brought before this court (*see* Filing No. 42 at 4–6).  In the first suit, which has been resolved by consent decree, the Equal Employment Opportunity Commission ("EEOC") alleged that Lilly USA failed to hire applicants aged forty and over for Sales Representative positions from April 2017 through December 2021 (*see EEOC v. Lilly USA, LLC*, No. 1:22-cv-01882 (S.D. Ind. Oct. 10, 2023)).  In the second suit, which has been since dismissed with prejudice, Eli Lilly employees brought a class and collective action alleging that Eli Lilly engaged in systematic age discrimination with respect to the hiring practices of Sales Representatives in the Diabetes and Primary Care Business Units (*see Grimes et al. v. Eli Lilly and Co.*, No. 1:21-cv-2367 (S.D. Ind. Oct. 13, 2023)).

   1.   **Similarly Situated Individuals**

Defendants first point out that Richards fails to identify a single specific employee who is similarly situated to herself (Filing No. 45 at 10).  They assert that the former Lilly employee, Sosa, left before the start of the collective period and the current employee, and Oluoch "does not claim that he ever actually *sought and was denied* a promotion."  *Id.* at 11 (emphasis in original).

Sosa's affidavit describes a "shift" in treatment in 2020 and her subsequent constructive discharge, which occurred in November 2021 (*see* Filing No. 42-6, ¶¶ 6–10).  Upon review, the Court finds that, although the potential collective action class cannot include Sosa, her affidavit supports Richards' underlying argument about Eli Lilly's alleged common policy or plan involving age discrimination.  The actions therein — of a younger Eli Lilly employee with lower sales numbers receiving promotion support unoffered to the older employee affiant — are consistent with the complaint and helpfully illustrate circumstances similar to those experienced by Richards.

Defendants' arguments about the current employee, Oluoch, and his unsuccessful promotions are likewise unpersuasive and inappropriate at this step.  His affidavit describes five

internal promotion slots opened annually to department employees ([Filing No. 42-5](#), ¶ 3).  In 2017, Oluoch started noticing "much younger employees . . . being promoted over [him] and at much higher rates."  *Id.* ¶ 4.  He clearly asserts Eli Lilly "passed [him] over for a promotion in favor of an [Early Career Professional ("ECP")] at least eight times" and that he reported the alleged age discrimination to Human Resources in 2022.  *Id.*, ¶¶ 6, 7.  The Court finds this to be sufficiently supportive of Richards' theory that Defendants attempted in the relevant time periods to retain Millennial workers "by promoting them over" older counterparts ([Filing No. 1](#), ¶ 1), who were "passed over for promotion."  *Id.*, ¶ 23.

Although Defendants make their own substantial allegations (supported by exhibits and declarations), including that Oluoch "did not apply to any open job postings" from February 12, 2022, onward ([Filing No. 45-8](#), ¶ 8), at this initial notice stage of the proceedings, the Court does "not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant."  *Prater v. All. Coal, LLC*, 2022 WL 22285581, at *2 (S.D. Ind. Mar. 22, 2022) (quoting *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (St. Eve, J.)).  Reliance on defendant declarations is largely misplaced when the court analyzes certification under step one.  *See Briggs v. PNC Fin. Servs. Grp.*, 2016 WL 1043429, at *6 (N.D. Ill Mar. 16, 2016) (defendant's declarations "are futile in the Court's step one analysis"); *Salmans v. Byron Udell & Assocs.*, 2013 WL 707992, at *4 (N. D Ill. Feb. 26, 2013) ("[W]hether … discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification.") (citation omitted).  Challenging the factual merits of the collective action in such a manner is properly addressed at the second certification step, when Defendants' opportunity to decertify the collective action will occur.

Defendants nevertheless maintains Richards' evidence regarding similarly situated individuals is conclusory and speculative.  While ultimately the evidence may show this to be true, it is sufficient at this step that Richards merely shows "some factual nexus" that connects her to "other potential plaintiffs" as "victims of an unlawful practice."  *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013).  The Court finds Richards has succeeded in doing so.

Throughout her motion and reply, Richards draws heavily upon the expertise of Eli Lilly executive business manager, Sweeney, who, for the preceding twenty-two years, has assisted in the hiring, recruitment, and development of sales team members and attended numerous executive level recruitment and hiring meetings (*e.g.*, Filing No. 42 at 6–8; Filing No. 49 at 17–18; *see also* Filing No. 42-3, ¶ 1).  Sweeney's detailed affidavit provides the necessary "factual nexus" connecting Richards to other potential plaintiffs.

Being "very familiar with Eli Lilly's recruitment *and promotion* practices," Sweeney described a company departure from strict promotion requirements in favor of an "early identified talent" pilot program, which allowed managers "to bypass the competency model and promote new employees with minimal or no experience" (Filing No. 42-3, ¶¶ 1–3) (emphasis added).  This departure started in or around 2012 and "gained momentum" over the next few years.  *Id.*, ¶ 3.

He explained biannual human resource planning meetings and that he witnessed how senior Eli Lilly employees with hiring and promotional authority would "discredit and undermine" the work of older employees being considered for promotions.  *Id.*, ¶ 10.  Older employees he supervised "often were singled out for criticism," even when he could attest to their excellent performance, but younger and newer sales representatives "who [we]re not ready for promotions" were often promoted.  *Id.*

RSA.009

Sweeney's affidavit provides the specific example of a salesperson in their fifties whom he personally supervised. Although the salesperson's identity is left undisclosed, the affidavit details what happened when Sweeney recommended him for a stock grant, which is often considered a "precursor[] to promotion[]." *Id.* One Sales Director (who subsequently became an Associate Vice President) shot down the recommendation, called the salesperson lazy, and represented "he had not performed to his maximum potential" "without having any firsthand knowledge about his performance or work." *Id.* The director never observed him work nor cited any specific metrics in this evaluation.

