# No. 24-2574

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

MONICA RICHARDS, individually and on behalf of all other similarly situated individuals,

*Plaintiff-Appellee,*

v.

ELI LILLY & COMPANY; LILLY USA, LLC,

*Defendants-Appellants.*

**On Appeal from the United States District Court for the Southern District of Indiana, Case. No. 1:23-cv-242 Hon. Tanya Walton Pratt, United States District Judge**

**ANSWERING BRIEF OF PLAINTIFF-APPELLEE**

Harold Lichten (*Counsel of Record*)
Thomas Fowler
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
tfowler@llrlaw.com

Jeffrey A. Macey
MACEY SWANSON LLP
429 N. Pennsylvania St., Suite 204
Indianapolis, IN 46204
(317) 637-2325
jmacey@MaceyLaw.com

*Counsel for Plaintiff-Appellee*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>24-2574</u>

Short Caption: <u>Monica Richards v. Eli Lilly & Co.; Lilly USA, LLC</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Monica Richards

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Lichten & Liss-Riordan, P.C.

    Macey Swanson LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: <u>/s/ Harold L. Lichten</u>    Date: <u>11/27/2024</u>

Attorney's Printed Name: <u>Harold L. Lichten</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: <u>Lichten & Liss-Riordan, P.C.</u>

    <u>729 Boylston St., Suite 2000, Boston, MA 02116</u>

Phone Number: <u>(617) 994-5800</u>    Fax Number: <u>(617) 994-5801</u>

E-Mail Address: <u>hlichten@llrlaw.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2574

Short Caption: Monica Richards v. Eli Lilly & Co.; Lilly USA, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Monica Richards

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Lichten & Liss-Riordan, P.C.

    Macey Swanson LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Thomas Fowler    Date: 11/27/2024

Attorney's Printed Name: Thomas Fowler

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Lichten & Liss-Riordan, P.C.

    729 Boylston St., Suite 2000, Boston, MA 02116

Phone Number: (617) 994-5800    Fax Number: (617) 994-5801

E-Mail Address: tfowler@llrlaw.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2574

Short Caption: Monica Richards v. Eli Lilly & Co.; Lilly USA, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Monica Richards

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lichten & Liss-Riordan, P.C.

Macey Swanson LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Jeffrey A. Macey      Date: 11/27/2024

Attorney's Printed Name: Jeffrey A. Macey

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: Macey Swanson LLP

429 N. Pennsylvania St., Suite 204, Indianapolis, IN 46204

Phone Number: (317) 637-2345      Fax Number: (317) 637-2369

E-Mail Address: jmacey@MaceyLaw.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 9

JURISDICTIONAL STATEMENT ............................................................................ 15

STATEMENT OF THE ISSUES................................................................................. 15

STATEMENT OF THE CASE .................................................................................... 16

    I.      Since at Least 2017, Eli Lilly Has Engaged in a Companywide Effort to
           Retain and Promote Younger Employees to the Detriment of Older,
           More Experienced Employees...................................................................... 16

    II.     Eli Lilly Discriminates Against Plaintiff Monica Richards on the Basis of
           Age by Denying Her a Promotion in Favor of an "Early Career
           Professional" with Minimal Experience .................................................. 18

    III.    Richards Files Suit Against Eli Lilly Under the ADEA and Moves to
           Provide Notice to Similarly Situated Employees .................................... 19

    IV.    The District Court, Exercising Its Discretion to Adopt the Well-
           Established Two-Step Procedure for Managing Collective Actions,
           Grants Richards's Motion for Conditional Certification ...................... 21

SUMMARY OF ARGUMENT ................................................................................... 23

STANDARD OF REVIEW.......................................................................................... 27

ARGUMENT................................................................................................................. 27

    I.      Under Controlling Supreme Court Precedent, District Courts Have
           Wide Case Management Discretion in Determining Whether Notice
           Should Be Issued in a Collective Action .................................................. 27

    II.     A District Court's Decision to Apply the *Lusardi* Framework Does Not
           Violate the Law........................................................................................... 34

    III.    The *Lusardi* Approach Is a Reasonable Method of Managing a Collective
           Action........................................................................................................... 45

    A.    The *Lusardi* framework ensures the preservation of claims, sensibly defers making critical fact-bound determinations that could cut out potential plaintiffs until a later stage in the litigation on a fuller record, and promotes judicial economy. ........................................................... 46

    B.    Eli Lilly's speculative arguments against the *Lusardi* framework lack support........................................................................................................... 51

IV.    The District Court Did Not Abuse Its Discretion in Adopting the *Lusardi* Approach in This Instance......................................................................................... 59

CONCLUSION ..................................................................................................... 64

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. City of Chicago,*
  605 F.3d 445 (7th Cir. 2010) ............................................... 33

*Anderson v. Montgomery Ward & Co.,*
  852 F.2d 1008 (7th Cir. 1988) .............................................. 46

*Andreana v. Va. Beach City Pub. Sch.,*
  2018 WL 2144151 (E.D. Va. May 9, 2018) ........................... 60

*Barton v. Zimmer, Inc.,*
  662 F.3d 448 (7th Cir. 2011) ............................................... 49

*Behr v. AADG, Inc.,*
  136 F. Supp. 3d 1012 (N.D. Iowa 2015) .......................... 48, 50

*Bergman v. Kindred Healthcare, Inc.,*
  949 F. Supp. 2d 852 (N.D. Ill. 2013) ................................... 29

*Bigger v. Facebook, Inc.,*
  947 F.3d 1043 (7th Cir. 2020) ........................................ passim

*Bouaphakeo v. Tyson Foods, Inc.,*
  564 F. Supp. 2d 870 (N.D. Iowa 2008) ................................. 48

*Boyd v. Alutiiq Glob. Sols., LLC,*
  2011 WL 3511085 (N.D. Ill. Aug. 8, 2011) ........................... 29

*Brooklyn Sav. Bank v. O'Neil,*
  324 U.S. 697 (1945) ............................................................ 27

*Burkholder v. City of Fort Wayne,*
  750 F. Supp. 2d 990 (N.D. Ind. 2010) ................................. 56

*Camesi v. Univ. of Pittsburgh Med. Ctr.,*
  729 F.3d 239 (3d Cir. 2013) ................................................ 32

*Campbell v. City of Los Angeles,*
  903 F.3d 1090 (9th Cir. 2018) ........................................ passim

*Cassell v. Snyders,*
  990 F.3d 539 (7th Cir. 2021) ............................................................... 43

*Clark v. A&L Homecare & Training Ctr., LLC,*
  68 F.4th 1003 (6th Cir. 2023) ...................................................... passim

*Donofrio v. IKEA US Retail, LLC,*
  2019 WL 9698597 (E.D. Pa. May 15, 2019) ................................... 50, 60

*Drummond v. Am. Fam. Mut. Ins., S.I.,*
  2024 WL 3581649 (W.D. Wis. July 30, 2024) ...................................... 56

*EEOC v. Lilly USA, LLC,*
  No. 1:22-cv-01882 (S.D. Ind.) ............................................................ 16

*Epic Sys. Corp. v. Lewis,*
  584 U.S. 497 (2018)............................................................................. 28

*Ervin v. OS Rest. Servs., Inc.,*
  632 F.3d 971 (7th Cir. 2011) ............................................................... 33

*Escobar v. Whiteside Const. Corp.,*
  2008 WL 3915715 (N.D. Cal. Aug. 21, 2008)....................................... 47

*Espenscheid v. DirectSat USA, LLC,*
  705 F.3d 770 (7th Cir. 2013) ............................................................... 39

*Fitzgerald v. Forest River Mfg. LLC,*
  2022 WL 558336 (N.D. Ind. Feb. 23, 2022) ........................................ 33

*Ford v. MIJ, Inc.,*
  2021 WL 2134570 (N.D. Ind. May 25, 2021)........................................ 39

*Genesis Healthcare Corp. v. Symczyk,*
  569 U.S. 66 (2013)......................................................................... passim

*Goodman v. Ill. Dep't of Fin. & Pro. Regul.,*
  430 F.3d 432 (7th Cir. 2005) ............................................................... 43

*Grayson v. K Mart Corp.,*
  79 F.3d 1086 (11th Cir. 1996) ....................................................... 38, 40

4

*Greene v. Cascadia Healthcare, LLC,*
  2024 WL 4494902 (D. Idaho Oct. 15, 2024) ........................................................................ 32

*Grimes v. Eli Lilly & Co.,*
  No. 1:21-cv-02367 (S.D. Ind.) ............................................................................................ 16

*Heath v. Google Inc.,*
  215 F. Supp. 3d 844 (N.D. Cal. 2016) ............................................................ 21, 47, 48, 50

*Hipp v. Liberty Nat'l Life Ins.,*
  252 F.3d 1208 (11th Cir. 2001) .......................................................................................... 33

*Hoffmann-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ...................................................................................................... passim

*Hunter v. WirelessPCS Chi. LLC,*
  2022 WL 864533 (N.D. Ill. Mar. 23, 2022) ....................................................................... 34

*Hyman v. First Union Corp.,*
  982 F. Supp. 1 (D.D.C. 1997) ...................................................................................... 50, 60

*In re New Albertsons, Inc.,*
  2021 WL 4028428 (7th Cir. Sept. 1, 2021) .................................................................. passim

*Int'l Bhd. of Teamsters v. United States,*
  431 U.S. 324 (1977) ............................................................................................................. 48

*Jackson v. N.Y. Tel. Co.,*
  163 F.R.D. 429 (S.D.N.Y. 1995) ........................................................................................ 50

*Johnson Assocs. Corp. v. HL Operating Corp.,*
  680 F.3d 713 (6th Cir. 2012) .............................................................................................. 36

*Lancaster v. FQSR*
  2020 WL 5500227 (D. Md. Sept. 11, 2020) ...................................................................... 21

*Laverenz v. Pioneer Metal Finishing, LLC,*
  2024 WL 3887110 (E.D. Wis. Aug. 21, 2024) .................................................................. 33

*Lee v. Children's Place Retail Stores, Inc.,*
  2014 WL 5100608 (N.D. Ill. Oct. 8, 2014) ........................................................................ 40

*Li v. A Perfect Day Franchise, Inc.,*
  270 F.R.D. 509 (N.D. Cal. 2010) ......................................................... 51

*Lusardi v. Xerox Corp.,*
  118 F.R.D. 351 (D.N.J. 1987) ......................................................... 9, 28

*Mooney v. Aramco Servs. Co.,*
  54 F.3d 1207 (5th Cir. 1995) ......................................................... 54

*Morgan v. Fam. Dollar Stores, Inc.,*
  551 F.3d 1233 (11th Cir. 2008) ......................................................... 32, 58

*Myers v. Hertz Corp.,*
  624 F.3d 537 (2d Cir. 2010) ......................................................... 29, 32, 33

*O'Brien v. Ed Donnelly Enters., Inc.,*
  575 F.3d 567 (6th Cir. 2009) ......................................................... 39, 40

*Placide v. Roadrunner Transp. Servs. Inc.,*
  2022 WL 3682912 (E.D. Wis. Aug. 25, 2022) ......................................................... 54

*Rambo v. Glob. Diversified, Inc.,*
  2021 WL 262556 (C.D. Ill. Jan. 26, 2021) ......................................................... 56

*Reed v. Methodist Health Servs. Corp.,*
  2021 WL 1082010 (C.D. Ill. Mar. 1, 2021) ......................................................... 40

