No. 24-2574

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

MONICA RICHARDS, individually and on behalf of all other
similarly situated individuals

*Plaintiff-Appellee*,

v.

ELI LILLY & COMPANY; LILLY USA, LLC,

*Defendants-Appellants.*

---

**Appeal from the United States District Court for the
Southern District of Indiana, No. 1:23-cv-242
Hon. Tanya Walton Pratt, United States District Judge**

---

**REPLY BRIEF FOR DEFENDANTS-APPELLANTS**

---

Jonathan M. Linas
E. Michael Rossman
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
jlinas@jonesday.com
emrossman@jonesday.com

Yaakov M. Roth
  *Counsel of Record*
Christopher Pagliarella
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
yroth@jonesday.com

James R. Saywell
JONES DAY
901 Lakeside Ave. East
Cleveland, Ohio 44114
(216) 586-3939
jsaywell@jonesday.com

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 4

I.     THIS COURT SHOULD ADOPT A LEGAL STANDARD. ........................................ 4

     A.     Legal Standards Are Not Matters of Discretion. ........................... 5

     B.     *Hoffmann-La Roche* Does Not Mandate Unbridled Discretion. ..................... 7

     C.     The District Court Did Not Believe It Had Unbridled Discretion. ............ 10

II.    THIS COURT SHOULD REJECT THE *LUSARDI* STANDARD. ............................ 12

     A.     *Lusardi* Is Indefensible as a Matter of Law. .............................. 12

     B.     *Lusardi* Is Indefensible as a Matter of Policy. ............................. 18

III.   THIS COURT SHOULD VACATE AND REMAND TO APPLY THE CORRECT STANDARD. ................................................................................................ 23

CONCLUSION ................................................................................................ 24

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Atty. Registration & Disciplinary Comm'n,*
    801 F.2d 968 (7th Cir. 1986) ................................................22

*Bigger v. Facebook, Inc.,*
    947 F.3d 1043 (7th Cir. 2020) ................................... *passim*

*Clark v. A&L Homecare & Training Ctr., LLC,*
    68 F.4th 1003 (6th Cir. 2023) .................................... *passim*

*Espenscheid v. DirectSat USA, LLC,*
    705 F.3d 770 (7th Cir. 2013) .............................................16

*GCIU Emp. Ret. Fund v. Chicago Trib. Co.,*
    8 F.3d 1195 (7th Cir. 1993) ..................................................8

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013) .............................................................16

*George v. Kraft Foods Glob., Inc.,*
    641 F.3d 786 (7th Cir. 2011) .............................................21

*Gomez v. Glob. Precision Sys., LLC,*
    2024 WL 3910962 (W.D. Tex. Aug. 19, 2024) ..................21

*Hamm v. Acadia Healthcare Co.,*
    2021 WL 5749900 (E.D. La. Oct. 19, 2021) .......................21

*Hoffmann-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989) ................................................. *passim*

*In re New Albertsons,*
    2021 WL 4028428 (7th Cir. Sept. 1, 2021) ............10, 14, 15, 19

*In re Schlich,*
    893 F.3d 40 (1st Cir. 2018) .................................................6

ii

*Johnson v. Fankell*,
    520 U.S. 911 (1997) ................................................................................................7

*Jones v. Ferro Corp.*,
    2023 WL 4456815 (N.D. Ohio July 11, 2023) ....................................................21

*Kass v. PayPal Inc.*,
    75 F.4th 693 (7th Cir. 2023) ...............................................................................14

*Laverenz v. Pioneer Metal Finishing, LLC*,
    2024 WL 3887110 (E.D. Wis. Aug. 21, 2024) ...........................................10, 11

*Long v. Steepro*,
    213 F.3d 983 (7th Cir. 2000) .................................................................................8

*Loy v. Rehab Synergies, LLC*,
    2021 WL 3931926 (S.D. Tex. Sept. 2, 2021) .....................................................21

*Luna Perez v. Sturgis Pub. Schs.*,
    598 U.S. 142 (2023) ...............................................................................................8

*Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006) ............................................................................8

*McColley v. Casey's Gen. Stores, Inc.*,
    559 F. Supp. 3d 771 (N.D. Ind. 2021) ...............................................................10

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...............................................................................18

*Old Chief v. United States*,
    519 U.S. 172 (1997) ...............................................................................................5

*Pfefferkorn v. PrimeSource Health Grp., LLC*,
    2019 WL 354968 (N.D. Ill. Jan. 29, 2019) ........................................................10

*Puffer v. Allstate Ins. Co.*,
    675 F.3d 709 (7th Cir. 2012) .................................................................................5

*Ramirez v. T&H Lemont, Inc.*,
    845 F.3d 772 (7th Cir. 2016) .................................................................................6

*Rimbert v. Eli Lilly & Co.*,
    647 F.3d 1247 (10th Cir. 2011) ................................................................8

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*,
    969 F.2d 585 (7th Cir. 1992) .................................................................5

*Swales v. KLLM Transp. Servs., LLC*,
    985 F.3d 430 (5th Cir. 2021) ..................................................... *passim*

*United States v. Eleven Vehicles, Their Equip. & Accessories*,
    200 F.3d 203 (3d Cir. 2000) ...................................................................8

*United States v. Gomez*,
    763 F.3d 845 (7th Cir. 2014) (en banc) ...................................................5

*United States v. Prado*,
    41 F.4th 951 (7th Cir. 2022) .................................................................15

*United States v. Urena*,
    844 F.3d 681 (7th Cir. 2016) ...................................................................6

*United States v. Warner*,
    498 F.3d 666 (7th Cir. 2007) ...................................................................5

*United States v. Womack*,
    610 F.3d 427 (7th Cir. 2010) .................................................................11