From this context, Sweeney indicates he is aware of at least twenty employees over the age of forty "who are qualified for more senior sales representative roles, have expressed interest in being promoted, and have not been promoted." *Id.* at 6. Given the totality of Richards' other proffered evidence, including the sweeping picture painted by Sweeney's statements, it would be at least reasonable to infer that these twenty individuals, personally known to him, suffered the same or similar plight ("similarly situated") as Richards, Sosa, Oluoch, or the salesperson Sweeney supervised. That is to say, some plan, policy or instruction linked Millennial employees to promotions that these twenty or so older, more qualified individuals had "expressed interest" in and, as an ultimate result, they were "not . . . promoted." *Id.* at 6. Adjudging the accompanying theories and specifics of *how* that happened (or did not happen) is more proper at the second decertification step. As noted earlier, the Court need not determine at this step whether, in practice, the common plan, policy, or instruction played out over "perfunctory interview[s]" ([Filing No. 42-4 at 4](#)), like in Richards' case, or unsubstantiated negative exchanges dissecting older employees' performance, like in the salesperson's case. This occurs at the more stringent second step. *See Duan*, 2023 WL 5955911, at *1.

2.    <u>**Common Policy or Plan Impacting Such Individuals**</u>

Defendants next argue that Richards identifies no evidence regarding a common or single plan of discriminatory promotions (Filing No. 45 at 16).  They maintain that Eli Lilly's organizational structure and discretionary policies used in evaluating employees for promotion, and Richards' supporting affidavits do not establish a common thread linking the broad collective.

Defendants argue that Richards attempts "to identify such a common plan by discussing the ECP initiative" and does not provide any specific facts to the contrary.  *Id.*  In discussing "the ECP initiative", Defendants provide evidence in the form of a declaration by an Eli Lilly senior vice president, Matthew "Kip" Chase.  *See id.* (discussing Filing No. 45-1).  The exhibits attached to the declaration include an internal website page describing job paths and job levels (Filing No. 45-2), an excerpt of an April 2017 "People Strategy" presentation used during the 2017 town hall meeting referenced in the collective action complaint (Filing No. 45-5), and a corresponding "Pre-Read" distributed in advance of the meeting to human resources personnel (Filing No. 45-6).  In essence, Defendants argue that the 2017 ECP initiative mentioned in the complaint could not have served as the common plan, since it "was focused on hiring and advancement for entry-level positions, not manager-level positions" like Richards' (Filing No. 45 at 16; *see also* Filing No. 45-1, ¶¶ 22, 24), and had its last hiring goal set in fiscal year 2020 (Filing No. 45 at 16–17; *see also* Filing No. 45-1, ¶ 25).

Ignoring for a moment the fact that the Court does not make merits determinations, weigh evidence, or specifically consider opposing evidence at this stage, *Prater*, 2022 WL 22285581, at *2, the Court finds that this evidence, introduced by Defendants, seems to imply that the April 2017 presentation, and associated ECP *hiring* initiative which ensued, constitutes — full stop — the entirety of the alleged "companywide age bias" that Richards seeks to put forth in this proposed collective.  But Richards does not pursue such a limited collective action.

11

RSA.011

Rather, in the Complaint itself, as well as in the motion and reply, Richards makes substantial allegations, supported by detailed affidavits, that putative class members were together victims of a policy or plan that "extended *beyond* the discriminatory hiring practices detailed in the *EEOC* and *Grimes* lawsuits." (Filing No. 1 at 4) (emphasis added). For example, Sweeney describes learning that a certain Sales Director (the same one involved in the previous salesperson incident) "was following a directive from senior Elil Lilly leadership, including [the] CEO . . . and Senior Vice President of Human Resources and Diversity . . . , to hire *and promote* Early Career Professionals." (Filing No. 42-3 at 4) (emphasis added). He continues: "[P]romoting Early Career Professionals even became part of our performance planning objectives." *Id.* Sweeney straightforwardly assesses that, despite "claim[ing] to have a standardized hiring and promotion process," "the company ignores this process when it comes to both hiring and promoting Early Career Professionals, who are advanced quickly through the promotion process" "at the expense of more qualified and older employees." *Id.* at 6.

Richards recounts her own experience and understanding of such policy or plan working for Eli Lilly in Boston, Massachusetts. Among other things, she describes how an individual "in her late 20s" was promoted to the district sales manager position instead of her and was "hired as an S1 or S2 and … promoted to an S6 in just six years" (Filing No. 42-4 at 4, 5). These "rapid promotions deviate sharply from Eli Lilly's professed Human Resource Planning Process and 'competency model' of promotion, which provides that it takes around three years at each 'S' level before being promoted to the next 'S' level . . . ." *Id.* at 5. Finally, as discussed previously, Richards' allegations are supported by affidavits of other individuals — one working in Indianapolis, Indiana and one that worked previously in Florida — that detail individual circumstances similar to those experienced by Richards. These showings together are sufficient

to demonstrate the existence of a "factual nexus" connecting "victims of an unlawful practice." *Berndt*, 2013 WL 3287599, at *6.

The Court is not dissuaded by Defendants' insistence that Richards', Oluoch's, and Sosa's circumstances are individualized occurrences.  This would be to miss the forest for the trees. Instead of undermining Richards' claim, the differences to which Defendants point (geographic area, supervisors, and promotion evaluators) are details whose widespread variety might support the allegations of an overarching — *i.e.*, "companywide" ([Filing No. 1 at 3](#)) — plan, threading together instances of age bias in promotion.