*Scott v. Chipotle Mexican Grill, Inc.,*
  954 F.3d 502 (2d Cir. 2020) ......................................................... 38, 39, 40

*Smith v. Pro. Transp. Inc.,*
  2018 WL 573098 (S.D. Ind. Jan. 26, 2018) ......................................................... 58

*Sperling v. Hoffmann-La Roche, Inc.,*
  118 F.R.D. 392 (D.N.J. 1988) .................................................passim

*Swales v. KLLM Transport Services, L.L.C.,*
  985 F.3d 430 (5th Cir. 2021) ......................................................... 14, 42, 45, 60

*Thiessen v. Gen. Elec. Cap. Corp.,*
  267 F.3d 1095 (10th Cir. 2001) ......................................................... 32, 33, 38, 48

*Tom v. Generac Power Sys., Inc.,*
2018 WL 3696607 (E.D. Wis. Aug. 3, 2018) ........................................................ 53

*Walker v. Health & Hosp. Corp. of Marion Cnty.*
2016 WL 7179370 (S.D. Ind. Dec. 9, 2016) ........................................................ 54

*Weckesser v. Knight Enters. S.E., LLC,*
392 F. Supp. 3d 631 (D.S.C. 2019) ...................................................................... 51

*White v. Baptist Mem'l Health Care Corp.,*
699 F.3d 869 (6th Cir. 2012) ............................................................................... 32

*Williams v. Angie's List, Inc.,*
223 F. Supp. 3d 779 (S.D. Ind. 2016) ........................................................... 29, 53

*Williams v. Sprint/United Mgmt. Co.,*
222 F.R.D. 483 (D. Kan. 2004) ............................................................................ 48

*Woods v. New York Life Insurance,*
686 F.2d 578 (7th Cir. 1982) ............................................................................... 31

*Zavala v. Wal Mart Stores Inc.,*
691 F.3d 527 (3d Cir. 2012) ................................................................................ 58

**Statutes**

28 U.S.C. § 1292 ......................................................................................................... 23

29 U.S.C. § 256(b) ................................................................................................. 12, 46

29 U.S.C. § 626(b) ...................................................................................................... 19

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* .................. 9, 16

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* ............................................. 9, 27

**Other Authorities**

Cynthia Estlund, *The Black Hole of Mandatory Arbitration*, 96 N.C. L. Rev. 679
(2018) ..................................................................................................................... 55

John Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv. L. Rev. 525
(1978) ..................................................................................................................... 44

Katherine V. W. Stone, *Procedure, Substance, and Power: Collective Litigation and Arbitration Under the Labor Law*, 61 UCLA L. Rev. Discourse 164 (2013) ...................... 55

Kevin J. Lynch, *Preliminary Injunctions in Public Law: The Merits*, 60 Hous. L. Rev. 1067 (2023) ................................................................................................................ 44

Seyfarth, 18th Annual Workplace Class Action Litigation Report (2022), https://www.content.seyfarth.com/publications/Workplace-Class-Action-Report-2022 ...................................................................................................................... 52

**Rules**

Fed. R. Civ. P. 16 ................................................................................................................ 31

Fed. R. Civ. P. 20 ................................................................................................................ 40

Fed. R. Civ. P. 23 ......................................................................................................... 38, 39

Fed. R. Civ. P. 83 ................................................................................................................ 31

**Treatises**

Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:16 (21st ed. 2024) ...................... 38

## INTRODUCTION

In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173–74 (1989), the Supreme Court held that trial courts have broad case management discretion in determining whether to provide notice to potential opt-in plaintiffs in a collective action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, or the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Referencing trial courts' unique expertise in managing their own dockets, the Supreme Court explicitly declined to mandate a one-size-fits-all procedure for courts to follow before issuing notice. *Hoffmann-La Roche*, 493 U.S. at 172–74.

Below, the District Court exercised its discretion and adopted the predominant two-step approach (often called the "*Lusardi*" framework, named after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)) that trial courts have utilized for decades to manage collective action lawsuits. At step one of this framework, to ensure timely notice to potential plaintiffs and to avoid improperly excluding individuals based on a limited record, courts only mandate that plaintiffs make a modest evidentiary showing that an unlawful policy that affected similarly situated employees exists. The sole consequence of granting "conditional certification" at step one is sending notice of the lawsuit to employees; this step "does not produce a class with an independent legal status," *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013), nor does it "adjudicate any party's rights," *In re New Albertsons, Inc.*, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021).

At step two of this framework, with the benefit of a fuller record facilitated by discovery and the presence of opt-in plaintiffs, courts determine whether named plaintiffs and opt-in plaintiffs actually are, in fact, similarly situated, and course correct as necessary.

In direct contradiction of the Supreme Court's mandate in *Hoffmann-La Roche*, and contrary to decades of trial court expertise, Eli Lilly invites this Court to declare *Lusardi* unlawful and mandate that courts require plaintiffs to make a "meaningful evidentiary showing" before notice is issued—in all cases. This Court should decline such an invitation, for the following reasons:

*First*, considering the Supreme Court's mandate in *Hoffmann-La Roche* that procedures regarding the issuance of notice shall be left to the sound discretion of trial courts, Eli Lilly cannot seriously contend that a district court's decision to adopt the predominant *Lusardi* framework violates the law. Indeed, Eli Lilly's arguments regarding the purported impropriety of *Lusardi* are particularly ironic considering that the Supreme Court in *Hoffmann-La Roche* affirmed a district court decision that, itself, applied the *Lusardi* framework. *See Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 405–07 (D.N.J. 1988).

In an effort to circumvent *Hoffmann-La Roche*'s clear precedent on this issue, Eli Lilly invokes *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020), in which this Court held that in the "specific situation" where a defendant produces evidence of an arbitration agreement, courts should provide defendants an "opportunity" to establish,

by a preponderance of the evidence, the agreement's existence and validity. But *Bigger*'s holding was explicitly cabined to provide courts guidance when presented with *arbitration agreements*—a quasi-jurisdictional bar that categorically and unequivocally prevents employees from proceeding in federal court, regardless of the merits of their underlying claims. Indeed, this Court in *Bigger* acknowledged the predominant two-step approach, but declined to mandate a standard for courts to follow in managing collective actions. *Id.* at 1049 n.5. Extending *Bigger*'s holding and requiring courts to consider *any* evidence put forward by defendants of *any* demonstrated dissimilarities in the proposed collective as a prerequisite to providing notice would result in courts making significant (often merits-overlapping) factual determinations about absent plaintiffs based on a significantly limited record—risking improper exclusion of potential plaintiffs and undermining enforcement of the FLSA and ADEA.

Eli Lilly further attempts to circumvent *Hoffmann-La Roche* by arguing that the "modest" evidentiary standard at *Lusardi* step one does not align with the heightened standards imposed upon plaintiffs who seek class certification under Rule 23 or the issuance of a preliminary injunction. But these analogies between conditional certification and class certification or the issuance of a preliminary injunction are strained. *See Genesis Healthcare*, 569 U.S. at 74 ("Rule 23 actions are fundamentally different from collective actions . . . ."). Rule 23 certification creates a class with an independent legal status that includes absent individuals whose due process rights

must be carefully guarded, while a preliminary injunction is an extraordinary, drastic remedy that can require mandatory actions with lasting, real-world effects. Conditional certification, on the other hand, merely provides notice of a lawsuit. It is therefore sensible that courts impose a more modest evidentiary burden on plaintiffs at the conditional certification stage, especially when considering the remedial purposes of the FLSA and the ADEA.

*Second*, as four decades of trial court experience have indicated, the *Lusardi* framework is often an effective case management tool in collective actions. In FLSA actions, where a plaintiff's filing of a collective action does not toll the Act's statute of limitations for similarly situated employees who later opt in, *see* 29 U.S.C. § 256(b), *Lusardi*'s modest burden at step one ensures that notice is provided in a *timely* manner, before potential plaintiffs' claims expire. And in both FLSA and ADEA actions, courts find the *Lusardi* framework prudent because weighing the evidence or making critical factual decisions at the notice stage of litigation—when the factual record may be significantly lopsided or incomplete—would result in improperly excluding viable plaintiffs.

The *Lusardi* framework is particularly sensible when proceeding over ADEA claims of discrimination, where the scope of the collective can effectively be defined by referencing a common adverse employment action (e.g., denial of promotion), and where engaging in a more searching inquiry of the individualized circumstances

surrounding each potential plaintiff would improperly determine the merits of claims that are not before the court. Further, contrary to Eli Lilly's assertions, the early notice facilitated by the *Lusardi* framework *benefits* judicial economy by allowing district courts to "ascertain[] the contours of the action at the outset"; "avoid[] a multiplicity of duplicative suits"; set deadlines for opt-in consents and other decisions "to expedite disposition of the action"; and prevent the parties from abusing the collective mechanism through misleading communications to potential plaintiffs. *See Hoffmann-La Roche*, 493 U.S. at 171–72.

Eli Lilly's condemnations of the *Lusardi* approach amount to little more than fearmongering. To contend that *Lusardi* is bad policy (overriding the sound judgment of district judges who have found it beneficial for decades), Eli Lilly claims that the framework has resulted in an epidemic of decertification and undue settlement pressure. But Eli Lilly bases these arguments on speculation and cherrypicked cases— the actual evidence on collective actions paints a far less dramatic picture. The data on collective actions, which shows that decertification motions are rare, and evenly split in outcome when they do occur, provides zero indication that the *Lusardi* framework is resulting in a flood of overbroad notice unduly pressuring defendants into settling unmeritorious cases.

Plus, it is worth reiterating that *even if Lusardi* is a bad fit *in certain instances*, this Circuit grants trial courts the discretion to make modifications, or to discard *Lusardi*

entirely and adopt a different approach. Holding that *Lusardi* is categorically unlawful due to the practical difficulties presented in certain cases (like *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), an FLSA case that contained complex factual issues concerning whether certain groups of employees were "similarly situated"), would prevent courts from following *Lusardi* even in cases where the framework is a good fit.

This is one such case. Plaintiff Monica Richards alleges that Eli Lilly engaged in systematic age discrimination, facilitated by companywide policies that prioritized promoting young professionals at the expense of older, more experienced employees. In addition to providing affidavits outlining several instances of age discrimination occurring across the country, Richards also included an affidavit of a longtime manager at Eli Lilly who directly witnessed top-down implementation of these discriminatory, companywide promotion policies. The parties stipulated that notice, if issued, shall be provided only to employees over the age of 40 in Eli Lilly's sales organization and brand marketing organization who were denied a promotion for which they were qualified.

By narrowing the collective to only older employees who faced the same adverse employment action (and, indeed, by narrowing it even further by targeting two internal organizations), the collective as defined ensures that only "similarly situated" employees will receive notice. Employing a heightened evidentiary standard in this

instance—e.g., making merits determinations and weighing evidence concerning whether potential plaintiffs were, in fact, denied promotions due to discrimination—would essentially amount to prejudging on a limited record the claims of individuals who are not before the court and have not been provided the opportunity to advocate for themselves. The framework adopted here—providing notice to employees who faced the same adverse employment action, and deferring more significant factual decisions to a later stage when the record is more complete—is sensible and equitable.

And, finally, even if this Court decides that a heightened evidentiary standard is warranted in this instance, the District Court's interlocutory order should still be affirmed. Though not mandated to do so, the District Court did, in fact, consider Eli Lilly's evidence, and it still granted conditional certification. In other words, Richards's motion has already succeeded on a heightened evidentiary standard that takes the defendant's evidence into account.