*Vanegas v. Signet Builders, Inc.*,
    113 F.4th 718 (7th Cir. 2024) ...............................................................15

*Westefer v. Snyder*,
    422 F.3d 570 (7th Cir. 2005) ...................................................................6

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) .................................................................18

*Zelaya Diaz v. Rosen*,
    986 F.3d 687 (7th Cir. 2021) .................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 26 .............................................................................21

iv

Duane Morris, Duane Morris Class Action Review (2024)....................................................19

Seyfarth, 18th Annual Workplace Class Action Litigation Report (2022) .........................19

## INTRODUCTION

The question in this appeal is what standard courts should apply in determining whether and to whom to send notice of a collective action. Section 216(b) gives "similarly situated" employees the right to sue jointly. Accordingly, before sending notice, a court should determine whether the recipients are indeed "similarly situated." And the court should make that determination the same way courts typically do—by examining the full record, and expecting the party seeking judicial action to bear the burden of proving it. The district court here, however, applied *Lusardi* instead. As Richards agrees, *Lusardi* "err[s] on the side of overbroad notice" by requiring the plaintiff to carry only a "modest burden," one measured by "only consider[ing] evidence presented by plaintiffs," while ignoring the defendant's proof and foreclosing any inquiry into "merits-overlapping" similarity issues. Resp.12, 35, 47, 57, 61.

Instead of defending this, Richards principally retreats to a claim about discretion: that district courts are free to apply *Lusardi*, Lilly's approach, or something else entirely, and this Court should provide no legal direction. That doubles down on aberration. District courts exercise discretion all the time, but appellate courts provide the applicable legal frameworks. The district court here appreciated that the standard for issuing notice is a "purely legal question" about a "burden of proof." RSA.25-26. It would be bizarre for district courts to decide, on a case-by-case basis, what level of proof to demand, or whether to consider competing evidence. While the Supreme Court did not *answer* these questions in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), it also did not mandate that they be left to trial courts. To the contrary, the Court specifically *foreclosed* "unbridled

discretion" over the "notice-giving process," and warned against "solicitation of claims," even as it reserved for another day the standard for authorizing notice. *Id.* at 174. This Court has already begun to lay out legal parameters, as necessary to "maintain neutrality and to shield against abuse of the collective-action device," by holding that district courts cannot send notice without first giving defendants the chance to show that members of the putative collective entered arbitration agreements. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020). This Court there *rejected* a pure-discretion approach.

Here, too, the Court should adopt a standard to guide district courts. And *Lusardi* should not be that standard. As Richards admits, the Fifth and Sixth Circuits have both held that *Lusardi*'s one-sided review contradicts the Supreme Court's direction that the "facilitation of notice must not 'in form or function' resemble 'the solicitation of claims.'" *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023); *see also Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 442 (5th Cir. 2021). This Court's decision in *Bigger* is in accord, notwithstanding Richards's unprincipled rejoinder that arbitration is "*sui generis.*" Moreover, in analogous contexts, like class certification and preliminary injunctions, courts impose meaningful burdens, weigh the evidence, and do not shut their eyes to relevant issues. Richards rejects these analogies, but offers none of her own, since *Lusardi* is such a unique outlier. Her amici invoke joinder as a comparison, but that misses the key point: Joinder is a permissive process open to parties; what is at stake here is the *court itself* sending notice to third parties that effectively invites them to join a lawsuit. That serious power, found nowhere in statutory text, must be exercised with care.

Richards vigorously defends *Lusardi* on policy grounds, but only by ignoring its costs and assuming its benefits. She treats the "false positives" of overbroad notice as harmless on the ground that collectives can be decertified later, but this Court and others have already explained that a "notice now; winnow later" process imposes real harms— it misleads people, wastes resources, and inflates settlement leverage. The statistics that Richards cites, imperfect as they are, only *confirm* these concerns. They show that *Lusardi* overwhelmingly results in sending out notice; most cases settle thereafter; and, for those that proceed, more than half are later decertified. That suggests *flipping a coin* would be more accurate than *Lusardi* in identifying a "similarly situated" collective.

As to the benefits, Richards contends that applying a more rigorous standard for "similarity" would risk excluding viable plaintiffs, because the factual record at *Lusardi*'s first step is so limited. *But it does not have to be.* Richards is simply assuming her own conclusion: that the court must issue notice without first allowing record development. As other Circuits have held (and Lilly agrees), that is backwards—as in other areas of law, a factual record should be developed, including through discovery, *before* answering the question. Even Richards acknowledges that, once such discovery into similarity has occurred, courts can, should, and do apply a more demanding standard. Her only real objection is that proceeding in that sequence will delay notice, which (in FLSA cases) will risk causing other potential plaintiffs' claims to expire. Letting that concern drive the analysis is truly the tail wagging the dog. In all events, courts have already adopted measures to avoid running into these limitations issues, including those advanced in the amicus brief filed by the Acting Secretary of Labor (DOL).

This Court should therefore reject *Lusardi*, adopt a proper standard for ordering notice, and remand for application of that standard in the first instance. Richards insists that a heightened standard would not change the result here, but the district court said otherwise—indeed, that is why it certified the issue for interlocutory appeal. If anything, the Court should vacate and remand even if it accepts *Richards's* position: She contends on appeal that *Lusardi* is optional. But the court below viewed it as a legal straight-jacket. So, unless this Court holds that *Lusardi* is legally mandated—a position nobody defends here—the only appropriate disposition of this appeal is vacatur and remand.

## ARGUMENT

### I.     THIS COURT SHOULD ADOPT A LEGAL STANDARD.

Richards's lead argument is not to defend *Lusardi*, but to suggest that the standard for issuing notice is merely a matter of case-management discretion. She says courts are "free to modify the *Lusardi* approach as they see fit, or to adopt a different approach entirely." Resp.58. So despite arguing below that *Lusardi* was the "well-established" "default" in this Circuit (Dkt. 49 at 2-4), Richards now maintains that courts may "divert from the *Lusardi* model" entirely (Resp.33) and eschews any "one-size-fits-all" test. Resp.58; *see also* DOL.25 (disclaiming an "always-applicable standard").