Defendants' arguments concerning the complexity of Eli Lilly's organizational structure and the variance in discretionary policies used in evaluating employees for promotion are likewise unavailing at this step.  Richards alleges a common policy or plan of willfully promoting younger, less qualified employees over older, more qualified employees.  It is therefore the disadvantaged employees' age, qualifications with regard to the relevant promotion, and status of being passed over in favor of a younger and less qualified counterpart — and not *per se* their job functions, or core business unit to which they belong, or the hiring criteria applied to the sought-after position — that bind the proposed collective of employees.  While Defendants may disagree as to the relevance of the alleged variation in Eli Lilly hierarchy, the Court may not engage in making merit determinations or weighing evidence at this stage, and therefore does not find the potential differences between collective members to be disqualifying for purposes of authorizing notice. *See Prater*, 2022 WL 22285581, at *2–3.  Should further discovery reveal that some or all potential plaintiffs are not in fact similarly situated or subject to a single common plan of discriminatory promotions, then decertification may be appropriate.

RSA.013

All told, Richards has made a "modest factual showing" that she and potential plaintiffs "together were victims of a common policy or plan that violated the law." *In re New Albertsons, Inc.*, 2021 WL 4028428, at *1. Therefore, the Court conditionally certifies this action.

**B.    Proposed Notice**

After conditionally certifying a collective action, the court may, at its discretion, authorize notice to similarly situated employees. *Horta v. Indy Transp., Inc.*, No. 1:20-cv-02659, 2021 WL 1667078, at *3 (S.D. Ind. Apr. 28, 2021). In doing so, the court maintains a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Jirak*, 566 F. Supp. 2d at 850 (quoting *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989)).

Richards seeks leave to send the Notice and Opt-In Consent Forms by text, e-mail, and U.S. Mail (*see* Filing No. 42 at 22). She also seeks a ninety-day opt-in period with a mail and email reminder sent within forty-five days of the first notice. *See id.* at 22–23. To accomplish this notice plan, Richards asks the Court to require Defendants to produce, within ten days from the date of the order, a collective list for "all former and current Eli Lilly employees[] who have worked for any period of time since February 12, 2022, to the present" (*see* Filing No. 41) to Richards' counsel.

Casting the net as wide as requested ("all former and current" employees) fails to preserve Eli Lilly's privacy interests by requiring Defendants to relinquish the information of employees who are ineligible to become opt-in plaintiffs. To match the certified collective more properly, the Court limits the requested information that Eli Lilly is mandated to turn over to Richards to "all former and current Eli Lilly employees who have worked for any period of time since February 12, 2022, to the present *and were forty years of age or older when they were denied promotion*."

Defendants further seek modifications to the notice and consent forms and have submitted redline versions of each. Specifically, Defendants argue the forms should: (1) define the collective

14

and use congruent criteria to describe opt-in plaintiffs; (2) explain Eli Lilly can seek decertification, which may result in the dismissal, and that opt-in plaintiffs are thus only potentially members of any ultimate collective; (3) reference Richards' claims and Eli Lilly's defenses in a more prominent paragraph disclaiming that the case is at an early stage; (4) advise potential opt-ins that they may be required not only to provide evidence, but respond to discovery and testify at trial; (5) inform potential opt-ins that they may share in liability for Eli Lilly's costs if Eli Lilly prevails; and (6) inform potential opt-ins that they may contact Richards' counsel or an attorney of their choice (Filing No. 45 at 32–33).

The Court agrees with some, but not all, of Defendants' proposed modifications.  First, Richards does not object specifically to Defendants' request that the forms define the collective and use congruent criteria to describe opt-in plaintiffs.  Without modification, the notice form in particular would appear to apply to *any* employees over the age of forty considered for a promotion, regardless of whether they were denied, or unqualified for, those same promotions. Since the certified collective consists by its own terms of those employees over forty who were *denied* promotions *for which they were qualified*, Defendants' modifications to the forms are **granted** to the extent that they incorporate the missing necessary elements.  Considering these changes, the sentence in the notice now reads in relevant part: "According to the company's records, you were forty (40) years of age or older and were denied a promotion for which you were qualified on or after February 12, 2022, and are therefore eligible to . . . ."

**C.   Defendants Motion to Strike Opt-In and Consent Form**

Even with Defendants' proposed modification, the language in the consent form does not match the collective's breadth.  After briefing the motion for conditional certification, Richards filed a "notice of consent to opt-in" to the claims in the case (*see* Filing No. 56; Filing No. 56-1), which is the subject of Defendants' Motion to Strike.  In relevant part, the consent, signed by affiant

15

Sweeney, removes the statements that the undersigned "applied for a promotion at Eli Lilly" and Eli Lilly denied the application, both of which were found in the previous consent form (*see* Filing No. 42-2).  In lieu of these indications, Sweeney's consent form instead states he was "passed over for a promotion by Eli Lilly in favor of a younger employee in approximately" October 2022 (Filing No. 56-1).  The added language, which parallels that found in Oluoch's affidavit, squarely fits within a theory of the case promoted by Richards (*see* Filing No. 1, ¶¶ 1, 23).  For such reasons, and taking into account the collective which the Court has certified above, the Court finds that the altered language in Sweeney's consent fulfills 29 U.S.C. § 216(b)'s requirement that any party plaintiff shall "give[] consent in writing to become [] a party."