## JURISDICTIONAL STATEMENT

The jurisdictional summary in Defendants-Appellants' brief is complete and correct.

## STATEMENT OF THE ISSUES

1. Did the District Court abuse its discretion in following the two-step "*Lusardi*" framework for managing a collective action, which imposes on plaintiffs a modest evidentiary burden before notice is issued and defers weighing the

evidence and making merits-based determinations until a later stage in the litigation, when the record is developed and potential plaintiffs are before the court?

## STATEMENT OF THE CASE

## I. Since at Least 2017, Eli Lilly Has Engaged in a Companywide Effort to Retain and Promote Younger Employees to the Detriment of Older, More Experienced Employees

Defendants Eli Lilly & Company and Lilly USA, LLC (collectively, "Eli Lilly") are corporations headquartered in Indianapolis, Indiana, that specialize in the development, manufacturing, marketing, and sales of pharmaceutical products. A.22.

Plaintiff Monica Richards alleges that Eli Lilly violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* A.21. Eli Lilly's discriminatory preferences for younger, Millennial employees have been well documented. On September 26, 2022, the Equal Employment Opportunity Commission ("EEOC") filed suit against Eli Lilly, alleging that it systematically failed to hire older employees as pharmaceutical sales representatives based on their age. *See EEOC v. Lilly USA, LLC*, No. 1:22-cv-01882 (S.D. Ind.); A.97–102 (EEOC Complaint). The EEOC's suit against Eli Lilly followed on the heels of a class and collective action filed against Eli Lilly alleging that it engaged in systematic age discrimination with respect to its hiring practices. *See Grimes v. Eli Lilly & Co.*, No. 1:21-cv-02367 (S.D. Ind.); A.104–28 (*Grimes* complaint). The EEOC's litigation with Eli Lilly resolved via a consent decree in October 2023, *see*

Consent Decree, *EEOC v. Lilly USA, LLC*, No. 1:22-cv-01882 (S.D. Ind. Oct. 10, 2023),

ECF No. 67, whereas the *Grimes* lawsuit settled, *see* Order Directing Filing of Documents

Authorizing Dismissal, *Grimes v. Eli Lilly & Co.*, No. 1:21-cv-02367 (S.D. Ind. Aug. 17,

2023), ECF No. 94.

Eli Lilly's companywide age bias has extended beyond the discriminatory hiring

practices detailed in the *EEOC* and *Grimes* lawsuits. Eli Lilly has also systematically

favored younger employees for promotions over well-qualified older employees. This

systematic discrimination is described in the affidavit of James Sweeney, who has spent

the last 20+ years as an Executive Business Director in Eli Lilly's Diabetes Business Unit,

and who has personally attended meetings where such discriminatory policies were

discussed. *See* A.31–35 (Sweeney affidavit).

Starting in or around 2012, Eli Lilly began to pilot a program called "early

identified talent," which encouraged managers to bypass the company's existing

"competency" model and promote new employees with minimal or no experience.

A.32. Mr. Sweeney observed this program gain momentum over the next few years,

growing commensurately with Eli Lilly's emphasis on hiring and supporting "Early

Career Professionals"—workers with two years or less of postgraduate experience. *Id.*

Recruiting, retaining, and promoting Early Career Professionals became part of more

senior employees' performance planning objectives. A.33.

Soon after the Early Career Professionals initiative was rolled out in or around 2016, Mr. Sweeney noticed that developing and promoting new employees with just a year or two of experience had become the dominant focus of Eli Lilly's biannual Human Resource Planning Meetings. *Id.* Indeed, Early Career Professionals with just 18 months' experience were prioritized over veteran sales representatives for various promotions. A.33–34. Eli Lilly also directed ample resources and mentorship opportunities at young employees, while older employees who wished to advance in the company received minimal support. *Id.*

## II. Eli Lilly Discriminates Against Plaintiff Monica Richards on the Basis of Age by Denying Her a Promotion in Favor of an "Early Career Professional" with Minimal Experience

Plaintiff Monica Richards fell victim to Eli Lilly's companywide age bias. *See* A.37–40 (Richards affidavit). Richards was a member of the Boston Primary Care District team, a subset of Eli Lilly's Diabetes Business Unit. A.37. In the summer of 2022, Richards applied for the position of District Sales Manager of Boston—the same position she had successfully been occupying on an interim basis for nearly six months. A.38.

A few days after Ms. Richards interviewed for the position, she was informed on a video call that she was not selected for the role. A.39. Richards learned that Eli Lilly had selected Gabriella McClure—who was in her late 20s, and who joined Eli Lilly through the Early Career Professionals initiative—to fill the role. A.39–40. Richards and

her colleagues were shocked; of the ten area managers on the call, seven of them messaged her during the announcement, expressing both surprise at the decision and appreciation for the work she had done as interim leader. A.39.

## III. Richards Files Suit Against Eli Lilly Under the ADEA and Moves to Provide Notice to Similarly Situated Employees

On February 7, 2023, Richards filed a complaint in federal court alleging that Eli Lilly discriminated against her on the basis of age, in violation of the ADEA and state law. *See* A.21–29. Richards's complaint alleges, *inter alia*, that Eli Lilly systematically violated the ADEA by knowingly and willfully denying promotions to qualified employees who are older than 40, while disproportionately promoting younger employees. A.26–27. Richards brought her ADEA claim on behalf of herself and similarly situated employees who may choose to opt in to the lawsuit via 29 U.S.C. § 626(b). A.27.

Pursuant to the procedure that was upheld by the Supreme Court in *Hoffmann-La Roche*, Richards moved for the District Court to "conditionally certify" a collective and provide notice to similarly situated employees who may wish to "opt in" to her ADEA lawsuit against Eli Lilly as plaintiffs. *See* ECF No. 42 (motion for conditional certification). In support of her motion, Richards provided ample evidence that there exists a class of similarly situated employees who have been subject to common policies and practices that resulted in systematic age discrimination at Eli Lilly.

For instance, Richards included with her motion an affidavit from James

Sweeney, who, as noted above, observed senior leadership discriminating against older

employees, as well as executives directing and incentivizing that discrimination. *See*

*generally* A.31–35. And, in addition to providing an affidavit relaying her own

experience facing Eli Lilly's systematic age discrimination, A.37–40, Richards also

provided affidavits from two other current or former Eli Lilly employees who had

similar experiences.

One of these employees is Herold Oluoch, who joined Eli Lilly as a Senior

Scientist in 2013 and works at Eli Lilly's Research Laboratories in Indianapolis. *See*

A.42–43 (Oluoch affidavit). Mr. Oluoch had only received outstanding performance

reviews during his ten years at the company, and he was even named one of the top 100

Eli Lilly Innovators of the Year in 2022. A.43. Even with his exceptional track record and

the support of his supervisor, Mr. Oluoch has not been promoted since joining Eli Lilly.

*Id.* Instead, Eli Lilly has passed him over for promotion in favor of an Early Career

Professional at least eight times. *Id.*

Richards also included an affidavit from Christina Sosa, a former Eli Lilly

employee based out of Florida who was also subjected to Eli Lilly's discriminatory

practices. *See* A.45–47 (Sosa affidavit). Ms. Sosa started as a Sales Representative in the

Diabetes Business Unit in August 2000 and became an Executive Sales Representative in

2006. A.45. In September 2017, Ms. Sosa started working for Jay Gabbe, who almost

exclusively hired Early Career Professionals from outside the company. A.46. Even though Mr. Gabbe had informed Ms. Sosa that performance reviews were grounded in each employee's sales numbers, he ultimately advocated for the promotion of a team member about 20 years younger than Ms. Sosa who had the lowest sales numbers on the team. *Id.* As a result of the age discrimination she faced, Ms. Sosa was constructively discharged from Eli Lilly in November 2021. A.47.

Richards also referenced the *EEOC* and *Grimes* lawsuits in her motion, since courts may consider prior, similar cases against the same defendant in deciding the issue of collective action conditional certification. *See Heath v. Google Inc.*, 215 F. Supp. 3d 844, 853–55 (N.D. Cal. 2016); *Lancaster v. FQSR*, 2020 WL 5500227, at *6 (D. Md. Sept. 11, 2020) (collecting cases).

## IV. The District Court, Exercising Its Discretion to Adopt the Well-Established Two-Step Procedure for Managing Collective Actions, Grants Richards's Motion for Conditional Certification

On March 25, 2024, the District Court granted Richards's motion to conditionally certify an ADEA collective and send notice to potential opt-in plaintiffs. *See* RSA.1–20 (order granting motion). Though not mandated by statute or binding authority to do so, the District Court opted to follow the two-step procedure for managing Richards's collective action that is widely used throughout the Seventh Circuit and in district courts across the country. RSA.6; *see New Albertsons*, 2021 WL 4028428, at *1.

Adhering to this tried-and-true two-step approach, the District Court determined that Richards provided sufficient evidence at step one to establish that there are potential plaintiffs who, like Richards, were victims of a common policy or plan that violated the law. RSA.14. The District Court first took note of the evidence that Richards had provided supporting the existence of similarly situated individuals. RSA.7. Given the totality of Richards's evidence, including Mr. Sweeney's description of a companywide departure from strict promotion requirements in favor of an "early identified talent" program, the District Court found it reasonable to conclude that there exists a class of older Eli Lilly employees who "suffered the same or similar plight" as (and are "similarly situated" to) Richards, Sosa, Oluoch, and the individuals described by Sweeney. RSA.9–10.

The District Court further held that Richards sufficiently identified evidence of a common policy or plan of discriminatory promotions. RSA.13. As the District Court explained, Richards supported her allegations of age discrimination with "detailed affidavits" providing evidence of a common policy or plan of discriminatory promotion practices at Eli Lilly. RSA.12. And the fact that Richards, Sosa, and Oluoch, who each worked in different geographic areas, similarly experienced discriminatory promotion practices demonstrated "an overarching—*i.e.,* companywide—plan, threading together instances of age bias in promotion." RSA.12–13 (internal record citation omitted).

Accordingly, the District Court granted Richards's motion for conditional certification and authorized notice to potential opt-in plaintiffs. RSA.19. Shortly after the District Court granted conditional certification, Eli Lilly moved for the District Court to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). ECF No. 88. A Seventh Circuit panel, following a petition for rehearing, ultimately granted Eli Lilly's petition for permission to appeal. A.20.

The District Court originally authorized notice to a collective consisting of "[a]ll Eli Lilly employees who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022." RSA.2. However, during the pendency of this appeal, the parties jointly stipulated to significantly narrow the collective. ECF No. 135 at 1–2. Specifically, the parties agreed that "any notice issued in this case should be limited to current and former United States employees who were 40 or older when they were denied a promotion for which they were qualified in Defendants' Sales Organization and Lilly USA, LLC's Brand Marketing Organization . . . between February 12, 2022, and March 25, 2024." *Id.*

## SUMMARY OF ARGUMENT

The District Court did not abuse its discretion in deciding to adhere to the two-step *Lusardi* framework for managing an ADEA collective action, which imposes a modest evidentiary burden on plaintiffs before notice is issued to employees.

First, a court's decision to follow *Lusardi*—or an alternative framework, for that matter—clearly does not violate the law. The text of the FLSA and the ADEA make no mention of "conditional certification," nor do they mandate that courts follow a uniform process in deciding whether notice should be issued. The Supreme Court in *Hoffmann-La Roche*, 493 U.S. at 171–74, explicitly held that trial courts retain broad case management discretion in proceeding over collective actions, and that discretion includes the decision to issue notice. Handcuffing courts to a uniform standard, to be applied in all cases regardless of the circumstances, would violate the Supreme Court's directive.