This "anything goes" approach is misguided. Even where district courts exercise discretion, they do so consistent with legal frameworks. Nothing in *Hoffmann-La Roche* calls for a different approach. And, in all events, the district court here did not believe this to be a purely discretionary call, which is why it certified the question to this Court for a legal resolution. This argument therefore cannot support affirmance.

4

## A.    Legal Standards Are Not Matters of Discretion.

Most fundamentally, Richards's position confuses the difference between a *legal standard* and the *application of that standard* to a particular case. Many legal standards incorporate a measure of judgment or discretion, and district courts receive deference in applying those standards to the facts. But that is very different from selecting a legal standard in the first place. The latter is itself a question of law, where district courts take their guidance from appellate tribunals. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 588 (7th Cir. 1992) (explaining that appellate courts "establish and articulate legal rules," but "deferentially review a district court's application of legal standards to facts," because only the former will "establish uniform rules for future decision"). That is why this Court reviews *de novo* whether a district court applied the correct standard, even if application of the standard would be reviewed only for abuse of discretion. *See, e.g., Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) (whether court applied "wrong standard" to certify class is "purely legal determination[]" reviewed "de novo"); *United States v. Warner*, 498 F.3d 666, 680 (7th Cir. 2007) ("failure to use the proper legal standard is an abuse of discretion").

For example, district courts have discretion in determining whether the prejudicial effect of evidence outweighs its probative value under Federal Rule of Evidence 403. But they must nonetheless apply the relevant factors, and place the burden on the right party, consistent with legal precedent. *See, e.g., Old Chief v. United States*, 519 U.S. 172, 182 (1997) (setting forth proper "analytical method to be used in Rule 403 balancing"); *United States v. Gomez*, 763 F.3d 845, 857-60 (7th Cir. 2014) (en banc) (giving legal guidance on proper

Rule 403 balancing, including some "categorical" rules); *see also United States v. Urena*, 844 F.3d 681, 684 (7th Cir. 2016) (summarizing process for "other acts evidence," including "initial burden" on "proponent"). Nobody thinks district courts have discretion to alter the test itself. As another example, district courts have discretion to manage discovery. DOL.19. But "discovery rulings" are still reviewed on appeal to ensure the district court applied "the correct legal standards"—even as application of those standards to the facts is reviewed for "abuse of discretion." *Westefer v. Snyder*, 422 F.3d 570, 583 (7th Cir. 2005). These are not law-free zones.

Neither should this be. Here, as the district court itself recognized, the question presented is the "purely legal question" of the *standard* for issuing notice. RSA.26. Who should bear the burden of proof? What should that burden be? What evidence should courts look at? What issues should the court consider? These are classic legal questions that appellate courts answer, especially when statute or precedent is otherwise silent. For example, where the relevant rule was "silent," this Court prescribed "the standard of proof by which the underlying facts must be proven" to "dismiss[] a suit with prejudice based on litigation misconduct," while noting that *application* of the standard "warrants the careful exercise of the court's discretion." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-79 (7th Cir. 2016); *see also, e.g.*, *In re Schlich*, 893 F.3d 40, 49-52 (1st Cir. 2018) (observing that "[t]he Supreme Court has not established the appropriate burden of proof . . . or legal standard required to meet th[e] burden" for petitions for discovery for use in foreign proceedings, and providing guidance in light of that silence).

6

Richards objects that selecting a legal standard would result in a "one-size-fits-all" approach. Resp.31. But *every* standard is, in some sense, "one-size-fits-all." It is the *application* of the standard to the facts that allows for a case-specific fit. And for questions like who bears the "burden of proof," or what body of evidence should be considered, the interests in predictability and consistency cut in favor of a "uniform[]" rule. *Johnson v. Fankell*, 520 U.S. 911, 920 & n.11 (1997). Litigation could hardly proceed if the standard of proof were an open question in every case. That standard may well be *easier to satisfy* in certain cases (*cf.* Resp.48-50), but the standard itself should not change depending on the particular facts at hand.

### B. *Hoffmann-La Roche* Does Not Mandate Unbridled Discretion.

Richards bases her "discretion" argument largely on the Supreme Court's decision in *Hoffmann-La Roche*. She misreads it. Nothing in the Court's decision suggests, far less "mandate[s]," Richards's anything-goes approach. Resp.10, 32, 34, 43.

*Hoffmann-La Roche* confirmed "the existence of" district courts' discretion to order notice, but it expressly left for another day "the details of its exercise," including the legal standard for when (and to whom) to send notice. 493 U.S. at 170. Richards's reading of that reservation as prescribing complete discretion for district courts as to those "details" is facially implausible. *Hoffmann-La Roche* expressly disclaimed the notion that district courts hold "unbridled discretion in managing ADEA actions." *Id.* at 174. And the Court was also express about the constraints on that discretion: the exercise of the notice power (1) must not resemble "the solicitation of claims"; (2) must "avoid even the appearance of judicial endorsement of the merits"; and (3) "must be scrupulous to respect judicial

7

neutrality." *Id.* Already then, *Hoffmann-La Roche* was beginning to outline the contours of a legal standard. By reserving the "details," the Court was not conferring open-ended authority. *Cf. Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 149 (2023) (no precedential effect when court goes "out of its way to reserve rather than decide [a] question"). It was simply recognizing an open legal question—one that Courts of Appeals have started to answer, *Clark*, 68 F.4th at 1007; *Swales*, 985 F.3d at 436, and that is teed up here.