Considering such observations, as well as the proposed modifications which assist in determining the relevant timeline, the consent form to be sent to opt-in plaintiffs is changed to now read in relevant part:

> On or about _____ (month/date), I applied or was considered for a promotion at Eli Lilly.  Eli Lilly denied my application or passed me over for a promotion in favor of a younger employee on _____ (month/date).  At the time I applied for the promotion, I was a _____ (title, role, division).  At the time my application was denied or I was passed over for promotion, I was _____ years old.  The promotion(s) I had applied to/did not receive was to the position(s) of _____ (title(s), role(s), division(s)).  I believe I was qualified for the role and was passed over for a less qualified, younger applicant.

In light of these and other changes, the Court **grants** Defendants' Motion to Strike (Filing No. 58), Sweeney's consent form (Filing No. 56-1), but Richards is **granted leave** to file an amended consent form for Sweeney that is consistent with this Entry.

Next, when it comes to Defendants' proposed modification concerning Eli Lilly's possible decertification and effect on opt-in plaintiffs, the Court finds the addition of such an explanation unnecessary.  At present, a prominent paragraph indicates that the case "is at an early stage" and there has not been a decision on the merits or settlement (Filing No. 42-1 at 2).  Later on, it is further

16

explained that opt-in plaintiffs "will be bound by any ruling or settlement in this case." *Id.*
Together, these disclaimers satisfactorily place potential plaintiffs on notice that they will be bound
by rulings to come at later stages. The Court finds that spelling out the possibilities or effects
therein as stated in the second paragraph of Exhibit 6 is appropriate. (*See* Filing No. 45-11 at 2).

The Court finds Defendants' request that the proposed notice include language regarding
the potential consequences of joining the case and the prospect of participation in discovery and
at trial to be a fair suggestion. *See Knox v. Jones Grp.*, 208 F. Supp.3d 954, 966 (S.D. Ind. 2016)
("Plaintiffs' notice . . . is approved with the addition of a phrase that 'a class member may be subject
to obligations such as responding to discovery, giving a deposition, and testifying at trial' in the
'What happens if I join the lawsuit?' section."), *on reconsideration in part*, 2016 WL 6083526
(S.D. Ind. Oct. 18, 2016); *see also Carrel v. MedPro Grp., Inc.*, 2017 WL 1488359, at *11 (N.D.
Ind. Apr. 26, 2017) ("However, the class members may be subject to discovery, including
depositions, to determine their individualized damages. Accordingly, revisions to include
reference in the Notice to this impeding discovery are warranted.").

Richards should also acknowledge the consequences of an unfavorable result. *See Hayes
v. Thor Motor Coach, Inc.*, 502 F. Supp. 3d 1342, 1353, 2020 WL 5217388 (N.D. Ind. 2020).
Although § 216(b) is silent regarding the court's authority when the defendant is the prevailing
party, at least one circuit court has held that the statute does not prevent prevailing defendants from
seeking an award of costs under Federal Rule of Civil Procedure 54(d). *See Lochridge v. Lindsey
Mgmt. Co.*, 824 F.3d 780, 782–83 (8th Cir. 2016); *see also E.E.O.C. v. O & G Spring & Wire
Forms Specialty Co.*, 38 F.3d 872, 883 (7th Cir. 1994) ("Congress must be presumed to know,
upon incorporating the FLSA into the ADEA, that in the absence of a specific provision, prevailing
defendants would not be able to recover fees absent a showing of bad faith. By explicitly changing

17

this rule with respect to plaintiffs but remaining silent with respect to defendants, the most sensible reading is that the FLSA and the ADEA adopt the common law rule with respect to prevailing defendants.").   It only seems prudent to advise future plaintiffs of their responsibilities and potential consequences if they join, so long as the language does not unfairly dissuade possible plaintiffs from joining.  The Court finds that Defendants' proposed language does not run this risk. The forms shall be modified accordingly.

Lastly, Defendants request that the opt-out period should be reduced from Richards' proposed ninety days to sixty days.  A period of seventy-five days is a reasonable compromise. The notice shall be modified accordingly.  Defendants further argue the Court should not authorize reminder notices, which they contend are unnecessary and "could be interpreted as encouragement by the Court to join the lawsuit" (Filing No. 45 at 33 (quoting *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753–54 (N.D. Ill. 2010)).  However, such concerns are uncompelling, given that the second notice will be disseminated by Richards' counsel, not the Court.  That aside, since the individual is not part of the collective in an FLSA action unless he or she opts-in, this court has previously recognized a second notice or reminder is appropriate.  *See, e.g.*, *Slack v. Xcess, Inc.*, 2020 WL 12738895, at *3 (S.D. Ind. July 9, 2020); *Knox*, 208 F. Supp. 3d at 964–65.  The Court therefore authorizes Richards to send a second notice, identical to the first, forty-five days after the issuance of the first notice to all individuals who have not yet opted-in to this matter.

The Court has considered Defendants' remaining objections, as well as the other suggested redlined changes, and overrules them.  They are largely stylistic suggestions concerning the language included in the notice or are otherwise unnecessary.  The Court will not engage in a wholesale rewrite of Richards' proposed notice form, as collective action plaintiffs should be allowed to use the language of their choice in drafting the communication to other prospective

collective members.  *See King v. ITT Continental Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986) (Rovner, J.).

### III. <u>CONCLUSION</u>

Richards has met her step one burden to certify her ADEA claims as a conditional collective action under the FLSA.  Her Motion for Conditional Certification and Issuance of Notice and Opt-In Form ([Filing No. 41](#)) is **GRANTED**.  Eli Lilly's Motion to Strike ([Filing No. 58](#)) is **GRANTED**, and **[Filing No. 56-1](#) is stricken**.  Richards is granted leave file a new a consent form for Sweeney that is consistent with this Order.