This Court's decision in *Bigger*, 947 F.3d 1043, does not compel a different result. *Bigger* provides guidance to courts when faced with the prospect of issuing notice to potential plaintiffs who may be categorically and unambiguously barred from litigating in federal court due to the existence of an arbitration agreement, which would clearly be a waste of judicial resources. Extending *Bigger*'s explicitly narrow holding and mandating that courts weigh all evidence at the conditional certification stage would result in significant, merits-overlapping decisions being made on a limited record, which risks erroneous exclusion of viable plaintiffs. And, Eli Lilly's attempts to analogize conditional certification—which merely provides notice and does not adjudicate any party's rights or change the nature of the suit—with the much more

24

significant decisions of Rule 23 class certification or the issuance of a preliminary injunction are strained at best.

*Second*, as four decades of trial court experience indicate, *Lusardi* is a reasonable framework that is equitable to plaintiffs and effectuates the remedial purposes of the FLSA and the ADEA. In the FLSA context, the "modest" burden at step one ensures that notice is timely, which prevents opt-in plaintiffs' claims from expiring. And in all contexts, trial courts have prudently held that it is equitable to abstain from weighing evidence and making merits determinations at the notice stage, where the record may be incomplete or lopsided, properly deferring these decisions until a later point in the litigation with the benefit of a fuller record and the affected parties actually being before the court.

In ADEA cases in particular, the scope of proper notice can effectively be ascertained by defining the collective in terms of adverse employment actions, whereas determinations about whether individual claimants were, in fact, subjected to individualized discrimination are more properly determined when these individuals are before the court and have an opportunity to make their cases. Significantly, the Supreme Court in *Hoffmann-La Roche* explicitly held that early notice, which is facilitated by the modest evidentiary burden, allows a court to avoid duplicative suits, expedite disposition, and prevent parties from abusing the collective action mechanism through misleading communications. 493 U.S. at 171–72.

Despite trial courts' overwhelming endorsement of the *Lusardi* approach, Eli Lilly contends that this framework has resulted in a parade of horribles: an epidemic of overbroad notice, undue settlement pressure, and the undermining of judicial neutrality. But Eli Lilly cites no evidence of these fears coming to fruition, relying instead on speculation. The actual evidence, on the other hand, which shows that decertification is uncommon, hardly paints the dramatic picture that Eli Lilly describes.

There can be little doubt that applying the *Lusardi* approach makes sense in this case. Plaintiff Monica Richards alleges that Eli Lilly engaged in companywide practices of favoring younger, inexperienced employees for promotions at the expense of older employees, and she supported her motion for conditional certification with an affidavit from a manager who witnessed these companywide practices being implemented from the top down. The parties stipulated that notice, if issued, will only be provided to employees aged 40+ in specific organizations who were denied promotions for which they were qualified, which means that the collective has been narrowed to only those who may have age discrimination claims. Determinations regarding which employees were, in fact, subjected to individual instances of discrimination should be deferred to a stage in the litigation where the court can benefit from a full record and the appearance of the affected individuals before the court.

Finally, it is worth noting that the District Court below did, in fact, weigh—and find insufficiently compelling—Eli Lilly's evidence. Therefore, even if this Court finds

that a heightened evidentiary standard is warranted in this case, the Court may still affirm the District Court's interlocutory order.

## STANDARD OF REVIEW

This Court "review[s] a district court's management of a collective action—including the facilitation of notice—for abuse of discretion." *Bigger*, 947 F.3d at 1048.

## ARGUMENT

### I.   Under Controlling Supreme Court Precedent, District Courts Have Wide Case Management Discretion in Determining Whether Notice Should Be Issued in a Collective Action

Section 626(b) of the ADEA expressly incorporates the "opt in" mechanism of the FLSA, 29 U.S.C. § 216(b). This mechanism provides claimants the right to bring an FLSA or ADEA action individually and on behalf of "other employees similarly situated." *Hoffmann-La Roche*, 493 U.S. at 170 (quoting 29 U.S.C. § 216(b)).

The right for claimants to pursue collective actions under the FLSA and the ADEA is integral to the enforcement of each statute. The FLSA, for instance, was passed by Congress to "aid the unprotected, unorganized and lowest paid of the nation's working population," that is, "those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). Due to the "enforcement gap" that exists when employers can skirt legal obligations due to the infeasibility of employees pursuing low-value claims on an individual basis, the collective action mechanism ensures that Congress's

remedial goals in enacting the FLSA are vindicated. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 550–52 (2018) (Ginsburg, J., dissenting).

By incorporating § 216(b) of the FLSA into the ADEA, Congress stated its policy that ADEA plaintiffs should similarly benefit from collective enforcement. *See Hoffmann-La Roche*, 493 U.S. at 170. As the Supreme Court recognized in *Hoffmann-La Roche*, "[a] collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* In other words, Congress's incorporation of the FLSA's collective action mechanism ensures that the "broad remedial goal" of the ADEA can be enforced "to the full extent of its terms." *Id.* at 173.

While the FLSA and the ADEA provide for a collective action mechanism, these statutes make no mention of "conditional certification," nor do they prescribe a standard process for district courts to follow in managing collective actions. Over the past four decades, however, district courts throughout the country have widely endorsed a framework for managing collective action lawsuits derived from the case *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

Under the *Lusardi* approach, courts undertake a two-step process to determine whether plaintiffs in a collective action are similarly situated. At the first step, plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *New Albertsons*, 2021 WL 4028428, at *1 (internal quotation omitted). The purpose of this step

is not to prejudge the merits of the action, but is rather for the court to determine

whether "similarly situated" plaintiffs do, in fact, exist. *See Myers v. Hertz Corp.*, 624 F.3d

537, 555 (2d Cir. 2010). Accordingly, courts applying the *Lusardi* approach generally do

not "make merits determinations, weigh evidence, determine credibility, or specifically

consider opposing evidence presented by a defendant" at step one. *Bergman v. Kindred

Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013).

While *Lusardi* step one imposes a relatively modest burden on plaintiffs, it is not

without teeth; plaintiffs cannot meet this burden by providing "vague, uncorroborated,

conclusory hearsay." *Boyd v. Alutiiq Glob. Sols., LLC*, 2011 WL 3511085, at *6 (N.D. Ill.

Aug. 8, 2011). Instead, plaintiffs must provide affidavits, declarations, or other

evidentiary support based on personal knowledge showing that there are similarly

situated employees subject to a common unlawful policy. *Id.*; *Williams v. Angie's List,

Inc.*, 223 F. Supp. 3d 779, 783 (S.D. Ind. 2016). If plaintiffs meet this burden, courts will

authorize notice of the case to similarly situated employees, who may opt in as

plaintiffs. *New Albertsons*, 2021 WL 4028428, at *1.

At *Lusardi*'s second step, after employees have opted in and discovery has taken

place, the court will reevaluate "conditional certification" and determine on a fuller

record whether there is sufficient similarity among the named and opt-in plaintiffs in

the collective action. *Id.* The court may permit the matter to proceed to trial on a

collective basis, or it may revoke conditional certification or divide the collective into

subclasses. *Id.*

In *Hoffmann-La Roche*, the Supreme Court addressed a lower court decision that applied the *Lusardi* two-step approach to an ADEA collective action lawsuit, and it held that providing notice to potential opt-in plaintiffs is an acceptable exercise of a district court's broad case management discretion. 493 U.S. at 173–74; *see Sperling*, 118 F.R.D. at 405–07.

At the outset, the Court acknowledged the "propriety, if not the necessity," for courts to intervene in the notice process for ADEA collective actions. *Hoffmann-La Roche*, 493 U.S. at 170. As the Court explained, Congress's stated policy of permitting age discrimination plaintiffs to pool their resources and vindicate their rights depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*

Critically, the Court explicitly declined to prescribe a uniform standard or process for courts to follow when considering whether to provide notice to potential opt-in plaintiffs. Instead, the Court opted to "confirm the existence of the trial court's discretion, not the details of its exercise." *Id.* In so holding, the Court made abundantly clear that procedures surrounding notice are best left to the discretion of experienced trial court judges. *Id.* at 171–73.

In support of its holding, the Supreme Court invoked trial courts' broad case management authority under the Federal Rules of Civil Procedure. *Id.* at 172–73. Specifically, the Court held that Rule 83, which provides that judges "may regulate [their] practice in any manner consistent with federal law," Fed. R. Civ. P. 83(b), supports trial courts' authority to issue notice in a collective action, *Hoffmann-La Roche*, 493 U.S. at 172–73. As the Court explained, "Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit," and "[t]his authority is well settled, as courts traditionally have exercised *considerable authority to manage their own affairs* so as to achieve the orderly and expeditious disposition of cases." *Hoffmann-La Roche*, 493 U.S. at 172–73 (emphasis added) (internal quotation omitted). The Court further held that the considerable discretion exercised by district courts in this area is reinforced by Rule 16, which provides courts authority to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues[ or] multiple parties." *Id.* at 173; Fed. R. Civ. P. 16(c)(2)(L).

In sum, *Hoffmann-La Roche* clearly held that a district court's decision to "conditionally certify" an ADEA collective action and provide notice is a matter reserved for the district court's broad case management discretion pursuant to Rule 83(b).[1] As such, any effort to cabin this discretion, or to provide a one-size-fits-all model

---

[1] The Supreme Court, in reaching this holding, essentially adopted the Seventh Circuit's position on this issue. In *Woods v. New York Life Insurance*, 686 F.2d 578, 580 (7th Cir. 1982), this Court held that a district court's authority over collective actions,

for district courts to follow in determining whether notice should be provided, contravenes the Supreme Court's mandate.

Since *Hoffmann-La Roche*, trial courts throughout the nation have predominantly opted to follow the *Lusardi* two-step approach to managing collective actions. In fact, up until recently, the two-step approach had been endorsed by every circuit that had considered it. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018);[2] *Myers*, 624 F.3d at 554–55; *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). As the Ninth Circuit explained in *Campbell*, there is "good reason for this consensus"; in the absence of any statutory directive, and especially in light of the Supreme Court's decision in *Hoffmann-La Roche*, "the proper means of managing a collective action—the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed—is largely

_____

including the authority to provide notice, is a managerial responsibility inferred from Rule 83.

[2] In *Campbell*, the Ninth Circuit disagreed with the *Lusardi* approach's test for determining whether plaintiffs are "similarly situated" at the second step, and it provided a modification of that standard. *See* 903 F.3d at 1114–16. But for step one (conditional certification), courts in the Ninth Circuit still generally utilize *Lusardi*'s modest burden of establishing the existence of similarly situated employees and a common policy or plan. *See, e.g., Greene v. Cascadia Healthcare, LLC*, 2024 WL 4494902, at *2–3 (D. Idaho Oct. 15, 2024).

a question of case management, and thus a subject of substantial judicial discretion." 903 F.3d at 1110 (internal citation omitted).

While the *Lusardi* approach has been widely endorsed, courts of appeals have nevertheless generally acknowledged that district courts have discretion to follow (or not follow) *Lusardi*. *See id.*; *Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Myers*, 624 F.3d at 554–55; *Thiessen*, 267 F.3d at 1105. In other words, even where courts of appeals have praised the *Lusardi* approach, district court discretion to manage collective actions is still the law of the land.