Nor does *Hoffmann-La Roche*'s citation of Federal Rules of Civil Procedure 16 and 83 support standardless discretion. The Court cited both Rules only to confirm a court's authority to prescribe notice *at all*, as the statute "make[s] no mention" of this power. Resp.28. These Rules have nothing to do with the *standard* (or lack thereof). 493 U.S. at 172-73. Proving as much, exercises of authority under either Rule are not themselves legally unbounded. Exercise of Rule 83 authority is reviewed for consistency with other law, *GCIU Emp. Ret. Fund v. Chicago Trib. Co.*, 8 F.3d 1195, 1200-01 (7th Cir. 1993); for sufficient notice, *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1358-59 (Fed. Cir. 2006); and for rationality and unfair prejudice, *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000). Scheduling authority and the accompanying sanction power are reviewed for proportionality. *See Long v. Steepro*, 213 F.3d 983, 988 (7th Cir. 2000) (court failed to "follow th[e] established methodology" for determining if dismissal was appropriate sanction for failure to meet deadline); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (applying "four factors" to "review[] the denial of a party's motion for a new scheduling order"). Here too, the notice process should be governed by a proper legal "methodology."

In all events, this Court has already foreclosed interpreting *Hoffmann-La Roche* as "mandat[ing]" unbridled discretion over the notice process. Resp.10, 32, 34, 43. In *Bigger*, the Court considered whether district courts may send notice to individuals who (according to the defendant) had signed arbitration agreements. The Court observed the "dangers of collective actions," and found a "high" risk that sending notice in those circumstances would "facilitate abuse of the collective-action device and thus place a judicial thumb on the plaintiff's side of the case." 947 F.3d at 1049-50. If Richards and DOL were correct that *Hoffmann-La Roche* conferred total discretion on district courts, *Bigger* should have merely admonished district courts to be aware of those concerns when exercising that discretion. But of course, that is *not* what this Court did; rather, it held that "the trial court *must* take specific steps," laid out at length, to determine whether a valid arbitration agreement exists. *Id.* at 1050 (emphasis added). If a valid agreement is shown, "[t]he court *may not* authorize notice" to that employee. *Id.* (emphasis added). This Court based these steps on "the court's obligations to maintain neutrality and to shield against abuse of the collective-action device" as set forth in *Hoffmann-La Roche*. *Id.* And, having laid out this "analytical framework," this Court then remanded to allow the district court to "apply the correct standard." *Id.* at 1051. It is impossible to square *Bigger*'s prescriptive legal holding with Richards's unbounded-discretion theory.[1]

---

[1] Given *Bigger*'s precision on this point, it makes no sense to read *Bigger*'s statement that this Court "ha[s] not required th[e] two-stage approach, nor do we do so now" as an affirmative *preservation* of district-court discretion in facilitating notice, when the Court specifically was *cabining* "the scope of a court's discretion in facilitating notice." 947 F.3d at 1049 n.5; *contra* NELA.10; Resp.33. As in *Hoffmann-La Roche*, that footnote just reserved the question—which is squarely presented here.

Richards turns instead to the unpublished order denying mandamus in *In re New Albertsons*, 2021 WL 4028428 (7th Cir. Sept. 1, 2021). That order concluded that use of the *Lusardi* two-step was not "patently erroneous" given its widespread use "in many district courts" and the absence of circuit guidance. *Id.* at *2. Nothing about that order supports unfettered discretion to district courts to choose the legal standard for issuing notice. *Contra* DOL.22-25. That this Court did not take up *Hoffmann-La Roche*'s reserved question in *New Albertsons*, in a mandamus posture where the standard for showing error is exceptionally high, has no bearing on how this Court should resolve that question now that it has agreed to review it here, under ordinary standards.

## C.     The District Court Did Not Believe It Had Unbridled Discretion.

For what it is worth, district courts are not under the impression that *Lusardi* is an entirely discretionary framework they can discard at will. That is why even district courts that have expressed doubts about *Lusardi* have nonetheless "adhere[d]" to it as "the dance of this circuit." *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776 (N.D. Ind. 2021). To be sure, courts understand that this Circuit has never adopted *Lusardi*, but they also properly view that question as legal, not discretionary. That is why *Lusardi*'s features are typically found in the "Legal Standard" part of district court rulings. *E.g.*, *Pfefferkorn v. PrimeSource Health Grp., LLC*, 2019 WL 354968, at *2 (N.D. Ill. Jan. 29, 2019).

Richards and DOL point to *Laverenz v. Pioneer Metal Finishing, LLC*, 2024 WL 3887110 (E.D. Wis. Aug. 21, 2024), but that decision does not support the view that district courts have discretion to choose a legal standard. The court there held that *Lusardi* should be "reject[ed]" as conflicting with "the FLSA's text" and "the neutrality required by the

Supreme Court." *Id.* at *8. So it is simply an example of a court that *agreed with Lilly* that *Lusardi* is not legally justifiable. As for the handful of cases that applied a more rigorous standard because discovery had already progressed (Resp.33-34; DOL.24-25), they too adopt a legal rule—that the burden should function as a sliding scale based on the stage of discovery. That is not the same thing as discretion.[2]

Perhaps most importantly, if *Lusardi* really were a matter of pure discretion, the district court here did not get the memo. Indeed, the very reason it certified the question is because it did not think it could "depart from" *Lusardi* as the "dance of this circuit" unless "a Seventh Circuit case overrul[ed] this long-applied approach"—acknowledging that this is a "purely legal" matter for this Court to decide. RSA.6, 26. Accordingly, even if this Court were to adopt Richards's current position, vacatur and remand would still be necessary. If the "standard" is "you pick," the district court here should be afforded the opportunity to do what Richards now says it can: discard *Lusardi* and "adopt a different approach entirely." Resp.58; *cf., e.g., United States v. Womack*, 610 F.3d 427, 434 (7th Cir. 2010) (remanding where court "did not fully appreciate its discretion under the Guidelines"); *Zelaya Diaz v. Rosen*, 986 F.3d 687, 688 (7th Cir. 2021) ("remand[ing] for a proper exercise of discretion" in light of recent precedent).