The notice and opt-in consent forms are limited in accordance with this Order.  Because Richards must revise these forms before they can be sent, the Court **ORDERS** her to **file within fourteen (14) days of the date of this Order supplemental notice and opt-in consent forms**, as well as a **proposed order** granting leave to send them.  Absent any unforeseen issues or unconsidered additions, the Court intends to grant the proposed order and allow notice to proceed. Thus, new objections by Defendants, if any, are not to exceed three pages and are due **seven (7) days after Richards' submission**.

Additionally, the Court **ORDERS** Defendants **to share the requested contact information with Richards' counsel within twenty-one (21) days of the date of this Order** for all former and current Eli Lilly employees who have worked for any period since February 12, 2022, to the present and were forty years of age or older when they were denied promotion.

**SO ORDERED**.

Date:   3/25/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

RSA.019

DISTRIBUTION:

Harold Lichten
LICHTEN & LISS-RIORDAN
hlichten@llrlaw.com

Jane Farrell
LICHTEN & LISS-RIORDAN PC
jfarrell@llrlaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Matthew Patton
LAW OFFICE OF NICHOLAS F. ORTIZ P.C.
mdp@mass-legal.com

Thomas Fowler
LICHTEN & LISS-RIORDAN, P.C.
tfowler@llrlaw.com

Jacob Wentzel
JENNER & BLOCK LLP
jwentzel@jenner.com

Joanna Wright
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036

Joseph Torres
JENNER & BLOCK LLP
jtorres@jenner.com

Katherine Funderburg
JENNER & BLOCK LLP
kfunderburg@jenner.com

RSA.020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MONICA RICHARDS individually and on behalf of all other similarly situated individuals,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ELI LILLY & COMPANY,<br>LILLY USA, LLC,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. 1:23-cv-00242-TWP-MKK<br>)<br>)<br>)<br>)<br>)<br>) |

## ENTRY ON DEFENDANTS' MOTION TO CERTIFY AN IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b) AND EMERGENCY MOTION FOR A STAY

This matter is before the Court on Defendants Eli Lilly & Company and Lilly USA, LLC's (collectively "Eli Lilly" or "Defendants") Motion to Certify an Immediate Appeal under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay (Filing No. 88). In this lawsuit, Plaintiff Monica Richards ("Richards") alleges Eli Lilly knowingly and willfully denied promotions to qualified employees who were older than forty, including herself and all other similarly situated employees, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B) (Filing No. 1). After the Court granted conditional collective certification under 29 U.S.C. § 216(b) (Filing No. 82), Eli Lilly filed the present motion, asking the Court to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the following reasons, Eli Lilly's motion is **granted**.

### I.   BACKGROUND

Richards, a fifty-three-old woman who has worked for Eli Lilly since August 1, 2016, alleges that,

> [s]ince at least 2017, Eli Lilly has been engaged in a companywide effort to shift its personnel focus to Millennials at the detriment of older employees, openly

espousing an aggressive strategy of hiring and retaining Millennial employees. As a part of its effort to retain Millennial workers, Eli Lilly has created resource groups for younger employees who it calls "Early Career Professionals" and has systematically favored younger employees by giving them promotions to the exclusion of older employees who are equally or better qualified.

(Filing No. 1, ¶ 10).  In her motion for conditional certification, Richards sought collective action status under the ADEA for the following class: "All Eli Lilly employees who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022." (Filing No. 41). Eli Lilly opposed Richards' motion, arguing that she neither demonstrated she was 'similarly situated' to other members of the proposed collective, nor identified a common policy or plan that impacted such employees (*see* Filing No. 45 at 12–19).

On March 25, 2024, the Court conditionally certified Richards' proposal for collective action as requested (Filing No. 82 at 2).  The Court authorized notice to all former and current Lilly employees who were "forty (40) years of age or older and were denied a promotion for which [they] were qualified on or after February 12, 2022 . . . ." *Id.* at 15.  In doing so, the Court utilized the two-stage certification process that most federal courts apply in FLSA collective actions, pursuant to *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), in contravention of Eli Lilly's urging to instead apply a one-step process that the Fifth Circuit more recently outlined in *Swales v. KLLM Transport Services*, 985 F.3d 430 (5th Cir. 2021), or that crafted by the Sixth Circuit in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) (requiring a "strong-likelihood" of similarly situated members before issuing notice).

The Court explained that "many courts in this Circuit have traditionally applied an *ad hoc* two-step certification process" in which the first step is requires "a modest factual showing" and is merely preliminary (Filing No. 82 at 3, 4 (quoting *Duan v. MX Pan Inc.*, No. 1: 22-cv-02333, 2023 WL 5955911, at *1 (S.D. Ind. Aug. 21, 2023))).

RSA.022

At the more stringent second step following discovery, the court reevaluates the conditional certification after employees have opted in to "determine[] whether there is sufficient similarity between the named and opt-in plaintiffs." *Id.* at 4 (quoting *Duan*, 2023 WL 5955911, at *1). A defendant can thus move to decertify or restrict the class because various putative class members are not 'similarly situated'. *See Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012). In ruling on such a motion, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Id.* (quoting *Threatt v. CRF First Choice, Inc.*, No. 1:05cv117, 2006 WL 2054372, at *5 (N.D. Ind. 2006)).