The Seventh Circuit's approach to collective action management is no outlier. This Court has acknowledged the predominant two-step approach, *see, e.g., Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011), but, citing *Hoffmann-La Roche*, has held that "[a] district court has wide discretion to manage collective actions," *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). And, in *Bigger*, 947 F.3d at 1049 n.5, this Court clarified that the predominant "two-stage approach" is not required.

Consequently, trial courts within this Circuit retain discretion to divert from the *Lusardi* model if they find that it would be an ineffective case management tool. *See, e.g., Fitzgerald v. Forest River Mfg. LLC*, 2022 WL 558336, at *4 (N.D. Ind. Feb. 23, 2022); *Laverenz v. Pioneer Metal Finishing, LLC*, 2024 WL 3887110, at *9 (E.D. Wis. Aug. 21, 2024). For example, in cases where some discovery has already been completed at the conditional certification stage, courts within this Circuit have in some instances adopted

an "intermediate" approach (sometimes referred to as the "modest plus" standard) that heightens plaintiffs' evidentiary burden. *See Hunter v. WirelessPCS Chi. LLC*, 2022 WL 864533, at *3 (N.D. Ill. Mar. 23, 2022).

By declining to impose upon district courts a one-size-fits-all standard for adjudicating a motion for conditional certification, the Seventh Circuit, like most other circuits, follows the Supreme Court's clear mandate in *Hoffmann-La Roche*. A district court's decision to follow *Lusardi*'s "modest" evidentiary prerequisite for issuing notice—or conversely, a district court's decision to pivot from *Lusardi* as it sees fit—lies squarely within its "considerable authority to manage [its] own affairs." *Hoffmann-La Roche*, 493 U.S. at 172–73 (internal quotation omitted).

## II.    A District Court's Decision to Apply the *Lusardi* Framework Does Not Violate the Law

Notwithstanding *Hoffmann-La Roche*'s clear mandate regarding trial courts' discretion, Eli Lilly argues that a district court's choice to follow the *Lusardi* framework is "indefensible as a matter of law." Such an argument lacks any legal foundation.

As noted, the FLSA and ADEA make no mention of "conditional certification," nor do they provide any guidance as to procedures that must be followed before a court issues notice to employees. Since the Supreme Court decided *Hoffmann-La Roche* in 1989, Congress has updated the FLSA in 1996, 2007, and 2010, and it has never provided any additional guidance on the collective action mechanism. *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1017 & n.5 (6th Cir. 2023) (White, J., dissenting in part)

(citing updates to the FLSA). Given a dearth of statutory guidance, as well as the Supreme Court's explicit preference for trial court discretion in this area, it is counterintuitive to contend that a district court's decision to follow the tried-and-true *Lusardi* approach contravenes the law. This is especially true considering that the Supreme Court in *Hoffmann-La Roche* upheld a lower court decision that, itself, applied the *Lusardi* framework. *See Sperling*, 118 F.R.D. at 405–07. As long as courts, when managing the notice process, take care to respect judicial neutrality and avoid the appearance of soliciting claims, no legal mandate is violated. *Hoffmann-La Roche*, 493 U.S. at 174.

Eli Lilly's attempts to undermine the legality of the *Lusardi* framework miss the mark. Eli Lilly first argues that the *Lusardi* framework's "one-sided procedure," i.e., only considering evidence presented by plaintiffs in deciding whether to issue notice, violates this Circuit's precedent in *Bigger*, 947 F.3d 1043. But Eli Lilly overreads *Bigger*'s explicitly narrow holding.

In *Bigger*, this Court acknowledged that the twin goals of a collective action are "enforcement and efficiency," and that, as a general matter, "it may be efficient to first send notice to a group of people and then weed out those who opt in but are in fact ineligible to join." *Id.* at 1049–50. However, the Court noted a "specific situation" in which overbroad notice would not provide any benefit to a collective action: providing notice to individuals who are bound by arbitration agreements. *Id.* at 1050. To avoid

scenarios in which a court might provide notice to employees who are unambiguously barred from litigating in court, this Court in *Bigger* established an analytical framework for courts to address the existence of arbitration agreements at the conditional certification stage. Namely, this Court held that where a defendant has produced a mutual arbitration agreement and (1) the claimant does not contest it, or (2) the defendant can show, by a preponderance of the evidence, the existence and validity of the arbitration agreement, the district court may not issue notice to that employee. *Id.*

Eli Lilly invokes *Bigger* to argue that defendants must be afforded an opportunity, at the conditional certification stage, to counter a plaintiff's evidentiary support in *all* circumstances. But this Court in *Bigger* explicitly declined to reach such a holding, writing, "[o]ur focus is limited to the scope of a court's discretion in facilitating notice of an FLSA action to *certain employees*," i.e., employees bound by arbitration agreements. *Id.* at 1049 n.5 (emphasis added).

Notwithstanding *Bigger*'s explicitly cabined holding, Eli Lilly argues that *Bigger*'s reasoning should be expanded to mandate that courts consider, as a prerequisite to notice, *any* evidence put forward by a defendant of *"any* demonstrated dissimilarity" in the proposed collective. Eli Lilly Br. at 21. But the existence of an arbitration agreement is *sui generis*; it operates as a quasi-jurisdictional bar to a plaintiff's claim, divorced from the factual merits of that claim under the ADEA or FLSA. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012). Clearly, as this Court noted in *Bigger*,

there is little benefit in providing notice to employees who are unambiguously, categorically barred from proceeding in federal court. But for employees who are not so categorically barred, and for reasons discussed in more detail below, the "modest" evidentiary burden of *Lusardi*'s first step ensures that the court is not, based on a limited record, undermining enforcement of the FLSA or ADEA by delaying notice or cutting out employees who may be eligible to opt in.

Without a legal foothold based on statutory authority, Supreme Court authority, or this Circuit's authority, Eli Lilly attempts to establish that the *Lusardi* approach violates the law because it does not align with "analogous areas of law." Eli Lilly Br. at 22. Namely, Eli Lilly argues that *Lusardi*'s focus on plaintiffs' evidence, deferral of deciding merits-based issues, and "modest" burden differ from the standards employed by courts in deciding certification of a class action under Federal Rule of Civil Procedure 23 and the issuance of a preliminary injunction. These analogies, however, are strained.

For instance, courts have unambiguously held that Rule 23 has no applicability to collective actions. Most notably, in *Genesis Healthcare*, 569 U.S. at 74, the Supreme Court rejected a party's efforts to analogize Rule 23 class actions and collective actions under the FLSA, finding that "Rule 23 actions are fundamentally different from collective actions." Consistent with the Supreme Court's holding, courts of appeals have repeatedly rejected analogies between Rule 23 and collective actions. *See Campbell*, 903

F.3d at 1111–13; *Clark*, 68 F.4th at 1009; *Thiessen*, 267 F.3d at 1105; *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 518–19 (2d Cir. 2020); *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:16 (21st ed. 2024) ("It is error for a court to equate the requirements of § 216(b) with those of Rule 23 in assessing whether named plaintiffs are 'similarly situated' to opt-in plaintiffs under the FLSA.").

Courts reject this analogy for good reason—the language, structure, and legal effect of Rule 23 and § 216(b) bear little resemblance to one another. Rule 23 provides a standard for certifying representative parties to proceed to trial on behalf of all members of a defined class. *See* Fed. R. Civ. P. 23(a)–(b). Accordingly, many of the rules specific to class actions, such as the requirements of adequacy and typicality, have evolved to protect the due process rights of absent class members. *Campbell*, 903 F.3d at 1112; *Scott*, 954 F.3d at 519. Such concerns are simply not present in collective actions, which are *not* representative actions. Plaintiffs in a collective action must affirmatively choose to become parties by opting in, and "similarly situated employees who join a[ collective] action become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Clark*, 68 F.4th at 1009 (internal quotation omitted).

Section 216(b)'s omission of Rule 23's stringent requirements reflects an affirmative congressional choice to not have Rule 23 standards apply to collective actions. *See Campbell*, 903 F.3d at 1113; *Thiessen*, 267 F.3d at 1105. When Congress

amended the FLSA by passing the Portal-to-Portal Act in 1947, it introduced the opt-in requirement for collective actions without incorporating the class action requirements of Rule 23, which first went into effect in 1938. *See Campbell*, 903 F.3d at 1113 & n.16. Nor has Congress relied on Rule 23 during the numerous occasions since 1947 in which it has amended the FLSA. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); *Clark*, 68 F.4th at 1017 (White, J., dissenting in part). This congressional choice to keep the requirements for Rule 23 and collective actions distinct was recognized and reinforced by the Advisory Committee on Rules in amending Rule 23 in 1966, which provided the caveat that "[t]he present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended." Fed. R. Civ. P. 23, advisory committee's note to 1966 amendment. Eli Lilly's attempt to cross the wires between class certification and conditional certification therefore contradicts Supreme Court precedent, circuit court guidance, and congressional intent.[3]

---

[3]    In *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013), this Court wrote that "there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." This reasoning, however, was undermined by the Supreme Court's *Genesis Healthcare* decision, decided just months later, which clarified that Rule 23 class actions and collective actions are "fundamentally different." 569 U.S. at 74. Since *Genesis Healthcare*, courts have overwhelmingly held that the requirements for collective actions are "quite distinct" from Rule 23's requirements, and, in fact, the Second Circuit recently cited *Espenscheid* as the only decision suggesting otherwise. *See Scott*, 954 F.3d at 518–19.

Indeed, courts within this Circuit have found *Espenscheid* difficult to square with the authoritative consensus on this issue. *See, e.g., Ford v. MIJ, Inc.*, 2021 WL 2134570, at *2 (N.D. Ind. May 25, 2021) (acknowledging the "outlier" status of *Espenscheid*); *Lee v.*

Eli Lilly's attempt to conflate class certification and conditional certification also makes little sense in light of the starkly different legal standards that apply to each process. Because § 216(b) omits the class certification requirements of Rule 23, collective actions "necessarily impose a lesser burden" than class actions. *Campbell*, 903 F.3d at 1112. As several other circuits have noted, collective actions impose a lower burden in some sense than Rules 20 and 42, which provide the "relatively loose" requirements for permissive joinder and consolidation at trial. *See id.*; *O'Brien*, 575 F.3d at 584–85; *Grayson*, 79 F.3d at 1096; *Scott*, 954 F.3d at 520. Unlike Rules 20 and 42, the FLSA and ADEA do not grant courts discretion to join or consolidate claims, but rather grant a right for similarly situated employees to proceed collectively. *See Campbell*, 903 F.3d at 1112; *Scott*, 954 F.3d at 520. Moreover, Rule 20 requires plaintiffs to assert a right to relief "arising out of the same transaction[ or] occurrence," Fed. R. Civ. P. 20, a provision with no analog in the FLSA or ADEA, *Campbell*, 903 F.3d at 1112; *Scott*, 954 F.3d at 520. Given the entirely different legal standards in certifying a class action under Rule 23 and permitting a collective action to proceed, Eli Lilly's attempts to conflate conditional certification and class certification are misguided.

---

*Children's Place Retail Stores, Inc.*, 2014 WL 5100608, at *5 (N.D. Ill. Oct. 8, 2014) (finding that *Espenscheid*, while potentially relevant at step two of the collective action process, bears no relevance to conditional certification); *Reed v. Methodist Health Servs. Corp.*, 2021 WL 1082010, at *8 (C.D. Ill. Mar. 1, 2021) (referring to *Espenscheid*'s discussion of this issue as "dicta").