\*　　\*　　\*

---

[2] As explained further below, these cases strongly support Lilly's position here. If a more robust standard can be applied after discovery, there is no good reason why courts should not simply defer the issue of notice until after there has been an opportunity for adequate discovery on similarity. That makes much more sense than taking a shot in the dark and then trying to repair the damage after turning on the lights. *See infra*, Part II.B.2.

This Court should not hold that district courts have unbounded discretion to determine for themselves, on a case-by-case basis, what legal standard to apply before authorizing notice. As with other legal standards and burdens of proof, this Court should provide a governing answer. *Hoffmann-La Roche* left that legal question open, and *Bigger* began to flesh it out. This case is the opportunity for this Court to put some meat on the bones—guidance that district courts in this Circuit want and deserve.

## II.    THIS COURT SHOULD REJECT THE *LUSARDI* STANDARD.

For the reasons discussed above, this Court should take this opportunity to adopt a legal standard to govern a district court's authorization of notice to potential plaintiffs in a putative collective action. On the merits, this Court should align itself with the Fifth and Sixth Circuits by rejecting *Lusardi* and its three principal features. Richards and her amici are unable to identify any comparable area of law where courts take action based on a *de minimis* showing that ignores contrary evidence and relevant issues. And while they try to defend *Lusardi* as a matter of policy, their arguments assume *Lusardi*'s flawed sequencing premise and give short shrift to its serious drawbacks.

### A.    *Lusardi* Is Indefensible as a Matter of Law.

Richards agrees that, as commonly applied in this Circuit, *Lusardi*'s key aspects are that it (i) permits review of only "evidence presented by plaintiffs"; (ii) excludes review of "merits-overlapping" issues; and (iii) imposes only a "modest burden" on plaintiffs. Resp.35, 47, 61. Richards touts these as features, not bugs. But they are inconsistent with this Court's logic in *Bigger*, and find no parallel in the law. This Court should thus reject *Lusardi*'s flawed and aberrational approach.

**1.** *Bigger* is the most relevant Circuit precedent, because it dealt with the same basic issue of overbroad notice, albeit in a subset of cases: those where the defendant maintains that some members of the putative collective are not "similarly situated" since they entered arbitration agreements. Citing concerns about "neutrality" and avoiding "abuse," this Court held that district courts "must give the defendant an opportunity" to make a "showing" that individuals have "waiv[ed] their right to join the action"—and, if so, the courts "may not authorize notice" to them. 947 F.3d at 1050.

*Lusardi* is incompatible with *Bigger*. By holding that defendants must be given "an opportunity" to make a "showing," *id.*, this Court necessarily held that defendants' proof cannot be ignored at the notice stage. By holding that courts should determine whether an arbitration agreement has been proved "by a preponderance of the evidence," *id.*, this Court signaled that ordinary evidentiary burdens govern in this context. And by treating arbitration as an issue that must be addressed "before authorizing notice," *id.*, this Court implicitly rejected the view that any issue touching the "merits" of a particular person's claim should be deferred until after notice and full merits discovery.

Richards's sole response is to insist that *Bigger* only provided courts "guidance when presented with *arbitration agreements*." Resp.11. That is certainly the context that *Bigger* confronted. But this Court's logic and approach cannot be so easily "cabined." *Id.* The takeaway from *Bigger* is that district courts should do the work necessary up front (including by "allow[ing] discovery") to determine whether the group of notice recipients is truly "similarly situated," to avoid "facilitat[ing] abuse of the collective-action device," "plac[ing] a judicial thumb on the plaintiff's side of the case," 947 F.3d at 1047-50, and

13

"wast[ing] … judicial resources" (Resp.24).  That reasoning applies equally to any other situation where the parties dispute whether the notice recipients are "similarly situated." Indeed, both the Fifth and Sixth Circuits found that arbitration should be treated just like other defenses in this regard, and used it as an example to illustrate their rules, with *Clark* specifically *rejecting* the suggestion that a different standard should apply if an arbitration agreement is at issue.  68 F.4th at 1011-12; *see also Swales*, 985 F.3d at 441.

Richards calls arbitration "*sui generis*" (Resp.36), but offers no sound reason why that defense uniquely implicates the concerns that drove *Bigger*'s holding: maintaining judicial neutrality and avoiding potential abuse.  She seems to suggest that an arbitration agreement would more "unambiguously" exclude someone from a collective (Resp.24), but that is just not true.  The formation or validity of the agreement might be a matter of factual dispute; meanwhile, some notice recipients might be "unambiguously" outside a collective's scope if they, *e.g.*, were not subject to the challenged policy, were independent contractors rather than employees, or satisfied an FLSA exemption.  Richards also says that arbitration is "quasi-jurisdictional."  Resp.36.  It is actually an affirmative defense, no different from any other.  *See Kass v. PayPal Inc.*, 75 F.4th 693, 699 (7th Cir. 2023) ("As is true of most affirmative defenses, and certainly those that are waivable, an affirmative defense of arbitrability does not defeat subject-matter jurisdiction.").