This two-step process stands in opposition to the *Swales* Court's view that "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'" 985 F.3d at 434. "Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.*

Seventeen days after the conditional certification order, Eli Lilly asked the Court to certify an interlocutory appeal, which would allow it to petition the Seventh Circuit for review of the following question:

> Whether notice in a collective action can issue based on a modest factual showing of similarity, rather than upon a showing by a preponderance of the evidence that requires the Court to find that commonality across the collective is more likely than not.

([Filing No. 88 at 11](#)). Eli Lilly further requested, on an emergency basis, that the Court stay the then-approaching deadline for providing contact information of Richards' proposed collective and the issuance of notice to those individuals. *Id.* Recognizing that the deadline for providing contact

3

information was fast approaching, the Court granted the emergency motion and stayed the deadline to give the parties time to fully brief the Motion to Certify and the Court an opportunity to issue its ruling on Defendants request for interlocutory appeal. The motion is now fully briefed and ripe for ruling.

## II. <u>DISCUSSION</u>

Federal appellate jurisdiction is generally limited to review of only the "final decisions of the district courts." 28 U.S.C. § 1291. Waiting for a final judgment "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft Corp. v. Baker*, 582 U.S. 23, 36-37 (2017) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)).

However, 28 U.S.C. § 1292(b) allows for an interlocutory appeal when an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of litigation." *Richardson Elecs, Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000). Thus, "[t]here are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation."[1] *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). "Unless *all* these criteria are

---

[1] Courts have also upheld a nonstatutory requirement that "the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). The Court does not take issue with the time taken by Eli Lilly in submitting its motion. Though not immediate, the filing of the petition occurred less than three weeks from the March 25, 2024 conditional certification order. Given the breadth of the collective that was conditionally certified and the data collection at hand — which the Court assumes is underway — the Court finds the period reasonable under the circumstances.

RSA.024

satisfied, the district court may not and should not certify its order to [the appellate court] for an

immediate appeal under section 1292(b)." *Id.* at 676 (emphasis in original).

Here, all four criteria are met.

### A. <u>Question of Law?</u>

For purposes of § 1292(b), the term "question of law" generally refers to a

'pure' question of law rather than merely to an issue that might be free from a factual contest.  The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case.

*Ahrenholz*, 219 F.3d at 676–77.

The Court disagrees with Richards' concern, to the extent one exists, that a district court's

choice, in the face of the "wide discretion" afforded it, cannot serve as a basis for interlocutory

appeal or present a "pure question of law" (Filing No. 92 at 12 (quoting *Iannotti v. Wood Grp.*

*Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022), 14).  Richards is correct that district courts are

entrusted with such discretion in managing collective action (*see In re New Albertsons, Inc.*, No.

21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021)).  And, as Richards argues, challenges

to the adequacy of a plaintiff's evidentiary showing or questions that seek review of the application

of facts to the standards are widely rejected in this Circuit on the grounds that they are not pure

questions of law (*see* Filing No. 92 at 14–15 (quoting among others *Piazza v. New Albertsons,*

*Inc.*, No. 20-cv-03187, 2021 WL 3645526, at *3 (N.D. Ill. Aug. 16, 2021)).

The Court is assured here, however, that Eli Lilly speaks instead about the 'similarly

situated' standard itself, bypassing altogether the issue of how the Court manages the collective

action *in arriving to* the 'similarly situated' standard, including, for those courts who follow the so-

called two-step *Lusardi* approach, *see* 118 F.R.D. 351 (D.N.J. 1987), the facilitation and issuance

of 'conditional certification' notice.  The question Eli Lilly seeks to present for resolution by the

RSA.025

Seventh Circuit is focused on "a plaintiff's *burden of proof* for establishing that the proposed collective is similarly situated before notice may issue" (Filing No. 94 at 8) (emphasis in original).

As such, the determination of whether *Lusardi* or *Swales* (or even *Clark*) should control whether a court certifies a collective presents a purely legal question that would not require wading into the record for the answer. Eli Lilly simply seeks clarity on the proper legal standard for collective certification, not whether the Court appropriately applied the facts to a particular standard. The Seventh Circuit should be given the opportunity to clarify the standard, should it so choose. After all, both *Swales* and *Clark* were decisions from interlocutory appeals.

### B. Controlling?

A question of law is "controlling" for purposes of § 1292(b) if its "resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 04 CV 2714, MDL No. 1604, 2006 WL 1371458 at *2 (N.D. Ill. May 16, 2006) (citing *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)). Furthermore, "the resolution of an issue need not necessarily terminate an action in order to be 'controlling'." *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111, 2020 WL 4261814, at *5 (S.D. Ind. July 24, 2020) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)). "'Controlling' is to be interpreted and applied with flexibility, such that a question is 'controlling' if it is 'serious to the conduct of the litigation, either practically or legally.'" *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 212 F. Supp. 2d 903, 911 (S.D. Ind. 2002) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)).

Even if the interlocutory question has the possibility of not terminating the litigation as a legal matter, application of a standard more rigorous than the one previously applied by this Court would certainly affect as a practical matter the scope of the notice and the size of the collective. *See, e.g.*, *Swales v. KLLM Transp. Servs., LLC*, 410 F. Supp. 3d 786, 794 (S.D. Miss. 2019)

6

("[A]pplying a different test for conditional certification — or for the ultimate decision whether to certify — could materially impact the trial of this matter; the case will either be a collective action or involve individual claims."), *vacated and remanded sub nom. Swales*, 985 F.3d 430.  This would in turn increase settlement leverage, *see Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)), that could then "exert 'formidable settlement pressure'" on a defendant.  *Thomas v. Maximus, Inc.*, No. 3:21cv498, 2022 WL 1482008, at *4 (E.D. Va. May 10, 2022) (quoting *Holder v. A&L Home Care and Training Ctr., LLC*, 552 F. Supp. 3d 731, 747 (S.D. Ohio 2021), *vacated and remanded sub nom. Clark*, 68 F.4th 1003).  The offramp of later decertification is certainly possible.  But it would occur after inviting the conditional class to grow.  Thus, at this stage, resolution of the interlocutory question on appeal is "likely to affect the further course of the litigation," *Sokaogon*, 86 F.3d at 659, notwithstanding the certification's conditionality.