Furthermore, conflating Rule 23 and collective actions is *particularly* inapposite at *Lusardi* step one, i.e., the "conditional certification" stage. As the Sixth Circuit noted in *Clark*, "conditional certification" is a misleading term, as a court's decision to grant conditional certification "has zero effect on the character of the underlying suit." 68 F.4th at 1009. The Supreme Court has been clear on this point, holding in *Genesis Healthcare* that the "sole consequence of 'conditional certification'" is sending notice to employees, and that this exercise of a district court's case management discretion "does not produce a class with an independent legal status, or join additional parties to the action." 569 U.S. at 75. This Court affirmed this conclusion in *New Albertsons*, acknowledging that conditional certification "does not adjudicate any party's rights." 2021 WL 4028428, at *2. Thus, even if Rule 23 and collective actions were analogous, Rule 23's class certification standard would bear little relevance to a court's decision to provide notice at *Lusardi* step one.

At bottom, the fact that plaintiffs have separate burdens when seeking class certification under Rule 23 and conditional certification under the FLSA or ADEA is eminently reasonable. Granting "conditional certification," unlike granting class certification, does not change the character of the case; the purpose of this step is to provide timely and efficient notice to those who may be similarly situated, with the court opting to more thoroughly evaluate the similarities between opt-in plaintiffs and named plaintiffs with the benefit of a fuller record and these parties actually being

before the court. Because providing notice is of limited legal consequence, and because early notice is often critical in facilitating the remedial goals of the FLSA and the ADEA, *see Hoffmann-La Roche*, 493 U.S. at 170, it is sensible that courts, in their discretion, often hold plaintiffs to a "modest" evidentiary burden at the conditional certification stage.

For these reasons, this Court should decline to follow the approach adopted by the Fifth Circuit in *Swales*, 985 F.3d at 433, which held that court-approved notice may only be issued to employees who are "*actually* similar to the named plaintiffs," and only after the court "rigorously scrutinize[s]" evidence following preliminary discovery. (emphasis added). As the Sixth Circuit noted in *Clark*, the Fifth Circuit was overly concerned with ensuring *certainty* of the similar situated status of employees before authorizing court notice. 68 F.4th at 1009–10. This concern appears to stem from a misunderstanding of *Hoffmann-La Roche*, which, as the Sixth Circuit acknowledged, likely referenced "potential plaintiffs" to describe "employees who—based on a lesser showing of likelihood—*might* be similarly situated to the original plaintiffs, and who thus might be eligible to join the suit." *Id.* at 1010. Indeed, *Hoffmann-La Roche* affirmed a district court's issuance of notice after the district court had expressly held that "notice to absent class members need not await a conclusive finding of 'similar situations.'" *Sperling*, 118 F.R.D. at 406. This understanding also better aligns with the language in *Hoffmann-La Roche* regarding the importance of "*timely* notice" and *early* court

intervention in vindicating the remedial purposes of the FLSA and ADEA, *see* 493

U.S. at 170–71 (emphasis added), a consideration that the Fifth Circuit ignored entirely.

As noted above, conditional certification merely provides notice—it does not

create a class. At this stage, many courts use the *Lusardi* approach to facilitate early

intervention in accordance with the Supreme Court's reasoning in *Hoffmann-La Roche* so

that potential plaintiffs' claims do not expire and to defer delving into fact-bound

decisions until a fuller record has developed. The Fifth Circuit's quasi-Rule 23 "rigorous

scrutiny" standard delays this process, risks weeding out potentially proper plaintiffs

due to incomplete evidence, and undermines enforcement of the FLSA and ADEA.

Eli Lilly's comparison between granting conditional certification and issuing a

preliminary injunction is similarly strained. As Eli Lilly notes, this analogy was made by

the Sixth Circuit in *Clark*, which diverted from *Hoffmann-La Roche*'s mandate of trial

court discretion and held that plaintiffs should be required to show a "strong

likelihood" that there are similarly situated employees before the court orders notice. 68

F.4th at 1011.

A court's decision to grant a preliminary injunction, however, is hardly

comparable to the decision to grant conditional certification. This Court has

acknowledged that "[a] preliminary injunction is an extraordinary and drastic remedy."

*Goodman v. Ill. Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 437 (7th Cir. 2005) (internal

quotation omitted); *see also Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) ("A

preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." (internal quotation omitted)). Indeed, the issuance of a preliminary injunction has been described as "the most striking remedy wielded by contemporary courts," as it can "block the enforcement of legislation, place a candidate on the ballot, forbid strikes, prevent mergers, or enforce a school desegregation plan," all without the benefit of a full hearing on the merits. *See* John Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv. L. Rev. 525, 525 (1978).

Comparing conditional certification to the extraordinary remedy of a preliminary injunction strains credulity. Merely providing notice of a lawsuit is a far cry from issuing a preliminary injunction, which can require mandatory actions from parties for an indefinite period of time. *See* Kevin J. Lynch, *Preliminary Injunctions in Public Law: The Merits*, 60 Hous. L. Rev. 1067, 1070–74 (2023) (noting the lasting effects of preliminary injunctions, including the avoidance of irreparable harm, during litigation). Ultimately, adopting the *Clark* "strong likelihood" standard, like adopting the *Swales* standard, would result in courts prematurely weighing evidence and making critical factual determinations at a stage where the limited evidence presented by the parties may not accurately reflect the weight of evidence that fuller discovery—and the addition of opt-in plaintiffs as parties—will produce.

But regardless of the merits of the *Lusardi* approach, the Fifth Circuit's approach in *Swales*, or the Sixth Circuit's approach in *Clark*, it is worth reiterating that *any* attempt

to handcuff a district court to a one-size-fits-all model diverges from *Hoffmann-La Roche*. In this respect, the Fifth Circuit's consternation over the "imprecision of § 216(b)" is misplaced. *Swales*, 985 F.3d at 433. As *Hoffmann-La Roche* indicates, the wide discretion afforded to district courts in the management of collective actions is a feature, not a bug, that allows trial courts to utilize their expertise to prudently oversee collective actions based on the unique circumstances of each case. *See* 493 U.S. at 172–73. In bringing this appeal, Eli Lilly is essentially asking this Court to take an area of law that has been explicitly reserved for trial court discretion under controlling Supreme Court precedent, and create a new rule out of whole cloth, untethered from a statutory mandate or controlling precedent to follow. This Court should decline such an invitation. Until and unless the Supreme Court revisits *Hoffmann-La Roche*, or until and unless Congress revisits § 216(b), trial court discretion is the law.

## III.    The *Lusardi* Approach Is a Reasonable Method of Managing a Collective Action

Though generally not mandated to do so, trial courts throughout the nation have widely adopted the tried-and-true *Lusardi* two-step approach to managing collective actions. The predominance of this framework is hardly the result of happenstance; rather, "the framework reflects years of dialogue among district and appellate courts leading up to *Hoffmann-La Roche* and an embrace of the approach following that decision." *Clark*, 68 F.4th at 1016 (White, J., dissenting in part). As outlined below, there

are several persuasive reasons that courts choose to follow *Lusardi*, including applying

the "modest" burden on plaintiffs at the conditional certification step.

A. **The *Lusardi* framework ensures the preservation of claims, sensibly defers making critical fact-bound determinations that could cut out potential plaintiffs until a later stage in the litigation on a fuller record, and promotes judicial economy.**

First, as the Supreme Court acknowledged in *Hoffmann-La Roche*, timely notice

and early intervention are essential to enforcement of the ADEA and the FLSA, which,

unlike Rule 23, are remedial statutes. 493 U.S. at 170. Early notice is especially critical in

the context of FLSA actions, since a plaintiff's filing of an FLSA collective action does

not toll the Act's statute of limitations for similarly situated employees who later opt in.

*See* 29 U.S.C. § 256(b). Consequently, a district court's determination about the extent of

discovery required prior to conditional certification will ultimately determine how

many claims expire before ever receiving notice. As Eli Lilly points out, this concern is

less present in ADEA collective actions within the Seventh Circuit, as this Court has

held that "piggybacking" is permitted for ADEA opt-in plaintiffs, so long as there is a

timely filed EEOC charge that alleges class-wide discrimination. *See Anderson v.*

*Montgomery Ward & Co.*, 852 F.2d 1008, 1016 (7th Cir. 1988). But the concern of claims

expiring is critical in the FLSA context. Because the ADEA and the FLSA have identical

collective action procedures (and because it would be contrary to congressional intent to

create two separate standards between the statutes), the Court cannot simply ignore the

impact a decision in this case would have on the FLSA.

Second, the "modest" burden for plaintiffs at conditional certification is essential in enforcing the ADEA and FLSA because it lowers the risk of improperly excluding similarly situated employees. As the Sixth Circuit acknowledged in *Clark* when diverging from the Fifth Circuit's standard, it is difficult for a district court to "conclusively make 'similarly situated' determinations as to employees who are in no way present in the case." 68 F.4th at 1010. The court explained that determinations regarding whether employees are "similarly situated" tend to be highly fact-bound, "meaning they depend on the specific facts pertaining to those employees." *Id.* Furthermore, the employees themselves are likely to have evidence of similarity (or dissimilarity) that may conflict with an employer's records. *Id.* Therefore, weighing competing evidence from plaintiffs and defendants is akin to making a decision in a "he-said-she-said situation," which is imprudent at the notice stage of litigation where the record is extremely limited and may not accurately reflect the evidence as a whole. *See Heath*, 215 F. Supp. 3d at 852; *Escobar v. Whiteside Const. Corp.*, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008).

Accordingly, courts presiding over ADEA claims—including the district court in *Sperling*, which was affirmed by the Supreme Court—apply a lenient standard at step one, since making "similarly situated" determinations and cutting individuals out of the proposed collective based on limited information risks improper exclusion. *See Sperling*, 118 F.R.D. at 406 ("[T]o allow notice before the 'similarly situated' issue is decided

would insure that all possible class members who are interested are present, and thereby assure that the full 'similarly situated' decision is informed, efficiently reached, and conclusive."); *Heath*, 215 F. Supp. 3d at 851 ("[A] lenient standard is used at the notice-stage step because a court does not have much evidence at that point in the proceedings—just the pleadings and any declarations submitted."); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 894–95 (N.D. Iowa 2008); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004). These courts have noted that the lenient standard at step one is more equitable to potential plaintiffs and facilitates the remedial purpose of the ADEA. *See Sperling*, 118 F.R.D. at 406; *Behr v. AADG, Inc.*, 136 F. Supp. 3d 1012, 1018 (N.D. Iowa 2015); *Bouaphakeo*, 564 F. Supp. 2d at 894–95.

Rigorously screening potential plaintiffs to make "similarly situated" determinations on a limited record is particularly misguided in an ADEA action. At the outset, it is worth noting that trial courts must exercise caution in making "similarly situated" determinations when the underlying claims are discrimination—even at the decertification stage, with a more complete factual record. ADEA plaintiffs alleging a pattern or practice of discrimination must first establish that unlawful discrimination had been a regular procedure or policy followed by an employer, and then individual relief may be granted upon a finding that each individual plaintiff was a victim of the discriminatory practice. *Thiessen*, 267 F.3d at 1106 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360–61 (1977)). As the Tenth Circuit in *Thiessen* explained, if a trial

court makes findings on whether a discriminatory policy did, in fact, impact the employment decisions affecting individual plaintiffs under the guise of determining whether plaintiffs are "similarly situated," it essentially "deprive[s] plaintiffs of their right to have the issues decided by a jury, or to at least have the court determine, under summary judgment standards, whether there was sufficient evidence to send the issue to the jury." *Id.* at 1106–07. Making these individualized merits determinations is *especially* misplaced at the conditional certification stage, where potential opt-in plaintiffs with individualized experiences of potential discrimination are not provided the opportunity to make their cases or present their own evidence.