Rather than engaging with *Bigger*'s logic, Richards again retreats to the order denying mandamus in *New Albertsons*, claiming it blesses *Lusardi* and diminishes the concerns aired in *Bigger*.  *See* Resp.51.  Of course, an unpublished disposition must yield to preceding precedential decisions in the event of a conflict—but there is none.  *New*

14

*Albertsons* reasoned only that the burdens of overbroad notice do not qualify as "irreversible harm" sufficient to support mandamus relief, and even that was a quick belt-and-suspenders addition to the order's explanation that no indisputable legal right or clear error had been shown. 2021 WL 4028428, at \*2. Richards's doubtful close reading of this order well illustrates why such orders typically "should not be argued for their precedential effect." *United States v. Prado*, 41 F.4th 951, 953 n. 1 (7th Cir. 2022).

**2.**     Even setting *Bigger* aside, *Lusardi* is highly dubious if only because it has no parallel in the law. Courts do not generally grant relief—even temporary, limited relief—based on a one-sided record, applying a minimal burden, and ignoring issues just because they overlap with other inquiries. To the contrary, in the most analogous contexts (Rule 23 class certification, and preliminary injunctions) courts consider *all* of the evidence, *all* of the relevant issues, and require the plaintiff to satisfy a *meaningful* burden. *See* Lilly.22-25, 27-29. Richards disputes both analogies, but offers none of her own, because courts do not take *Lusardi*-like approaches in any comparable situations.

Richards devotes pages of her brief to arguing that "Rule 23 has no applicability to collective actions." Resp.37-43. That misses the point. Lilly was drawing an analogy, not suggesting that Rule 23's substantive or procedural requirements apply *in toto* to collective actions. Richards is correct, for example, that a class's "independent legal status" makes a class action "different from many other types of aggregate litigation." *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 723-24 (7th Cir. 2024). She is also correct that a plaintiff in a collective action need not meet Rule 23's "adequacy" requirement, since she is not purporting to represent "absent class members." Resp.38. But none of that

undercuts the analogy: In the Rule 23 context, the plaintiff asks the court to take action (certifying a class) that is proper only if there is "commonality" (among other things). In conducting that inquiry, courts "consider all the available evidence," even when it is "intertwined" with the merits, and demand proof by a preponderance. *Swales*, 985 F.3d at 441-42. Why shouldn't the same be true when a plaintiff asks the court to take action (sending notice) that is proper only if the recipients are "similarly situated"?

After all, this Court has already recognized that "there isn't a good reason to have different standards for the certification of the two different types of action," insofar as they overlap. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). *A fortiori*, at least the *evidentiary burdens* ought to be parallel. Richards implies that *Espenscheid* has been overruled by *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), but that is again conflating *analogy* with *equation*. The difference observed in *Genesis* between class and collective actions (the "independent legal status" of a class, *id*. at 75) does not conflict with *Espenscheid*'s observation that the certification standards should logically track each other, at least as they relate to commonality and similarity. *See* 705 F.3d at 772.

Richards's response to the preliminary injunction analogy also bumps up against this Court's precedent. Her central reason for rejecting *Clark*'s requirement of a "strong likelihood" of similarly-situated status, 68 F.4th at 1011, is that "providing notice is of limited legal consequence," Resp.42; *see also* NELA.7 (contrasting "high stakes of enjoining" with "relatively low" stakes of "simply providing notice"). But *Bigger* did not view notice as a small thing—it poses the "danger[]" of "wield[ing] the collective-action format for settlement leverage" and creating unfair "pressure to settle" meritless claims.

947 F.3d at 1049.  These dangers are so consequential, this Court said, that district courts cannot invoke "efficiency" as a basis to send notice without resolving up front whether some members of the group are bound by arbitration agreements.  *Id.* at 1050.  Richards barely engages with *Bigger*'s instruction to take those dangers seriously, or with *Clark*'s key point that the power to "expand the plaintiffs' ranks a hundredfold" will necessarily "forc[e] a defendant to settle" in many cases.  68 F.4th at 1007; *see also infra*, Part II.B.1.

Although Richards offers no analogy of her own, her amicus points to pleading standards and joinder—which would call for an even *more* lenient standard than *Lusardi*, accepting the "pleadings alone" as sufficient to order notice.  NELA.22.  That cannot be reconciled with *Bigger*.  It also glosses over the critical difference: Pleading and joinder standards are not used to *justify judicial action*.  Anyone can file a complaint, or file a joinder to opt-in to a collective action; the plaintiff in those situations is not asking the court to do anything.  Here, the plaintiff is asking the court to send notices to hundreds or thousands of non-parties, advising them of a putative collective lawsuit and explaining how to join it.  That is a unique tool, at once incredibly powerful and also very dangerous. The least a court should do before exercising it is ask whether the plaintiff has adduced meaningful evidence that the recipients would be proper plaintiffs.[3]

---

[3] Lilly does not quibble with NELA's point that § 216(b) sets a joinder standard by allowing "similarly situated" employees to sue together.  But that has nothing to do with the standard for sending notice.  This appeal is about whether and how plaintiffs must prove that notice recipients are "similarly situated," not the substantive meaning of that phrase.  In other words, whether the claims must arise from the "same transaction or series of transactions" (NELA.17) or the test is something different, this appeal is about the burden and standard of proof for making that showing to justify notice.

**3.**     Lacking any analogy, Richards cites (older) circuit authorities that appeared to approve of *Lusardi*.  Resp.32.  But in many, the issue was not contested—typically, because it became moot with notice out the door by the time of appeal.  *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing two-step process as "sensible" but declining to exercise jurisdiction over related question); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (pre-*Clark* decision summarizing typical practice); DOL.13-15 & nn.3-4.  Only the interlocutory postures of *Swales* and *Clark* allowed those Circuits to address the step-one notice standard directly.  This Court now has the same opportunity.  It should require plaintiffs to persuade a court that "similarly situated" others actually exist before inviting those others to join the litigation fray.