### C.  <u>Contestable Question of law?</u>

The "contestable" criterion turns on whether "substantial grounds for a difference of opinion" on the issue exist.  *Ormond v. Anthem, Inc.*, No. 1:05-cv-1908, 2011 WL 3881042, at *3 (S.D. Ind. Sept. 2, 2011) (quoting *Sandifer v. U.S. Steel Corp.*, 2010 WL 61971, at *4 (N.D. Ind. Jan.5, 2010)).  The mere presence of a disputed issue that is a question of first impression for the Seventh Circuit, by itself, is insufficient to demonstrate a substantial ground for difference of opinion.  *See Manitowoc Cranes LLC v. Sany Am. Inc.*, No. 13-C-677, 15-C-647, 2018 WL 582334, at *2 (E.D. Wis. Jan. 29, 2018).  Rather, it is the duty of the district court to analyze "'the strength of the arguments in opposition to the challenged ruling,' which process includes 'examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification.'"  *Whipkey v. Eli Lilly and Co.*, No. 1:20-cv-00450, 2021 WL 11963021,

RSA.027

at *2 (S.D. Ind. Mar. 16, 2021) (quoting *United States v. Select Med. Corp.*, No. 3:12-cv-00051, 2017 WL 468276, at *3 (S.D. Ind. Feb. 3, 2017)).

The question of the correct standard to apply when issuing notice to a proposed FLSA collective has generated sufficient controversy to justify certification.  Indeed, the Fifth and Sixth Circuits took up the issue of collective certification on interlocutory appeals, and the pair of opinions demonstrates the substantial and ripe ground for difference of opinion percolating in those circuits alone.  *Compare Swales*, 985 F.3d at 442–43 (prescribing district courts consider all available evidence in the "rigorous[] enforce[ment]" of the 'similarly situated' mandate), *with Clark*, 68 F.4th at 1010–11 (6th Cir. 2023) (declining to require a "conclusive finding of 'similar situations'" and remanding for the district court to redetermine certification under a "strong-likelihood standard") (quoting *Sperling v. Hoffmann-La Roche*, 118 F.R.D. 392, 406 (D.N.J. 1988)).

Equally important, the Seventh Circuit has yet to address this specific question, and there are decisions within this circuit that lend support to both parties' positions about the proper level of scrutiny to be applied before issuing notice.  *Compare Fillipo v. Anthem Companies, Inc.*, 2022 WL 18024818, at *2 (S.D. Ind. Dec. 30, 2022) (citing in part *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)) ("To determine whether the proposed collective is 'similarly situated,' the Court may apply the law of Rule 23 class certification."), *with Piazza v. New Albertsons, LP*, No. 20-cv-03187, 2021 WL 365771 (N.D. Ill. Feb. 3, 2021) (quoting *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) ("Conditional certification is not the time to 'weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant' . . . .").  At least one court in this Circuit has "inkled the use of a preponderance standard" and

RSA.028

bemoaned the 'modest' and 'modest plus' concepts — as they are unmoored from the statute, unhinged from any recognized or defined standard for assessing evidence, foreign from what federal courts seem to be really doing, and ostensibly divorced from the goals of enforcement and efficiency that must be promoted ever mindful of the parallel risks to neutrality and case leverage in FLSA conditional certification cases.

*Fitzgerald v. Forest River Mfg. LLC*, 2022 WL 558336, at *4 (N.D. Ind. Feb. 23, 2022).

In short, "[j]ust because the 'FLSA certification two-step remains the dance of this circuit' does not answer the question what scrutiny should apply . . . at conditional certification [] and how the court should precisely define that scrutiny," *id.*, nor does it nullify the difference of opinion starting to appear in this and other circuits in recognition that the FLSA's text does not require a certain standard of similarity in collective certification. *See Smith v. United States*, 163 Fed. Cl. 155, 165 (Fed. Cl. 2022) ("Other than the 'similarly situated' requirement, the FLSA does not define a mechanism or any other conditions for certification — nor does it define 'similarly situated.'"); *see, e.g.*, *Mathews v. USA Today Sports Media Grp., LLC*, 2023 WL 3676795, at *3 (E.D. Va. Apr. 14, 2023) (rejecting the *Lusardi* framework in favor of the *Swales* approach and holding that the FLSA's text permits limited discovery "targeted only at the factual and legal considerations needed to make the 'similarly situated' determination," which courts "must determine, at the outset").

Weighing Eli Lilly's arguments in opposition to this Court's grant of conditional certification, and in light of the well-reasoned decisions in *Swales* and *Clark* and the burgeoning adoption in several circuits of positions conflicting with the "modest" showing customarily utilized in the *ad hoc* approach, the Court finds that a substantial ground for difference of opinion exists.

### D. <u>Materially Advance Termination of Litigation?</u>

Once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, "all that section 1292(b) requires as a

RSA.029

precondition to an interlocutory appeal . . . is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original). "[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Id.* (citations omitted). "What is required, however, is that an immediate appeal will expedite rather than protract the resolution of the case." *Consumer Fin. Prot. Bureau v. TransUnion*, 674 F. Supp. 3d 467, 471 (N.D. Ill. 2023) (quoting *U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp.*, 195 F. Supp. 3d 996, 1008 (N.D. Ill. 2016)).