In any event, engaging in these individualized, merits-overlapping inquiries is hardly necessary to properly ascertain the scope of a collective in an ADEA action. The ADEA is an employment discrimination cause of action, and a successful plaintiff must, as a preliminary matter, establish that an "adverse employment action" took place. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). Therefore, where a plaintiff alleges a companywide policy or practice of age discrimination, ascertaining the scope of potential plaintiffs who should receive notice does not require significant discovery. Definitionally, only employees over the age of 40 who were subject to an adverse employment action, like the denial of a promotion, could be potential plaintiffs. Indeed, courts proceeding over ADEA claims have found that defining the collective of potential plaintiffs to receive notice by referencing a specific adverse employment action

effectively identifies "similarly situated" employees at step one and ameliorates the risk of overbroad notice. *See Donofrio v. IKEA US Retail, LLC*, 2019 WL 9698597, at *5 (E.D. Pa. May 15, 2019) (finding sufficiently narrow a proposed class of "only current IKEA employees who were denied promotions"); *Hyman v. First Union Corp.*, 982 F. Supp. 1, 4 (D.D.C. 1997) ("Weighing very strongly in favor of a collective action is the fact that the challenged employment practice, termination, is the same for each of the members.").

As courts have generally held at the conditional certification stage, individually scrutinizing the discrimination claims of potential plaintiffs any further would require merits-based determinations that are better suited for later stages in the litigation. *See Heath*, 215 F. Supp. 3d at 854–55; *Behr*, 136 F. Supp. 3d at 1020; *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995) (finding that the defendant's arguments that a policy did not disproportionately affect older workers or have a discriminatory effect were "directed to the merits of the plaintiffs' claim"); *Donofrio*, 2019 WL 9698597, at *4. In sum, the "modest" burden that Eli Lilly decries ensures that courts are not excluding potential plaintiffs based on an evidentiary record that may be lopsided or incomplete.

And third, the early notice facilitated by the *Lusardi* framework confers the benefits of judicial economy explicitly cited by the Supreme Court in *Hoffmann-La Roche*: it "enables district courts to 'ascertain[] the contours of the action at the outset'; 'avoid[] a multiplicity of duplicative suits'; set deadlines for opt-in consents and other decisions 'to expedite disposition of the action'; and prevent 'abuse' of the collective mechanism

by plaintiffs, such as through 'misleading' communications." *Clark*, 68 F.4th at 1017

(White, J., dissenting in part) (quoting *Hoffmann-La Roche*, 493 U.S. at 171–72). Early

court intervention also prevents abuse of the collective mechanism by *defendants*, who

may, for example, attempt to pick off potential plaintiffs through settlement offers that

are misleading. *See, e.g.*, *Weckesser v. Knight Enters. S.E., LLC*, 392 F. Supp. 3d 631, 638

(D.S.C. 2019) (finding that a defendant's communications to potential FLSA claimants,

which included settlement offers, "[were] abusive in that [they] threaten[ed] the proper

functioning of the litigation"); *Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D.

Cal. 2010) (noting instance in which a defendant obtained opt-out forms from its

employees through coercive one-on-one meetings).

**B.**    **Eli Lilly's speculative arguments against the *Lusardi* framework lack support.**

Notwithstanding the Supreme Court's directive in *Hoffmann-La Roche* that

"skilled trial judges" should be entrusted due to their "significant insights . . .

[regarding] the wisdom and necessity for early judicial intervention in the management

of litigation," 493 U.S. at 171–72, Eli Lilly contends that trial courts who choose to follow

the most widely adopted approach for managing collective actions are wrong. In so

arguing, Eli Lilly relies on unsupported speculations that in effect aim to undermine

valuable regulations that protect workers.

For instance, Eli Lilly first argues that the *Lusardi* approach has resulted in an

epidemic of overinclusive notice, which in turn wastes judicial resources managing

cases that are ultimately decertified. At the outset, it is worth noting that this Court has already rejected the same argument about the "irreversible harm" of conditional certification; in *New Albertsons*, this Court opined that the burdens on defendants whose employees are provided notice are "not substantially different from discovery burdens or other incidental burdens of civil litigation." 2021 WL 4028428, at *2.

And, in any event, the data simply does not bear out Eli Lilly's theoretical arguments regarding the perils of the *Lusardi* approach. As Judge White noted in her separate opinion in *Clark*, plaintiffs had an 81% success rate in 2021 bringing conditional certification motions under the FLSA; this rate seems reasonable considering the 72% success rate for certification of employment-discrimination class actions under Rule 23 during the same year. 68 F.4th at 1018 (White, J., dissenting in part) (citing Seyfarth, 18th Annual Workplace Class Action Litigation Report 9–10, 13, 43 (2022), https://www.content.seyfarth.com/publications/Workplace-Class-Action-Report-2022/).[4] This success rate is actually lower when considering that courts frequently grant these motions in part and issue notice based on narrower parameters than those proposed by plaintiffs. *Id.*

---

[4]     Plaintiff references FLSA cases, rather than ADEA cases, in this dataset because there is a much larger sample of FLSA cases from which to draw conclusions. This dataset contains only six federal decisions on ADEA conditional certification during 2021—plaintiffs were successful in each instance. *See* Seyfarth, *supra*, at 71–74. In contrast, there were 279 decisions on FLSA conditional certification issued during the same period. *See id.* at 9.

Nor does the data bear out Eli Lilly's argument that decertification at step two is "incredibly common." Eli Lilly Br. at 32. Instead, data from 2021 indicates that a small fraction of cases make it to the decertification stage, and that decertification motions have evenly split results. *See* Seyfarth, *supra*, at 9 (noting that 10 FLSA decertification motions were granted in 2021, while 9 decertification motions were denied, and that federal courts ruled on 279 FLSA motions for conditional certification during the same period).[5]

Rather than portraying a crisis of inefficiency and waste, the data indicates that the predominant *Lusardi* approach is operating as intended. The conditional certification stage, though lenient, is not toothless—plaintiffs still lose on these motions (in the FLSA context) about one-fifth of the time. *See* Seyfarth, *supra*, at 9–10. This is evident within the Seventh Circuit, where district courts regularly deny motions for conditional certification where plaintiffs fail to show that there exist similarly situated employees or a common policy or plan that violates the law. *See, e.g.*, *Williams*, 223 F. Supp. 3d at 785; *Tom v. Generac Power Sys., Inc.*, 2018 WL 3696607, at *6 (E.D. Wis. Aug. 3, 2018); *Walker v. Health & Hosp. Corp. of Marion Cnty.*, 2016 WL 7179370, at *12 (S.D. Ind.

---

[5]     As the Seyfarth report indicates, the data from 2021 on FLSA conditional certification and decertification is consistent with data from prior years. *See* Seyfarth, *supra*, at 11 (noting that, in prior years plaintiffs had succeeded on conditional certification motions generally about 80% of the time, whereas defendants had succeeded on decertification motions generally about 50-60% of the time).

Dec. 9, 2016); *Placide v. Roadrunner Transp. Servs. Inc.*, 2022 WL 3682912, at *3 (E.D. Wis. Aug. 25, 2022).

For those cases that make it past *Lusardi* step one, settlement before the close of discovery is common.[6] But in cases where defendants decide to mount a challenge to certification at step two, the success rate is about 50%. This evenhanded rate indicates that (1) conditional certification orders are often reaffirmed (demonstrating that Eli Lilly's claim of an epidemic of overinclusive notice is overstated), but that (2) employers still have meaningful redress in the event that the preliminary findings at the conditional certification stage ultimately are not borne out by a fuller record. Therefore, this Court should not be swayed by the apparition of a crisis of overinclusive notice, which Eli Lilly bases on cherrypicked cases and a Fifth Circuit opinion from 1995. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). The reality is that the *Lusardi* method is largely facilitating resolutions and enforcement of important remedial statutes, while providing employers with two meaningful bites at the apple to prevent certification.

---

[6] As Judge White cautioned, the fact that a large amount of collective action lawsuits settle is hardly cause for concern. For one thing, the Court should be wary of mistaking remedial success for a problem, especially considering that Congress has not opted to change the collective action mechanism since *Hoffmann-La Roche*. *See Clark*, 68 F.4th at 1017 (White, J., dissenting in part). "Additionally, it is not inherently significant or concerning that most FLSA cases settle after notification; litigation in general commonly settles between the early and final stages of discovery." *Id.* at 1018 (White, J., dissenting in part).

Eli Lilly's second argument, that *Lusardi* creates improper settlement pressure, is similarly underdeveloped and overstated. Like its prior argument, Eli Lilly's claim contains no data to support the notion that *Lusardi* is facilitating an unmitigated settlement crisis for employers, relying instead on speculative fears of "letting plaintiffs bring the pressure of hordes of employees to bear through initial stages of litigation." Eli Lilly Br. at 36. Again, the data hardly paints such a dramatic picture. As Judge White noted in *Clark*, FLSA filings declined each year from 2016 to 2021, which does not indicate that plaintiffs are abusing the collective action process to unduly put the squeeze on their employers. *See* 68 F.4th at 1018 (White, J., dissenting in part) (citing Seyfarth, *supra*, at 9–10).[7]

Plus, it is worth reiterating that "conditional certification" merely provides notice to employees, a decision that does not affect the rights of the parties and is subject to revision or reversal at later stages. *See id.* at 1018–19 (White, J., dissenting in part). And, the roughly 50-50 success rate of decertification motions—which does not include in the

---

[7]     Eli Lilly's complaints about undue settlement pressure that employers face in ADEA and FLSA actions is particularly ironic considering that the prevalence of arbitration agreements in the employment context (which often include class and collective action waivers) has resulted in chronic *under*enforcement of statutes that protect employees. *See* Cynthia Estlund, *The Black Hole of Mandatory Arbitration*, 96 N.C. L. Rev. 679, 708 (2018) ("[T]he data reviewed . . . show that [mandatory arbitration agreements] function as a virtual death knell for most employment claims . . . ."); Katherine V. W. Stone, *Procedure, Substance, and Power: Collective Litigation and Arbitration Under the Labor Law*, 61 UCLA L. Rev. Discourse 164, 166 (2013) ("The law of arbitration is not only displacing but is potentially eliminating the ability of . . . employees to bring collective actions in any tribunal.").

sample plaintiffs' strongest cases where the discovery process yielded evidence that resulted in settlement—provides no indication that courts are regularly issuing overbroad notice and forcing meritless lawsuits to settle. Rather, the fact that cases often settle after *Lusardi*'s step one is largely the result of the discovery process facilitating settlement—as is often the case in complex litigation.

Plus, as Judge White noted in *Clark*, the risk of "in-terrorem settlements" is low in the FLSA context, "because defendants are very likely to have superior information about pay and hours compared with plaintiffs and so are more likely prepared to make informed settlement decisions." *Id.* at 1019 (White, J., dissenting in part). Moreover, Eli Lilly critically ignores that courts in this Circuit frequently require that stipulated settlements in an FLSA case must be approved by the court (or the Department of Labor), which must consider whether the agreement "reflects a reasonable compromise of disputed issues." *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 994–95 (N.D. Ind. 2010) (internal quotation omitted); *Rambo v. Glob. Diversified, Inc.*, 2021 WL 262556, at *1 (C.D. Ill. Jan. 26, 2021); *Drummond v. Am. Fam. Mut. Ins., S.I.*, 2024 WL 3581649, at *1 (W.D. Wis. July 30, 2024). Simply put, Eli Lilly's speculation that the collective action mechanism is being abused to coerce improper settlements lacks any foundation.