**B.**     ***Lusardi* Is Indefensible as a Matter of Policy.**

*Lusardi* is not just a doctrinal aberration.  It also makes no policy sense.  Erring on the side of overbroad notice (Resp.57) wastes resources on cases that could never be tried collectively, imposes prejudicial settlement pressure, and undermines judicial neutrality. It makes far more sense to prioritize discovery into similarity and then conduct a robust inquiry.  In defending *Lusardi*, Richards pooh-poohs its costs, while gerrymandering her premises to generate benefits.  She gets both sides of the policy scale wrong.

**1.**     As to costs, a theme of Richards's brief is that courts should "err on the side of overbroad notice" (Resp.57) because, in short: "what's the big deal?"  *Bigger* explains why overbroad notice *is* a big deal: It creates "settlement leverage" and undermines judicial "neutrality" by resembling the "solicitation of claims."  947 F.3d at 1049.  In recognizing those dangers, this Court drew directly from *Hoffmann-La Roche*.  493 U.S. at

171, 174.  And those are not the only harms.  Telling employees to consider suing their employer has obvious adverse effects on a business's reputation, morale, and operational continuity—which is why defendants so vigorously resist it.  Richards is wrong to claim that *New Albertsons* "rejected" these concerns.  Resp.51-52.  That order said the harms of overbroad notice were sufficiently like other "burdens of civil litigation" that they do not qualify as "irreversible harm" for mandamus purposes.  2021 WL 4028428, at *2.  That does not mean they should be ignored in considering *Lusardi*'s policy merits.

Richards next argues that these harms are "speculative."  Resp.51.  Yet the data she cites bear out Lilly's points.  Conditional certification motions were granted *over 80%* of the time in one year.  Resp. 52.[4]  The report that Richards cites treats these figures with alarm, emphasizing "[t]he ease" of "first-stage certification" and risk of "opportunistic settlements."  Seyfarth at 9, 12; *see also* Chamber.20-22.  Richards suggests that 81% is not jarring in light of "the 72% success rate for certification of employment-discrimination class actions under Rule 23 during the same year."  Resp.52.  But due to small sample sizes, the class certification rate varies tremendously year-over-year, even as the notice-grant rate holds steady (Resp.53 n.5).  For example, a report on 2023 class actions showed a 50% certification rate for discrimination claims.[5]

---

[4] That is a nationwide rate, including cases in the Fifth Circuit governed by *Swales*. The grant rate in the Fifth Circuit was a more modest 59%.  Seyfarth, 18th Annual Workplace Class Action Litigation Report 9 (2022), https://www.content.seyfarth.com /publications/Workplace-Class-Action-Report-2022) ("Seyfarth").   In this Circuit, the grant rate in the year that Richards reviewed was a whopping *94%*.  *See id.*

[5] Duane Morris, Duane Morris Class Action Review 8 (2024), https://online.flippingbook.com/view/954167557/.

After conditional certification and notice, Richards points out that settlement is "common," and that decertification motions were granted *over 50%* of the time when defendants pressed the issue. Resp.53-54. That is an even more stunning statistic about *Lusardi*'s "false positives." If this really indicates that *Lusardi* "is operating as intended" (Resp.53), that is a devastating indictment. A standard that operates "as intended" yet leads to reversal *a majority of the time* is a standard that needs to be replaced.[6]

**2.** Turn to *Lusardi*'s supposed benefits. Richards's central argument is that, if "the record is extremely limited," a higher burden would risk "improper exclusion" of viable plaintiffs. Resp.47. As Richards puts it, a lenient and one-sided approach is necessary because anything more robust "would result in improperly excluding viable plaintiffs" given than "the factual record may be significantly lopsided or incomplete." Resp.12; *see also* Resp.50. In short, since plaintiffs have no real evidence at the notice stage, it would be unfair of courts to demand it. This argument hinges on the premise that, at the notice stage, the record will necessarily be "limited" and "incomplete," presumably because discovery has not yet taken place. But that simply assumes *Lusardi*'s premise— that notice must *precede* discovery into similarity.

---

[6] Richards tries to pin the contemplation of overbroad notice on *Hoffmann-La Roche* (Resp.42), because it referred to "notice to *potential* plaintiffs," 493 U.S. at 169 (emphasis added). But nonparties—even similarly situated ones—are always "potential plaintiffs" until they *choose to opt-in*. Indeed, in *Hoffmann-La Roche*, the group of "similarly situated" employees did not appear to be disputed, since the case concerned a "reduction in work force" affecting "some 1,200 workers," *id*. at 168; the Court therefore must have been referring to "potential plaintiffs" in the sense of those who may choose to join (rather than in the sense of those who may turn out to be similarly situated).

That premise is false.  Reasonable, proportional discovery into similarity can and should come first.  In class actions, discovery is often bifurcated between a first round "relating to class certification" and broader "fact discovery" into the merits.  *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 789 (7th Cir. 2011).  And district courts in the Fifth and Sixth Circuits are already providing models for expedited initial discovery appropriately tailored to "whether Plaintiff is similarly situated with those in her proposed collective." *Hamm v. Acadia Healthcare Co.*, 2021 WL 5749900, at *4 (E.D. La. Oct. 19, 2021); *see also Jones v. Ferro Corp.*, 2023 WL 4456815, at *6 (N.D. Ohio July 11, 2023) (permitting "expedited discovery" that is "limited to information bearing on the 'similarly situated' inquiry"); Fed. R. Civ. Proc. 26(b) (discovery must be "relevant" and "proportional").