Richards argues that interlocutory appeal would only incur delay in the matter. She maintains that such an appeal would "serve to prolong the inevitable" (Filing No. 92 at 18) since, by her reasoning, the issuance of notice would still be warranted even were Eli Lilly's sought-after standard adopted. *See id.* at 18–19. Eli Lilly clarifies it seeks only a limited stay of the issuance of notice (*see* Filing No. 94 at 12). It further argues that continuing discovery while the appeal is resolved strikes an appropriate balance between allowing Richards' claims to proceed and potential clarification of an issue which may avoid protracted and expensive litigation. Eli Lilly asserts that discovery is more complex in this case, and that discovery will take longer than ten months[2] — a span of time which Richards points to and which constitutes, as of September 2023, the median time for a civil appeal in this Circuit to reach a last opinion or final order (*see* Filing No. 92 at 18;

---

[2] The Court recognizes that the parties initially agreed to a period of less than ten months for liability and non-expert discovery (*see* Filing No. 31). Since then, however, the parties have sought and the Court has granted several discovery deadline extensions (*see* Filing No. 57; Filing No. 59; Filing No. 71; Filing No. 84), and the Court has had to referee an extensive discovery dispute arising out of Richards' individual claims (*see* Filing No. 95).

RSA.030

Table B-4A, U.S. Courts of Appeals – Median Time Intervals, During the 12-Month Period Ending September 30, 2022, *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2023.pdf).

As a practical matter, an immediate appeal will — or, at the very least, *may* — materially advance the ultimate resolution of this litigation by resolving uncertainty about the proper scope of the collective as it proceeds, first to the opt-in period, then to the conclusion of discovery, and finally to summary judgment.

On one end of the spectrum, a mere affirmance of the Court's order would simply postpone notice and the discovery that follows, which would proceed without a stay in place. At the other end of possibilities, however, awaits the following prospect. Were the reviewing court to hold that the issuance of notice requires a showing by a preponderance of the evidence that similarity across the proposed collective is more likely than not, then the preclusive effect of such a determination, once made, would potentially result in a smaller, but nevertheless final collective being certified at an earlier stage than would be the case otherwise.

Inevitably, such a determination would "materially impact the trial of this matter". *Swales*, 410 F. Supp. 3d at 794. The Court makes the preceding observations about the potential effect or impact, however, without opining on the putative collective as presently conceived, or as to the appropriateness of its scope or size as conditionally granted. The Court is merely pointing out the obvious: clarifying the proper scope of the collective, sooner rather than later, would ultimately serve to expedite, not protract, the eventual resolution in this case.

The Court agrees with the balanced approach presented in granting a limited stay only as it pertains to the issuance of notice but allowing unrelated discovery to continue pending the resolution of the appeal. Permitting all other discovery to continue in the meantime facilitates the

RSA.031

efficient, accurate resolution of this matter, furthers the best interests of the Court and parties, and ensures that the case progresses down the path to the five-day jury trial set to begin in February 2025. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

### III. <u>CONCLUSION</u>

The Court stands by its decision that Richards has met her step one burden to certify her ADEA claims as a conditional collective action under the FLSA. (Filing No. 82). Nonetheless, Eli Lilly has demonstrated that the Court's March 25, 2024 conditional certification order involves a controlling question of law to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of litigation. Thus, the Motion to Certify an Immediate Appeal under 28 U.S.C. § 1292(b) and Emergency Motion for a Stay (Filing No. 88) is **GRANTED**.

The Court now **CERTIFIES** the following question for interlocutory appeal:

> Whether notice in a collective action can issue based on a modest factual showing of similarity, rather than upon a showing by a preponderance of the evidence that requires the Court to find that commonality across the collective is more likely than not.

*Id*. at 11. The Court **ORDERS** the statute of limitations for members of the conditionally certified collective defined in its March 25, 2024 order, Filing No. 82, to be tolled pending notification of a decision from the Seventh Circuit Court of Appeals.

Additionally, the Court **STAYS** the issuance of notice to members of the putative collective and the deadline imposed on Eli Lilly to provide members' contact information, which it had previously stayed on an interim basis in contemplation of issuing this ruling (*see* Filing No. 89).

RSA.032

Today's limited stay is meant to preserve the status quo only as it relates to the issuance of notice, and the parties are advised that all other discovery is to proceed as it normally would.

The parties are to confer and submit to the Magistrate Judge a joint proposed scheduling order in line with the requirements set forth in the conclusion of the Court's April 23, 2024 Order on Richards' Motion to Compel Discovery (Filing No. 95) **within ten (10) days** of the date of Order.

**SO ORDERED**.

Date:   5/10/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jane Farrell
Lichten & Liss-Riordan PC
jfarrell@llrlaw.com

Thomas Fowler
Lichten & Liss-Riordan, P.C.
tfowler@llrlaw.com

Katherine Funderburg
Jenner & Block LLP
kfunderburg@jenner.com

Harold Lichten
Lichten & Liss-Riordan
hlichten@llrlaw.com

Jeffrey A. Macey
Macey Swanson LLP
jmacey@maceylaw.com

Matthew Patton
Law Office of Nicholas F. Ortiz P.C.
mdp@mass-legal.com

RSA.033

Joseph Torres
Jenner & Block LLP
jtorres@jenner.com

Jacob Wentzel
Jenner & Block LLP
jwentzel@jenner.com

Joanna Wright
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036

RSA.034