Finally, Eli Lilly's fear that providing notice "undermines the appearance of judicial neutrality" similarly lacks support. In *Hoffmann-La Roche*, the Supreme Court cautioned courts to "be scrupulous to respect judicial neutrality" when issuing notice.

493 U.S. at 174. In context, though, the Supreme Court was providing guidance on the *content* of notice provided by courts by cautioning that court-provided notice should "avoid even the appearance of judicial endorsement of the merits of the action." *Id.* To that end, courts follow the Supreme Court's guidance in *Hoffmann-La Roche* by issuing notice that defines a collective and does not endorse the merits, include hypothetical claims that others may bring, or encourage plaintiffs to join. *See Clark*, 68 F.4th at 1019 (White, J., dissenting in part). In fact, the Supreme Court in *Hoffmann-La Roche* adopted quite the opposite position as Eli Lilly, finding that court involvement in the notice process *prevents* abuse of the collective action structure. 493 U.S. at 171. Early court intervention prevents *both parties* from providing potential claimants with misleading notice and undermining the efficacy of a collective action lawsuit.

*     *     *

At bottom, the *Lusardi* two-step approach strikes a balance that many courts have found beneficial. At step one, this approach ensures that similarly situated employees are not improperly excluded from receiving notice, which furthers the remedial purposes of the FLSA and the ADEA. Because the record at this stage is limited, and because conditional certification does not change the nature of the case in any event, courts reasonably defer weighing evidence and err on the side of overbroad notice. Indeed, the Supreme Court appeared to foresee and even endorse potentially overbroad notice at step one by referring to notice being sent to "*potential* plaintiffs," *Hoffmann-La*

*Roche*, 493 U.S. at 169 (emphasis added), and by affirming a district court decision that found that "notice to absent class members need not await a conclusive finding of 'similar situations,'" *Sperling*, 118 F.R.D. at 406.

Later, with the benefit of a fuller record that facilitates more accurate decision-making, courts determine whether the opt-in plaintiffs are, in fact, similarly situated. At this step, plaintiffs still bear the burden of showing that members of the collective action are similarly situated, and the burden they face is higher. *See Smith v. Pro. Transp. Inc.*, 2018 WL 573098, at *8 (S.D. Ind. Jan. 26, 2018); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012); *Morgan*, 551 F.3d at 1261.

Furthermore, even if the *Lusardi* approach is suboptimal in certain circumstances, to hold that *Lusardi* is categorically unlawful would be to throw the baby out with the bathwater. The Supreme Court explicitly declined to mandate a one-size-fits-all process for managing collective actions, leaving decisions regarding case management, including notice, to the sound discretion of district courts—the experts on managing cases. Courts in this circuit are free to modify the *Lusardi* approach as they see fit, or to adopt a different approach entirely. Rather than handcuff trial courts to a mandated approach, this Court should heed Judge White's warning that such a holding would "thwart district courts in executing key case-management functions, such as 'ascertain[ing] the contours of the action at the outset' and 'avoid[ing] a multiplicity of

duplicative suits.'" *See Clark*, 68 F.4th at 1020 (White, J., dissenting in part) (quoting

*Hoffmann-La Roche*, 493 U.S. at 171–72).

**IV.    The District Court Did Not Abuse Its Discretion in Adopting the *Lusardi* Approach in This Instance**

This case is paradigmatic of the benefits of the *Lusardi* approach. Plaintiff

Richards alleges that Eli Lilly engaged in systematic age discrimination, facilitated by

companywide policies that prioritized promoting young professionals at the expense of

older, more experienced employees. In support of her motion for conditional

certification, she provided an affidavit from a longtime manager at Eli Lilly who

directly witnessed the implementation of these policies from the top down. *See* A.31–35.

She also provided affidavits from Eli Lilly employees throughout the country who faced

similar experiences of discrimination in promotion, indicating that these top-down

policies were implemented throughout the company. A.37–47.

Because Richards alleges age discrimination in *promotions* specifically, this is a

case where the scope of "similarly situated" employees is readily ascertainable. The

"potential plaintiffs" in this action definitionally can only include employees over the

age of 40 who were denied a promotion for which they were qualified during the

relevant time period. And, this already narrow group of employees has been further

pared down by the parties' stipulation that notice shall only be provided to employees

within Eli Lilly's sales organization and brand marketing organization. ECF No. 135 at

1–2. Indeed, the focus on these specific organizations largely moots Eli Lilly's concern

about a proposed collective "sweep[ing] in thousands of Lilly employees across geographies, departments, business units, positions, and supervisors." Eli Lilly Br. at 12.

Of course, ascertaining the proper scope of notice at the conditional certification stage sometimes may present practical difficulties. This is precisely the issue that the Fifth Circuit faced in *Swales*; the "similarly situated" inquiry in the FLSA context in that case was complicated by the fact that potential opt-ins had stark differences in their contracts with the defendant, the amount of control they exerted over their work, and their compensation arrangements. 985 F.3d at 442–43. Due to the "demonstrably different work experiences" of the potential plaintiffs, the Fifth Circuit found it difficult to determine without discovery whether the "economic-realities test," which asks how much control the employer had over its workers, could be applied on a collective basis. *Id.* at 442. Therefore, the court concluded that *Lusardi* was a bad fit, and that a heightened standard would be preferable.

But discarding *Lusardi* would be misguided here. As noted above, the fact that Richards's claims are limited to discrimination in promotions means that ascertaining the proper scope of the collective for conditional certification is far less complicated. Defining the class of opt-in plaintiffs to receive notice by referencing the same adverse employment action effectively ensures that only "similarly situated" employees will receive notice. *See Donofrio*, 2019 WL 9698597, at *5; *Hyman*, 982 F. Supp. at 4; *Andreana v. Va. Beach City Pub. Sch.*, 2018 WL 2144151, at *3 (E.D. Va. May 9, 2018). While

individualized differences in plaintiffs' specific work duties and arrangements may sometimes be salient in FLSA actions (like *Swales*), these differences have little relevance here, where the defendant adopted companywide promotion preferences for younger, less experienced employees.

Plaintiff further acknowledges that, at the conditional certification stage, overinclusive notice is a possibility. This is especially true in the context of litigating age discrimination, a highly fact-bound claim that will invariably require reviewing the circumstances of each individual older employee who was denied a promotion during the relevant period. But requiring the court to weigh evidence, make merits rulings, or apply a heightened evidentiary standard at the conditional certification stage would essentially be asking the court to prejudge the ADEA claims of potential opt-in plaintiffs who are not before the court, without the benefit of those plaintiffs being able to provide evidence and tell their own sides of the story. Therefore, it is sensible to defer these critical, merits-overlapping factual decisions to a later stage of the litigation on a fuller record.

Furthermore, even if the Court decides to apply a heightened evidentiary standard, the district court's grant of conditional certification should still be affirmed. This is because Eli Lilly's evidence submitted in response to Richards's motion for conditional certification, even if considered at this stage, hardly moves the needle. In

fact, the District Court below, though not required to do so, *did* review Eli Lilly's evidentiary showing and still granted conditional certification.

For instance, the District Court acknowledged that Eli Lilly provided as evidence a declaration by a senior vice president, an internal website page describing job paths and job levels, an excerpt of an April 2017 "People Strategy" presentation referenced in the complaint, and a corresponding "Pre-Read" distributed in advance of the meeting. *See* RSA.11 (summarizing evidence). As the District Court noted, Eli Lilly appeared to be presenting this evidence in support of an argument that the 2017 Early Career Professionals initiative "could not have served as the common plan, since it was focused on hiring and advancement for entry-level positions, not manager-level positions like Richards', and had its last hiring goal set in fiscal year 2020." *Id.* (internal record cites omitted). The District Court found this argument unavailing, since Richards did *not* argue that the Early Career Professionals initiative is the common or single plan in promotions; rather, Richards pointed to this initiative as one element of Eli Lilly's overarching and nationwide plan to hire *and* promote younger employees over more qualified older employees. RSA.11–12.

The District Court was also not persuaded by Eli Lilly's attempt to establish the complexity of the company's organizational structure and the variance in discretionary policies used to evaluate employees for promotion. RSA.13. Richards's claim, as supported by the affidavit from Mr. Sweeney, is that there was a companywide policy

of promoting younger, less qualified employees over older, more qualified employees; the collective is bound by this common policy, regardless of individual job functions and the hiring criteria of the sought-after positions. *Id.* And, the fact that the affiants supporting Richards's motion had differing roles and geographic locations *supports* her allegation that there is an overarching plan that "thread[s] together instances of age bias in promotion." RSA.13.

Eli Lilly's attempts to poke holes in the affidavits provided by Richards are similarly uncompelling. For instance, Eli Lilly provided a self-serving affidavit from James Florence, who claims that he did not apply Early Career Professional considerations when denying Richards a promotion. A.90. To accept this testimony as true, giving it greater weight than Richards's own affidavit, would essentially be reaching a he-said-she-said factual conclusion that prejudges Richards's ADEA claim on an extremely limited record. Eli Lilly also provided the testimony of an employee who claims that Mr. Oluoch never applied for an open job posting from February 2022 through the present. A.94. But, as Mr. Oluoch explained in his affidavit, employees in his department did not have to submit formal applications to be considered for promotion; instead, all team members were considered for each year for approximately five available promotion slots. A.42. Plus, as the District Court noted, even if individual affiants lacked adverse employment actions that occurred within the time period covered by the definition of the collective, their testimony could still be competent

evidence that Eli Lilly had a common policy or plan involving age discrimination. RSA.7.

Accordingly, even if this Court decides that a heightened evidentiary standard for conditional certification is warranted, affirmance is still proper. The District Court below reviewed Eli Lilly's evidence and concluded that it did not effectively counter Richards's evidentiary showing. The evidence provided by Richards—which includes testimony from a current manager of Eli Lilly who observed, first-hand, senior leadership discriminating against older employees up for promotions, as well as executives directing and incentivizing that discrimination—plainly satisfies a heightened standard for issuing notice.

## CONCLUSION

Per the Supreme Court's decision in *Hoffmann-La Roche*, the District Court acted well within its broad discretion in choosing to adopt the predominant *Lusardi* framework. This Court should decline Eli Lilly's invitation to leapfrog the Supreme Court and mandate a uniform standard for courts to apply before issuing notice.

Dated: November 27, 2024        Respectfully submitted,

/s/ Harold Lichten
Harold Lichten
Thomas Fowler
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
tfowler@llrlaw.com

Jeffrey A. Macey
**MACEY SWANSON LLP**
429 N. Pennsylvania St., Suite 204
Indianapolis, IN 46204
(317) 637-2345
jmacey@MaceyLaw.com

Counsel for Plaintiff-Appellee

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g), AND CR 32(c)**

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c), I hereby certify that this brief contains 13,976 words, excluding the parts of the brief exempted by Rule 32(f), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, version Windows 11, in 12-point size Palatino Linotype font, 12-point for footnotes.

Dated: November 27, 2024

/s/ Harold Lichten
Harold Lichten

Counsel for Plaintiff-Appellee

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 27, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: November 27, 2024

/s/ Harold Lichten
Harold Lichten

Counsel for Plaintiff-Appellee