Richards seems to hint that discovery is not possible before opt-in plaintiffs receive notice, because "individualized merits determinations" cannot be made in their absence. Resp.49.  That misunderstands the inquiry.  Notice turns on whether the employees are similarly situated, not whether their claims have merit.  That is why class certification discovery can be undertaken despite absent class members.  Likewise here, a plaintiff can use threshold discovery to explore, *e.g.*, whether other employees were governed "by the same-company wide policy," *Loy v. Rehab Synergies, LLC*, 2021 WL 3931926, at *12 (S.D. Tex. Sept. 2, 2021), and whether defenses would be "globally applicable," *Gomez v. Glob. Precision Sys., LLC*, 2024 WL 3910962, at *6, 8 (W.D. Tex. Aug. 19, 2024), without getting into other employees' "individualized experiences" (Resp.49).[7]

---

[7] Reflecting further confusion, Richards suggests employees who suffer the same "adverse employment action" are "similarly situated."  Resp.49.  That makes no sense.

Richards quietly concedes the practicality of this approach. Both she and DOL observe that courts sometimes raise *Lusardi*'s standard when discovery has already been taken. Resp.33-34; DOL.24. Richards agrees a "higher" burden makes sense "with the benefit of a fuller record." Resp.58. But that confirms Lilly's point: The court can *always* put itself in that position by authorizing discovery on the similarly-situated inquiry and *then* weighing the evidence to make an informed determination. That will always be superior to a one-sided analysis on a limited record. Why not do it that way?

Richards has one objection: that delays inherent in building a record could lead the statute of limitations to expire for some potential plaintiffs. Resp.46. It is true that even expedited discovery takes time. But it is far from clear that the potential expiration of potential nonparties' claims should take precedence over accurately identifying the set of similarly situated employees. *Hoffmann-La Roche* does not set forth an affirmative duty to ensure that nonparties are alerted to the possibility they can file or join a lawsuit. After all, limitations periods expire all the time without courts sending warning letters. And as Richards's amici agree, notice is not a prerequisite to joinder (or, for that matter, to filing a separate suit), and plaintiffs' counsel need not seek court permission to solicit opt-ins through ordinary non-judicial means (such as now-ubiquitous attorney advertising). NELA.22 n.5; *cf. Adams v. Atty. Registration & Disciplinary Comm'n*, 801 F.2d 968, 973 (7th Cir. 1986) (constitutional limits on restricting direct mailings from attorneys).

---

Employees are not similarly situated just because they were not promoted. What matters is whether they are "similarly situated" *as to their legal claims*; that turns on whether they were victims of a common policy (as well as other considerations such as their disparate employment settings, the presence of individualized defenses, etc.).

That said, if the Court has concern about the statute of limitations, there are *already* doctrines addressing it.  Richards admits that, due to piggybacking, she is not worried about expiration of ADEA claims.  Resp.46.  For FLSA claims, Richards does not dispute that courts use tolling doctrines to account for delays in sending notice.  Indeed, DOL's brief primarily seeks to prompt this Court to encourage district courts to "consider[] equitable tolling" in such cases.  DOL.25-29.  There is no need (or occasion) here to issue any ruling on the precise availability of FLSA tolling.  But the Court can acknowledge what DOL has noted: Courts *have* exercised this power and may continue doing so in future cases.  *See Clark*, 68 F.4th at 1014 (Bush, J., concurring).  And that means there is no reason not to proceed in the logical sequence—discovery *and then* adjudication.

## III.  THIS COURT SHOULD VACATE AND REMAND TO APPLY THE CORRECT STANDARD.

Upon correcting the standard for notice, this Court should vacate the order below, and remand for the district court to determine if Richards has met that standard in light of all record evidence.  Richards contends that a heightened standard would produce the same outcome, so "affirmance is still proper."  Resp.64.  But the district court indicated otherwise: that its decision would differ under a higher standard (which is why an appeal would likely "affect the further course of the litigation").  RSA.26-27; Lilly.43.

As such, Richards's claim that the district court "did review Eli Lilly's evidentiary showing" falls flat.  Resp.62.  The court was clear that all disputes "will be resolved … in plaintiffs' favor" and that "[r]eliance on defendant declarations is largely misplaced" at the notice stage.  RSA.4, 8.  The court's mere *acknowledgment* of Lilly's evidence is not the same as "weighing" it—an act it expressly disclaimed.  RSA.13.

Affirmance is thus off the table if the Court rejects *Lusardi*.  Indeed, affirmance is off the table even if the Court adopts Richards's primary position that district courts have discretion to accept or reject *Lusardi* at will.  As explained above, the district court here (correctly) understood the burden of proof to obtain notice as a "purely legal question" for this Court, not a free choice for its optional discretion.  RSA.26.  Either way, therefore, the proper disposition here is to vacate and remand.  *See supra*, Part I.C.

## CONCLUSION

This Court should vacate the order certified for appeal and remand for application of the proper standard for approving notice to a putative collective.

Dated: December 18, 2024

Jonathan M. Linas
E. Michael Rossman
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
jlinas@jonesday.com
emrossman@jonesday.com

Respectfully submitted,

*/s/  Yaakov M. Roth*
Yaakov M. Roth
  *Counsel of Record*
Christopher Pagliarella
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
202-879-3939
yroth@jonesday.com

James R. Saywell
JONES DAY
901 Lakeside Ave E,
Cleveland, OH 44114
(216) 586-3939
jsaywell@jonesday.com

*Counsel for Defendants-Appellants*

24

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by Circuit Rule 32(c), because, as calculated by Microsoft Word 365, it contains 6975 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This motion also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as modified by Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 12-point font, including footnotes.

Dated: December 18, 2024

Respectfully submitted,

/s/ Yaakov M. Roth

*Attorney for Defendants-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 18, 2024, pursuant to Federal Rule of Appellate Procedure 25 and Circuit Rule 25(a), I electronically filed Defendant-Appellants' (Reply Brief with the Clerk of Court of the U.S. Court of Appeals for the Seventh Circuit via the CM/ECF system and service was accomplished on counsel of record by that means.

Dated: December 18, 2024                    Respectfully submitted,

                                            /s/ Yaakov M. Roth

                                            *Attorney for Defendants-Appellants*